No. 24-1283

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

ALICIA LOWE; DEBRA CHALMERS; JENNIFER BARBALIAS; GARTH BERENYI;
NICOLE GIROUX; ADAM JONES; NATALIE SALAVARRIA,

Plaintiffs–Appellants,

v.

SARA GAGNÉ-HOLMES, in her official capacity as Acting Commissioner of the Maine
Department of Health and Human Services, DR. PUTHIERY VA, Director for the Maine
Center for Disease Control and Prevention,

Defendants–Appellees,

JANET T. MILLS, in her official capacity as Governor of the State of Maine; NANCY
BEARDSLEY, in her official capacity as Acting Director of the Maine Center for Disease
Control and Prevention; MAINEHEALTH; GENESIS HEALTHCARE OF MAINE, LLC;
GENESIS HEALTHCARE, LLC; MAINEGENERAL HEALTH; NORTHERN LIGHT
EASTERN MAINE MEDICAL CENTER,

Defendants.

---

On Appeal from the United States District Court for the District of Maine
In Case No. 1:21-cv-242-JDL before The Honorable John D. Levy

---

## APPENDIX

---

Mathew D. Staver, *Counsel of Record*
Horatio G. Mihet
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@LC.org
hmihet@LC.org
dschmid@LC.org
*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Document**                                                                 **Page**

District Court Docket Sheet…………………………………………………………..001

Dkt. 152, First Amended Verified Complaint for Injunctive Relief, Declaratory Relief, and Damages…………………………………………………..033

Dkt. 167, Notice of Proposal to Amend Covid-19 Vaccination Rule…………….086

Dkt. 167-1, Maine Department of Health and Human Services News Release….087

Dkt. 173-1, Maine Department of Health and Human Services July 19, 2023 Notice of Proposed Rule Change……………………………………………………090

Dkt. 187, Defendants' Notice of Rule Change Adoption………………………….105

Dkt. 188, State Defendants' Motion to Dismiss Remaining Claims as Moot with Incorporated Memorandum of Law…………………………………….......106

Dkt. 188-1, Declaration of Nancy Beardsley…………………………………….123

Dkt. 188-2, Exhibit 1 to Declaration of Nancy Beardsley……………………….137

Dkt. 188-3, Exhibit 2 to Declaration of Nancy Beardsley……………………….138

Dkt. 210, Transcript of Proceedings on State Defendants' Motion to Dismiss Remaining Claims as Moot……………………………………………………….139

Dkt. 213, Notice of Appeal……………………………………………………….179

i

APPEAL,CLOSED,CONFIDENTIALITY ORDER,STANDARD

# U.S. District Court
## District of Maine (Bangor)
## CIVIL DOCKET FOR CASE #: 1:21-cv-00242-JDL

LOWE et al v. MILLS et al
Assigned to: JUDGE JON D. LEVY
Referred to: MAGISTRATE JUDGE KAREN FRINK WOLF
Case in other court: First Circuit Court of Appeals, 21-01826
　　　　　　　　　　　First Circuit Court of Appeals, 22-01435
　　　　　　　　　　　First Circuit Court of Appeals, 22-01710
　　　　　　　　　　　First Circuit Court of Appeals, 24-01283
Cause: 42:1983 Civil Rights Act

Date Filed: 08/25/2021
Date Terminated: 02/23/2024
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**JOHN DOES 1-3**
*TERMINATED: 07/12/2022*

represented by **DANIEL J. SCHMID**
LIBERTY COUNSEL
P.O. BOX 540774
ORLANDO, FL 32854
800-671-1776
Fax: 407-875-0770
Email: dschmid@lc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
LIBERTY COUNSEL
P.O. BOX 540774
ORLANDO, FL 32854
800-671-1776
Email: hmihet@lc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
LIBERTY COUNSEL
P.O. BOX 540774
ORLANDO, FL 32854
407-875-1776
Email: court@lc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**
LIBERTY COUNSEL
P.O. BOX 540774
ORLANDO, FL 32854

407-875-1776
Fax: 407-875-0770
Email: rgannam@lc.org
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**
THE WHITING LAW FIRM
75 PEARL STREET
SUITE 207
PORTLAND, ME 04101
207-780-0681
Email: mail@whitinglawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JACK DOES 1-1000**                    represented by    **DANIEL J. SCHMID**
*TERMINATED: 07/12/2022*                                  (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **HORATIO G. MIHET**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **MATHEW D. STAVER**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **ROGER K. GANNAM**
                                                          (See above for address)
                                                          *TERMINATED: 09/01/2023*
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **STEPHEN C. WHITING**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

**Plaintiff**

**JANE DOES 1-6**                       represented by    **DANIEL J. SCHMID**
*TERMINATED: 07/12/2022*                                  (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*

**Appendix - 002**

*ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**
(See above for address)
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**JOAN DOES 1-1000**                    represented by    **DANIEL J. SCHMID**
*TERMINATED: 07/12/2022*                                  (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**
(See above for address)
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ALICIA LOWE**         represented by    **DANIEL J. SCHMID**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**
(See above for address)
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DEBRA CHALMERS**         represented by    **DANIEL J. SCHMID**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**

(See above for address)
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JENNIFER BARBALIAS**                 represented by     **DANIEL J. SCHMID**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**
(See above for address)
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NATALIE SALAVARRIA**                 represented by     **DANIEL J. SCHMID**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**
(See above for address)
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NICOLE GIROUX**            represented by   **DANIEL J. SCHMID**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**
(See above for address)
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**GARTH BERENYI**           represented by   **DANIEL J. SCHMID**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**
(See above for address)
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ADAM JONES**                    represented by    **DANIEL J. SCHMID**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**HORATIO G. MIHET**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**MATHEW D. STAVER**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ROGER K. GANNAM**
(See above for address)
*TERMINATED: 09/01/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**STEPHEN C. WHITING**

**Appendix - 007**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**JANET T MILLS**
*in her official capacity as Governor of the*
*State of Maine*
*TERMINATED: 08/18/2022*

represented by **KIMBERLY L. PATWARDHAN**
OFFICE OF THE ATTORNEY GENERAL
SIX STATE HOUSE STATION
AUGUSTA, ME 04333-0006
(207) 626-8823
Email: kimberly.patwardhan@maine.gov
*ATTORNEY TO BE NOTICED*

**THOMAS A. KNOWLTON**
OFFICE OF THE ATTORNEY GENERAL
STATE HOUSE STATION 6
AUGUSTA, ME 04333-0006
207-626-8832
Email: thomas.a.knowlton@maine.gov
*ATTORNEY TO BE NOTICED*

**VALERIE A. WRIGHT**
OFFICE OF THE MAINE ATTORNEY
GENERAL
6 STATE HOUSE STATION
AUGUSTA, ME 04333
207-626-8897
Email: valerie.a.wright@maine.gov
*TERMINATED: 04/19/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JEANNE M LAMBREW**
*in her official capacity as Commissioner of*
*the Maine Department of Health and*
*Human Services*

represented by **KIMBERLY L. PATWARDHAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**THOMAS A. KNOWLTON**
(See above for address)
*ATTORNEY TO BE NOTICED*

**VALERIE A. WRIGHT**
(See above for address)
*TERMINATED: 04/19/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DR NIRAV D SHAH**
*in his official capacity as Director of the*
*Maine Center for Disease Control and*
*Prevention*
*TERMINATED: 07/12/2023*

represented by **KIMBERLY L. PATWARDHAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**THOMAS A. KNOWLTON**

(See above for address)
*ATTORNEY TO BE NOTICED*

**VALERIE A. WRIGHT**
(See above for address)
*TERMINATED: 04/19/2022*
*ATTORNEY TO BE NOTICED*

**Defendant**

**MAINEHEALTH**
*TERMINATED: 12/11/2023*

represented by **KATHARINE I. RAND**
PIERCE ATWOOD LLP
254 COMMERCIAL STREET
PORTLAND, ME 04101
(207)791-1100
Email: krand@pierceatwood.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JAMES R. ERWIN**
PIERCE ATWOOD LLP
254 COMMERCIAL STREET
PORTLAND, ME 04101
207-791-1100
Email: jerwin@pierceatwood.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**GENESIS HEALTHCARE OF MAINE
LLC**
*TERMINATED: 12/11/2023*

represented by **KATHARINE I. RAND**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JAMES R. ERWIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GENESIS HEALTHCARE LLC**
*TERMINATED: 12/11/2023*

represented by **KATHARINE I. RAND**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JAMES R. ERWIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**NORTHERN LIGHT HEALTH
FOUNDATION**
*TERMINATED: 01/20/2022*

represented by **KATHERINE LEE PORTER**
EATON PEABODY
100 MIDDLE STREET
PO BOX 15235
PORTLAND, ME 04112-5235
207-992-4820

Email: kporter@pierceatwood.com
*ATTORNEY TO BE NOTICED*

**RYAN P. DUMAIS**
BANGOR SAVINGS BANK
127 COMMUNITY DRIVE
AUGUSTA, ME 04430
877-226-4671
Email: Ryan.Dumais@Bangor.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**MAINEGENERAL HEALTH**
*TERMINATED: 12/11/2023*

represented by **KATHARINE I. RAND**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**JAMES R. ERWIN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**NORTHERN LIGHT EASTERN
MAINE MEDICAL CENTER**
*TERMINATED: 12/11/2023*

represented by **KATHERINE LEE PORTER**
(See above for address)
*ATTORNEY TO BE NOTICED*

**RYAN P. DUMAIS**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**NANCY BEARDSLEY**
*Acting Director of the Maine Center for
Disease Control and Prevention*
*TERMINATED: 09/20/2023*

represented by **KIMBERLY L. PATWARDHAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**THOMAS A. KNOWLTON**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DR PUTHIERY VA**

represented by **KIMBERLY L. PATWARDHAN**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**THOMAS A. KNOWLTON**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor**

**MTM ACQUISITION INC**                    represented by  **KATIELYNN B. TOWNSEND**
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15TH STREET, NW
SUITE 1020
WASHINGTON, DC 20005
202-795-9300
Email: ktownsend@rcfp.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHANNON ANNETTE JANKOWSKI**
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15TH STREET, NW
SUITE 1020
WASHINGTON, DC 20005
202-795-9300
Email: sjankowski@rcfp.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SIGMUND D. SCHUTZ**
PRETI, FLAHERTY
ONE CITY CENTER
P.O. BOX 9546
PORTLAND, ME 04112-9546
207-791-3000
Fax: 207-791-3111
Email: sschutz@preti.com
*ATTORNEY TO BE NOTICED*

**Intervenor**

**SJ ACQUISITION INC**                    represented by  **KATIELYNN B. TOWNSEND**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SHANNON ANNETTE JANKOWSKI**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**SIGMUND D. SCHUTZ**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

**Appendix - 011**

| 08/25/2021 | 1 | COMPLAINT against GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, JEANNE M LAMBREW, MAINEGENERAL HEALTH, MAINEHEALTH, JANET T MILLS, NORTHERN LIGHT HEALTH FOUNDATION, NIRAV D SHAH **PAYMENT OF FILING FEE DUE WITHIN 48 HOURS. IF FILING FEE IS BEING PAID WITH A CREDIT CARD COUNSEL ARE INSTRUCTED TO LOGIN TO CMECF AND DOCKET *Case Opening Filing Fee Paid* FOUND IN THE *Complaints and Other Initiating Documents* CATEGORY. CHECK PAYMENTS DUE WITHIN 48 HOURS.**, filed by JACK DOES 11000, JANE DOES 16, JOHN DOES 13, JOAN DOES 11000. (Service of Process Deadline 11/23/2021) Fee due by 8/27/2021. (Attachments: # 1 Exhibit A- Covid 19 Vaccine Mandate, # 2 Exhibit B - Jane Doe Communications, # 3 Exhibit C - Jane Doe 3 Denial, # 4 Exhibit D - MaineGeneral Denial of Jane Doe 5, # 5 Exhibit E - Demand Letter to Governor)(bfa) (Entered: 08/25/2021) |
|---|---|---|
| 08/25/2021 | 2 | CIVIL COVER SHEET. (bfa) (Entered: 08/25/2021) |
| 08/25/2021 | 3 | MOTION for Temporary Restraining Order, MOTION for Preliminary Injunction by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 (bfa) (Entered: 08/25/2021) |
| 08/25/2021 | 4 | Summons Issued as to GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, JEANNE M LAMBREW, MAINEGENERAL HEALTH, MAINEHEALTH, JANET T MILLS, NORTHERN LIGHT HEALTH FOUNDATION, NIRAV D SHAH.<br><br>**Counsel shall print the embossed summons and effect service in the manner in accordance with Fed.R.Civ.P.4.**<br><br>**Note-If you are using Version 6 of Adobe Acrobat, be sure the PRINT WHAT field is set to DOCUMENTS AND COMMENTS (Click File, then Print to check this setting).**<br><br>(Attachments: # 1 NIRAV SHAH summons, # 2 NORTHERN LIGHT summons, # 3 MAINEHEALTH summons, # 4 MAINE GENERAL HEALTHCARE summons, # 5 JEANNE M. LAMBREW summons, # 6 GENESIS HEALTHCARE, LLC summons, # 7 GENESISHEALTHCARE OF MAINE, LLC summons)(bfa) (Entered: 08/25/2021) |
| 08/25/2021 | 5 | NOTICE of VIDEO Hearing on Motion 3 MOTION for Temporary Restraining - Motion Hearing set for 8/26/2021 10:00 AM before JUDGE JON D. LEVY. All participants have been emailed instruction to attend the hearing by video.(tcs) (Entered: 08/25/2021) |
| 08/25/2021 | | Filing Fee Paid via Credit Card ( Filing fee $ 402 receipt number AMEDC-2539840.), filed by JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6, JOHN DOES 1-3. (SCHMID, DANIEL) (Entered: 08/25/2021) |
| 08/25/2021 | 6 | CERTIFICATION for Admission Pro Hac Vice of Daniel J. Schmid filed by DANIEL J. SCHMID on behalf of JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 (Total admission fee $ 100 receipt number AMEDC-2539874.) The District of Maine is a CM/ECF NextGen Court. If PHV counsel has not previously been granted electronic filing rights with the District of Maine, PHV counsel will now need to submit a PRO HAC VICE request in this District via PACER at www.pacer.uscourts.gov (SCHMID, DANIEL) (Entered: 08/25/2021) |
| 08/25/2021 | 7 | CERTIFICATION for Admission Pro Hac Vice of Mathew D. Staver, Horatio G. Mihet, Roger K. Gannam filed by DANIEL J. SCHMID on behalf of JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 (Total admission fee $ 300 receipt number AMEDC-2539875.) The District of Maine is a CM/ECF NextGen Court. If PHV counsel has not previously been granted electronic filing rights with the District |

| | | |
|---|---|---|
| | | of Maine, PHV counsel will now need to submit a PRO HAC VICE request in this District via PACER at www.pacer.uscourts.gov (Attachments: # 1 Certificate for Pro Hac Vice Admission Mathew D. Staver, # 2 Certificate for Pro Hac Vice Admission - Roger K. Gannam)(SCHMID, DANIEL) (Entered: 08/25/2021) |
| 08/26/2021 | 8 | ADDITIONAL ATTACHMENTS Re: Supplemental Authority on Plaintiffs Motion for Temporary Restraining Order by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 (Attachments: # 1 Exhibit A - News Article Showing Termination of Employees Requesting Religious Exemptions)(SCHMID, DANIEL) Modified on 8/26/2021 to replace "Notice/Correspondence" with "Additional Attachments" and to relate to Motion for Temporary Restraining Order (aks). (Entered: 08/26/2021) |
| 08/26/2021 | 9 | ADDITIONAL ATTACHMENTS Re: Supplemental Authority by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 (Attachments: # 1 Exhibit A - Northern Light Letters)(SCHMID, DANIEL) Modified on 8/26/2021 to replace "Notice/Correspondence" with "Additional Attachments" and to relate to Motion for Temporary Restraining Order (aks). (Entered: 08/26/2021) |
| 08/26/2021 | 10 | NOTICE of Docket Entry Modification regarding 9 Notice (Other)/Correspondence, 8 Notice (Other)/Correspondence, : These entries have been modified to replace "Notice/Correspondence" with "Additional Attachments" and to link to the Motion for Temporary Restraining Order. (aks) (Entered: 08/26/2021) |
| 08/26/2021 | 11 | ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING denying 3 Motion for TRO By JUDGE JON D. LEVY (aks) (Entered: 08/26/2021) |
| 08/26/2021 | 12 | Minute Entry for proceedings held via ZOOM Video Conference before JUDGE JON D. LEVY: Hearing held re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by JOHN DOES 1-3, JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6. (Court Reporter: Tammy Martell) (aks) (Entered: 08/26/2021) |
| 08/26/2021 | 13 | NOTICE of Hearing: Conference of Counsel set for 8/31/2021 02:00 PM via ZOOM Video Conference before JUDGE JON D. LEVY. (aks) (Entered: 08/26/2021) |
| 08/27/2021 | 14 | NOTICE/CORRESPONDENCE Re: Attempts to Secure Informal Service by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 (Attachments: # 1 Exhibit A - Email to Government Defendants, # 2 Exhibit B - Email to Defendant MaineHealth, # 3 Exhibit C - Email to Defendants GenesisHealthcare, # 4 Exhibit D - Email to Defendant MaineGeneral, # 5 Exhibit E - Email to Defendant Nothern Light) (SCHMID, DANIEL) (Entered: 08/27/2021) |
| 08/27/2021 | 15 | AFFIDAVIT of Service by JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6, JOHN DOES 1-3. All Defendants. (SCHMID, DANIEL) (Entered: 08/27/2021) |
| 08/27/2021 | | Set Answer Deadline for GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, JEANNE M LAMBREW, MAINEGENERAL HEALTH, MAINEHEALTH, JANET T MILLS, NIRAV D SHAH. : Answer due by 9/15/2021. (aks) (Entered: 08/27/2021) |
| 08/27/2021 | | Set Answer Deadline for NORTHERN LIGHT HEALTH FOUNDATION : Answer due by 9/16/2021. (aks) (Entered: 08/27/2021) |
| 08/27/2021 | 16 | NOTICE of Appearance by RYAN P. DUMAIS on behalf of NORTHERN LIGHT HEALTH FOUNDATION (DUMAIS, RYAN) (Entered: 08/27/2021) |
| 08/27/2021 | 17 | NOTICE of Appearance by KIMBERLY L. PATWARDHAN on behalf of JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH (PATWARDHAN, KIMBERLY) |

| | | |
|---|---|---|
| | | (Entered: 08/27/2021) |
| 08/31/2021 | 18 | NOTICE of Appearance by THOMAS A. KNOWLTON on behalf of JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH (KNOWLTON, THOMAS) (Entered: 08/31/2021) |
| 08/31/2021 | 19 | NOTICE of Appearance by JAMES R. ERWIN and KATHARINE I. RAND on behalf of GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH (ERWIN, JAMES) Modified on 8/31/2021 to add Attorney Rand (aks). (Entered: 08/31/2021) |
| 08/31/2021 | 20 | NOTICE of Docket Entry Modification regarding 19 Notice of Appearance : This entry has been modified to add Attorney Rand. (aks) (Entered: 08/31/2021) |
| 08/31/2021 | 21 | MOTION Proceed Using Pseudonyms and for Protective Order by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 Responses due by 9/21/2021. (Attachments: # 1 Exhibit A - Declaration of Daniel J. Schmid in Support of Motion) (SCHMID, DANIEL) (Entered: 08/31/2021) |
| 08/31/2021 | 22 | Minute Entry for proceedings held via ZOOM Video Conference before JUDGE JON D. LEVY: Conference of Counsel held. (Court Reporter: Lori Dunbar) (aks) (Entered: 08/31/2021) |
| 08/31/2021 | 23 | PROCEDURAL ORDER By JUDGE JON D. LEVY (aks) (Entered: 08/31/2021) |
| 08/31/2021 | | Reset Deadlines as to 21 MOTION Proceed Using Pseudonyms and for Protective Order : Responses due by 9/1/2021. (aks) (Entered: 08/31/2021) |
| 08/31/2021 | | Reset Deadlines as to 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction : Responses due by NOON 9/8/2021. Reply due by NOON 9/9/2021. (aks) (Entered: 08/31/2021) |
| 08/31/2021 | 24 | NOTICE of Hearing on Motion 3 MOTION for Preliminary Injunction : Hearing set for 9/10/2021 02:00 PM via ZOOM Video Conference before JUDGE JON D. LEVY. (aks) (Entered: 08/31/2021) |
| 09/01/2021 | 25 | RESPONSE to Motion re 21 MOTION Proceed Using Pseudonyms and for Protective Order filed by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH. Reply due by 9/15/2021. (PATWARDHAN, KIMBERLY) (Entered: 09/01/2021) |
| 09/01/2021 | 26 | RESPONSE to Motion re 21 MOTION Proceed Using Pseudonyms and for Protective Order filed by NORTHERN LIGHT HEALTH FOUNDATION. Reply due by 9/15/2021. (DUMAIS, RYAN) (Entered: 09/01/2021) |
| 09/01/2021 | 27 | NOTICE of Appearance by VALERIE A. WRIGHT on behalf of JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH (WRIGHT, VALERIE) (Entered: 09/01/2021) |
| 09/02/2021 | 28 | MOTION for Leave to File *Reply in Support of Motion to Proceed under Pseudonyms and for Protective Order* by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 Responses due by 9/23/2021. (Attachments: # 1 Proposed Reply) (SCHMID, DANIEL) (Entered: 09/02/2021) |
| 09/02/2021 | 29 | NOTICE of VIDEO Hearing on Motion 21 MOTION Proceed Using Pseudonyms and for Protective Order - Hearing set for 9/2/2021 01:30 PM before JUDGE JON D. LEVY. All participants have been emailed instructions to attend the hearing by video. (tcs) (Entered: 09/02/2021) |
| 09/02/2021 | 30 | ORDER granting 28 Motion for Leave to File Reply. The proposed reply attached to the motion shall be filed as a separate entry on the docket by 12:30 PM today, 9/2/2021. By |

| | | |
|---|---|---|
| | | JUDGE JON D. LEVY. (lrt) (Entered: 09/02/2021) |
| 09/02/2021 | 31 | REPLY to Response to Motion re 21 MOTION Proceed Using Pseudonyms and for Protective Order filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3. (SCHMID, DANIEL) (Entered: 09/02/2021) |
| 09/02/2021 | 32 | ORDER ON PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYMS AND FOR PROTECTIVE ORDER re 21 Motion to Proceed under Pseudonyms and Motion for Protective Order By JUDGE JON D. LEVY. (lrt) (Entered: 09/02/2021) |
| 09/02/2021 | 33 | Minute Entry for proceedings held before JUDGE JON D. LEVY: Motion Hearing held re 21 MOTION Proceed Using Pseudonyms and for Protective Order filed by JOHN DOES 1-3, JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6. Deadlines set as stated on the record. (Court Reporter: Tammy Martell) (clp) Modified on 9/2/2021 to clean up text (clp). (Entered: 09/02/2021) |
| 09/02/2021 | 34 | NOTICE/CORRESPONDENCE Re: Governor Mill's Issued Statement *Regarding Vaccination Requirement* by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH (Attachments: # 1 Exhibit Statement)(ERWIN, JAMES) (Entered: 09/02/2021) |
| 09/02/2021 | 35 | PROCEDURAL ORDER By JUDGE JON D. LEVY. (lrt) (Entered: 09/02/2021) |
| 09/02/2021 | 36 | AGREED-UPON PROTECTIVE ORDER By JUDGE JON D. LEVY. (lrt) (Entered: 09/02/2021) |
| 09/03/2021 | 37 | MOTION TO ENLARGE DEADLINE TO FILE OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH Responses due by 9/24/2021. (ERWIN, JAMES) Modified on 9/3/2021 to change event to motion to extend time (lrt). (Entered: 09/03/2021) |
| 09/03/2021 | 38 | RESPONSE to Motion re 37 MOTION to Amend Procedural Order *(jointly by Northern Light Health and)* filed by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH. Reply due by 9/17/2021. (PATWARDHAN, KIMBERLY) (Entered: 09/03/2021) |
| 09/03/2021 | 39 | NOTICE of Appearance by KATHERINE LEE PORTER on behalf of NORTHERN LIGHT HEALTH FOUNDATION (PORTER, KATHERINE) (Entered: 09/03/2021) |
| 09/03/2021 | 40 | RESPONSE in Opposition re 37 MOTION to Amend Procedural Order *(jointly by Northern Light Health and)*, 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3. Reply due by 9/17/2021. (Attachments: # 1 Exhibit A - MaineGeneral Notification to Employees)(SCHMID, DANIEL) (Entered: 09/03/2021) |
| 09/03/2021 | 41 | PROCEDURAL ORDER By JUDGE JON D. LEVY. (lrt) (Entered: 09/03/2021) |
| 09/03/2021 | | Reset Deadlines as to 37 MOTION TO ENLARGE DEADLINE TO FILE OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION pursuant to the Procedural Order entered this date: Reply due by 1:00 PM on 9/4/2021. (lrt) (Entered: 09/03/2021) |
| 09/04/2021 | 42 | REPLY to Response to Motion re 37 MOTION TO ENLARGE DEADLINE TO FILE OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION filed by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH. (RAND, KATHARINE) (Entered: 09/04/2021) |
| 09/04/2021 | 43 | REPLY to Response to Motion re 37 MOTION TO ENLARGE DEADLINE TO FILE OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION filed by JEANNE M |

| | | |
|---|---|---|
| | | LAMBREW, JANET T MILLS, NIRAV D SHAH. (PATWARDHAN, KIMBERLY) (Entered: 09/04/2021) |
| 09/05/2021 | [44](#) | ORDER granting [37](#) Motion to Enlarge Deadline to File Opposition to Motion for Preliminary Injunction By JUDGE JON D. LEVY. (lrt) (Entered: 09/05/2021) |
| 09/05/2021 | | Reset Deadlines as to [3](#) MOTION for Preliminary Injunction- per Order No. 44: Response due by NOON on 9/15/2021. Reply due by NOON on 9/16/2021. (lrt) (Entered: 09/05/2021) |
| 09/05/2021 | 45 | NOTICE of Rescheduled Video Hearing re [3](#) MOTION for Preliminary Injunction : Motion Hearing reset for 9/20/2021 03:00 PM before JUDGE JON D. LEVY. All parties have been provided with the call-in information. (lrt) (Entered: 09/05/2021) |
| 09/14/2021 | [46](#) | MOTION to Extend Time 24-Hour Extension of Time to File Reply in Support of Motion for Preliminary Injunction by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 Responses due by 10/5/2021. (SCHMID, DANIEL) (Entered: 09/14/2021) |
| 09/15/2021 | [47](#) | RESPONSE to Motion re [46](#) MOTION to Extend Time 24-Hour Extension of Time to File Reply in Support of Motion for Preliminary Injunction filed by NORTHERN LIGHT HEALTH FOUNDATION. Reply due by 9/29/2021. (DUMAIS, RYAN) (Entered: 09/15/2021) |
| 09/15/2021 | | Set Deadlines : Per Local Rule 7.1 Notice of Interested Parties or Corporate Disclosure Statement due by 9/17/2021 as to MAINEHEALTH, GENESIS HEALTHCARE OF MAINE LLC, GENESIS HEALTHCARE LLC, NORTHERN LIGHT HEALTH FOUNDATION, MAINEGENERAL HEALTH. (aks) (Entered: 09/15/2021) |
| 09/15/2021 | [48](#) | AFFIDAVIT of Kimberly L. Patwardhan filed by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH. (Attachments: # [1](#) Exhibit 1, LD 798 (129th Legis. 2019), # [2](#) Exhibit 2, Tipping testimony, # [3](#) Exhibit 3, McDonald testimony, # [4](#) Exhibit 4, Beardsley, Nancy Testimony, # [5](#) Exhibit 5, Boulos, Rebecca Testimony, # [6](#) Exhibit 6, Madara, James Testimony, # [7](#) Exhibit 7, Hagler, Deborah Testimony, # [8](#) Exhibit 8, Endsley, Patricia Testimony, # [9](#) Exhibit 9, Harvey-McPherson, Lisa Testimony, # [10](#) Exhibit 10, Hemphill, Rebecca Testimony, # [11](#) Exhibit 11, Chaleff, Stanley Testimony, # [12](#) Exhibit 12, Ha-Ngoc, Tin Testimony, # [13](#) Exhibit 13, Keller, Emily Testimony, # [14](#) Exhibit 14, L'Heureux, Juliana Testimony, # [15](#) Exhibit 15, McRae, Peggy Testimony, # [16](#) Exhibit 16, Wriggins, Jennifer Testimony, # [17](#) Exhibit 17, Lafreniere, Suzanne Testimony, # [18](#) Exhibit 18, Grabenstein article, # [19](#) Exhibit 19, Comm. Amd. A to LD 798, # [20](#) Exhibit 20, House Journal - April 23, 2019 (H-392 to -402), # [21](#) Exhibit 21, Senate Journal - May 2, 2019 (S-555 to -565), # [22](#) Exhibit 22, House Journal - May 7, 2019 (H-491 to -492), # [23](#) Exhibit 23, Senate Journal - May 14, 2019 (S-649 to -656), # [24](#) Exhibit 24, House Journal - May 21, 2019 (H-589 to -597), # [25](#) Exhibit 25, House Journal - May 23, 2019 (H-650), # [26](#) Exhibit 26, Senate Journal - May 23, 2019 (S-753 to -756), # [27](#) Exhibit 27, P.L. 2019, ch. 154)(PATWARDHAN, KIMBERLY) (Entered: 09/15/2021) |
| 09/15/2021 | [49](#) | RESPONSE in Opposition re [3](#) MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH. Reply due by 9/29/2021. (Attachments: # [1](#) Affidavit Declaration of Donald Wismer, # [2](#) Exhibit 1 to Wismer Dec., # [3](#) Exhibit 2 to Wismer Dec., # [4](#) Affidavit Declaration of Dr. Nirav Shah, # [5](#) Affidavit Declaration of Sara Gagne-Holmes, # [6](#) Exhibit 1 to Gagne-Holmes Dec., # [7](#) Exhibit 2 to Gagne-Holmes Dec., # [8](#) Exhibit 3 to Gagne-Holmes Dec., # [9](#) Exhibit 4 to Gagne-Holmes Dec., # [10](#) Exhibit 5 to Gagne-Holmes Dec.)(PATWARDHAN, KIMBERLY) Modified on 9/15/2021 to relate filing to ECF #48 at the request of the filer (aks). (Entered: 09/15/2021) |

| | | |
|---|---|---|
| 09/15/2021 | 50 | RESPONSE in Opposition re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH. Reply due by 9/29/2021. (Attachments: # 1 Exhibit A, # 2 Affidavit of April Nichols, # 3 Affidavit of Judy West, # 4 Affidavit of Gail Cohen)(ERWIN, JAMES) (Entered: 09/15/2021) |
| 09/15/2021 | 51 | RESPONSE in Opposition re 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by NORTHERN LIGHT HEALTH FOUNDATION. Reply due by 9/29/2021. (Attachments: # 1 Exhibit A - Redline of Emergency Rule, 10-144 MCR § 264, # 2 Affidavit of Paul Bolin)(DUMAIS, RYAN) (Entered: 09/15/2021) |
| 09/15/2021 | 52 | ORDER granting 46 Motion to Extend Time By JUDGE JON D. LEVY (aks) (Entered: 09/15/2021) |
| 09/15/2021 | | Reset Deadlines as to 3 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction : Reply due by NOON on 9/17/2021. (aks) (Entered: 09/15/2021) |
| 09/16/2021 | 53 | CORPORATE DISCLOSURE STATEMENT *of Genesis Healthcare LLC* by GENESIS HEALTHCARE LLC. (ERWIN, JAMES) (Entered: 09/16/2021) |
| 09/16/2021 | 54 | CORPORATE DISCLOSURE STATEMENT *of Genesis Healthcare of Maine, LLC* by GENESIS HEALTHCARE OF MAINE LLC. (ERWIN, JAMES) (Entered: 09/16/2021) |
| 09/16/2021 | 55 | CORPORATE DISCLOSURE STATEMENT *of MaineGeneral Health* by MAINEGENERAL HEALTH. (ERWIN, JAMES) (Entered: 09/16/2021) |
| 09/16/2021 | 56 | CORPORATE DISCLOSURE STATEMENT *of MaineHealth* by MAINEHEALTH. (ERWIN, JAMES) (Entered: 09/16/2021) |
| 09/17/2021 | 57 | REPLY to Response to Motion re 3 MOTION for Preliminary Injunction filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3. (Attachments: # 1 Exhibit A - Dr A. v. Hochul TRO, # 2 Exhibit 1 - Employee Witness 1, # 3 Exhibit 2 - Employee Witness 2, # 4 Exhibit 3 - Employee Witness 3, # 5 Exhibit 4 Employee Witness 4, # 6 Exhibit 5 - Employee Witness 5, # 7 Exhibit 6 - Employee Witness 6, # 8 Exhibit 7 - Employee Witness 7, # 9 Exhibit 8 - Employee Witness 8, # 10 Exhibit 9 - Employee Witness 9, # 11 Exhibit 10 - Employee Witness 10, # 12 Exhibit 11 - Employee Witness 11, # 13 Exhibit 12 - Employee Witness 12, # 14 Exhibit 13 - Employee Witness 13, # 15 Exhibit 14 - Employee Witness 14, # 16 Exhibit 15 - Employee Witness 15, # 17 Exhibit 16 - Employee Witness 16, # 18 Exhibit 17 - Employee Witness 17, # 19 Exhibit 18 - Employee Witness 18, # 20 Exhibit 19 - Employee Witness 19, # 21 Exhibit 20 - Employee Witness 20, # 22 Exhibit 21 - Employee Witness 21, # 23 Exhibit 22 - Employee Witness 22, # 24 Exhibit 23 - Employee Witness 23, # 25 Exhibit 24 - Employee Witness 24, # 26 Exhibit 25 - Employee Witness 25, # 27 Exhibit 26 - Employee Witness 26, # 28 Exhibit 27 - Employee Witness 27, # 29 Exhibit 28 - Employee Witness 28, # 30 Exhibit 29 - Employee Witness 29, # 31 Exhibit 30 - Employee Witness 30, # 32 Exhibit 31 - Employee Witness 31, # 33 Exhibit 32 - Employee Witness 32)(SCHMID, DANIEL) Modified on 9/17/2021 to remove reference to Motion for TRO (jgd). Modified on 9/17/2021 to seal attachment #12 - counsel will be filing a motion to seal (mnd). (Entered: 09/17/2021) |
| 09/17/2021 | 58 | CORPORATE DISCLOSURE STATEMENT by NORTHERN LIGHT HEALTH FOUNDATION. (DUMAIS, RYAN) (Entered: 09/17/2021) |
| 09/17/2021 | 59 | ADDITIONAL ATTACHMENTS filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 re 57 Reply to Response to Motion,,,,,, . Main |

| | | |
|---|---|---|
| | | Document: Replacement Exhibit for dkt. 57-12. (SCHMID, DANIEL) (Entered: 09/17/2021) |
| 09/20/2021 | 60 | Minute Entry for proceedings held via ZOOM Video Conference before JUDGE JON D. LEVY: Oral Argument held re 3 MOTION for Preliminary Injunction filed by JOHN DOES 1-3, JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6. (Court Reporter: Tammy Martell) (aks) Modified on 10/12/2021 to correct date filed (aks). (Entered: 09/21/2021) |
| 10/01/2021 | 61 | NOTICE/CORRESPONDENCE Re: Supplemental Authority on Plaintiffs' Motion for Preliminary Injunction by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 (Attachments: # 1 Exhibit A - Second Circuit Injunction Pending Appeal, # 2 Exhibit B - Northern District of New York TRO)(SCHMID, DANIEL) (Entered: 10/01/2021) |
| 10/01/2021 | 62 | NOTICE/CORRESPONDENCE Re: Correction of Error in State Defendants' Opposition to Motion for Preliminary Injunction (ECF 49) by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH (Attachments: # 1 Governor's Proclamation, signed March 20, 2020)(PATWARDHAN, KIMBERLY) (Entered: 10/01/2021) |
| 10/01/2021 | 63 | NOTICE/CORRESPONDENCE Re: Supplemental Authorities in Opposition to Motion for Preliminary Injunction by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH (Attachments: # 1 Exhibit A - Memorandum Order)(ERWIN, JAMES) (Entered: 10/01/2021) |
| 10/08/2021 | 64 | NOTICE/CORRESPONDENCE Re: State Defendants' Notice of Supplemental Authority in Opposition to Motion for Preliminary Injunction by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH (Attachments: # 1 Exhibit A)(PATWARDHAN, KIMBERLY) (Entered: 10/08/2021) |
| 10/13/2021 | 65 | ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION denying 3 Motion for Preliminary Injunction By JUDGE JON D. LEVY. (aks) (Entered: 10/13/2021) |
| 10/13/2021 | 66 | NOTICE OF APPEAL as to 65 Order on Motion for Preliminary Injunction by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 . ( Filing fee $ 505 receipt number AMEDC-2561672.)<br><br>**NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from our web site at http://www.med.uscourts.gov/forms/ MUST be completed and submitted to the Court of Appeals. Counsel should also register for a First Circuit CM/ECF Appellate Filer Account at https://pacer.psc.uscourts.gov/pscof/regWizard.jsf and review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** (SCHMID, DANIEL) (Entered: 10/13/2021) |
| 10/13/2021 | 67 | Emergency MOTION for Order *on Plaintiffs' Pending Motion for Injunction Pending Appeal* by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 Responses due by 11/3/2021. (SCHMID, DANIEL) (Entered: 10/13/2021) |
| 10/13/2021 | 68 | ORDER re 67 Motion for Order - Plaintiffs have filed an Emergency Request for Ruling on Pending Motion for Injunction Pending Appeal. ECF No. 67. The Plaintiffs have not filed a separate Motion for an Injunction Pending Appeal. However, I will treat the Emergency Request as a motion seeking a stay or other relief authorized by Fed. R. App. P. 8(a)(1)(C). For the reasons stated in the Order Denying Motion for Preliminary |

| | | |
|---|---|---|
| | | Injunction (ECF No. 65), Plaintiffs Motion for an Injunction Pending Appeal (ECF No. 67) is ORDERED denied. By JUDGE JON D. LEVY. (aks) (Entered: 10/13/2021) |
| 10/14/2021 | 69 | APPEAL COVER SHEET Re: 66 Notice of Appeal (bfa) (Entered: 10/14/2021) |
| 10/14/2021 | 70 | CLERK'S CERTIFICATE Re: 66 Notice of Appeal. Documents sent to the U.S. Court of Appeals. (bfa) (Entered: 10/14/2021) |
| 10/14/2021 | | Abbreviated Appeal Record Transmitted Electronically to U.S. Court of Appeals re 66 Notice of Appeal (bfa) (Entered: 10/14/2021) |
| 10/14/2021 | 71 | USCA Case Number 21-1826 for 66 Notice of Appeal, filed by JOHN DOES 1-3, JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6. (bfa) (Entered: 10/14/2021) |
| 10/19/2021 | 72 | Opinion of USCA (aks) Modified on 10/20/2021 to correct date filed (aks). (Entered: 10/20/2021) |
| 10/19/2021 | 73 | JUDGMENT of USCA Check for Receipt of Mandate on 11/18/2021. (aks) (Entered: 10/20/2021) |
| 11/09/2021 | 74 | Joint MOTION to Amend 36 Order by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH Responses due by 11/30/2021. (PATWARDHAN, KIMBERLY) (Entered: 11/09/2021) |
| 11/10/2021 | 75 | MANDATE of USCA as to 66 Notice of Appeal,,, filed by JOHN DOES 1-3, JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6 (aks) (Entered: 11/10/2021) |
| 11/10/2021 | 76 | MOTION to Intervene by MTM Acquisition, Inc., SJ Acquisition, Inc. Responses due by 12/1/2021. (SCHUTZ, SIGMUND) (Entered: 11/10/2021) |
| 11/10/2021 | 77 | CERTIFICATION for Admission Pro Hac Vice of KatieLynn B. Townsend filed by SIGMUND D. SCHUTZ on behalf of MTM Acquisition, Inc., SJ Acquisition, Inc. (Total admission fee $ 100 receipt number AMEDC-2575806.) The District of Maine is a CM/ECF NextGen Court. If PHV counsel has not previously been granted electronic filing rights with the District of Maine, PHV counsel will now need to submit a PRO HAC VICE request in this District via PACER at www.pacer.uscourts.gov (SCHUTZ, SIGMUND) (Entered: 11/10/2021) |
| 11/10/2021 | 78 | CERTIFICATION for Admission Pro Hac Vice of Shannon A. Jankowski filed by SIGMUND D. SCHUTZ on behalf of MTM Acquisition, Inc., SJ Acquisition, Inc. (Total admission fee $ 100 receipt number AMEDC-2575812.) The District of Maine is a CM/ECF NextGen Court. If PHV counsel has not previously been granted electronic filing rights with the District of Maine, PHV counsel will now need to submit a PRO HAC VICE request in this District via PACER at www.pacer.uscourts.gov (SCHUTZ, SIGMUND) (Entered: 11/10/2021) |
| 11/10/2021 | 79 | CORPORATE DISCLOSURE STATEMENT by MTM Acquisition, Inc., SJ Acquisition, Inc.. (SCHUTZ, SIGMUND) (Entered: 11/10/2021) |
| 11/12/2021 | | Set Deadlines : Maine has transitioned to the NextGen ECF filing system; therefore, to complete the admissions process, Attorneys KatieLynn B. Townsend and Shannon A. Jankowski must register for a PACER account and/or request the appropriate e-filing rights in the District of Maine via PACER at www.pacer.uscourts.gov by 11/19/2021. NOTE: Counsel appearing Pro Hac Vice MUST click on the PRO HAC VICE link when requesting e-filing rights via PACER. For more details on NextGen/PACER go to our website at www.med.uscourts.gov. (aks) (Entered: 11/12/2021) |
| 11/16/2021 | 80 | NOTICE of Hearing: Case Management Conference set for 11/19/2021 02:00 PM via ZOOM Video Hearing before JUDGE JON D. LEVY. (aks) (Entered: 11/16/2021) |

| | | |
|---|---|---|
| 11/19/2021 | 81 | MOTION to Stay by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 Responses due by 12/10/2021. (Attachments: # 1 Exhibit A - Petition for Writ of Certiorari, # 2 Exhibit B - Motion to Expedite Consideration of Petition for Writ of Certiorari)(GANNAM, ROGER) (Entered: 11/19/2021) |
| 11/19/2021 | 82 | NOTICE/CORRESPONDENCE Re: State of Maine's Immunization Requirements of Healthcare Workers *on behalf of all Defendants* by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH (Attachments: # 1 Exhibit State of Maine's Immunization Requirements for Healthcare Workers)(ERWIN, JAMES) (Entered: 11/19/2021) |
| 11/19/2021 | 83 | Minute Entry for proceedings held via ZOOM Video Conference before JUDGE JON D. LEVY: Case Management Conference held. (Court Reporter: Dennis Ford) (aks) (Entered: 11/19/2021) |
| 11/19/2021 | 84 | PROCEDURAL ORDER - Set/Reset Deadlines as to 74 Joint MOTION to Amend 36 Order , 76 MOTION to Intervene , 81 MOTION to Stay . Responses due by 12:00 p.m. 12/3/2021. Replies due by 12:00 p.m. 12/8/2021. By JUDGE JON D. LEVY. (aks) (Entered: 11/19/2021) |
| 12/03/2021 | 85 | RESPONSE to Motion re 81 MOTION to Stay filed by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH. Reply due by 12/17/2021. (PATWARDHAN, KIMBERLY) (Entered: 12/03/2021) |
| 12/03/2021 | 86 | RESPONSE to Motion re 76 MOTION to Intervene , 81 MOTION to Stay filed by NORTHERN LIGHT HEALTH FOUNDATION. Reply due by 12/17/2021. (DUMAIS, RYAN) (Entered: 12/03/2021) |
| 12/03/2021 | 87 | RESPONSE in Opposition re 81 MOTION to Stay filed by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH. Reply due by 12/17/2021. (ERWIN, JAMES) (Entered: 12/03/2021) |
| 12/03/2021 | 88 | RESPONSE to Motion re 76 MOTION to Intervene filed by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH. Reply due by 12/17/2021. (ERWIN, JAMES) (Entered: 12/03/2021) |
| 12/03/2021 | 89 | RESPONSE in Opposition re 76 MOTION to Intervene filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3. Reply due by 12/17/2021. (SCHMID, DANIEL) (Entered: 12/03/2021) |
| 12/03/2021 | 90 | RESPONSE to Motion re 74 Joint MOTION to Amend 36 Order filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3. Reply due by 12/17/2021. (SCHMID, DANIEL) (Entered: 12/03/2021) |
| 12/03/2021 | | Reset Deadlines as to 74 Joint MOTION to Amend 36 Order, 76 MOTION to Intervene and 81 MOTION to Stay - Per Procedural Order #84: Replies due by 12:00 PM on 12/8/2021. (mnd) (Entered: 12/03/2021) |
| 12/08/2021 | 91 | REPLY to Response to Motion re 76 MOTION to Intervene filed by MTM ACQUISITION INC, SJ ACQUISITION INC. (SCHUTZ, SIGMUND) (Entered: 12/08/2021) |
| 12/08/2021 | 92 | REPLY to Response to Motion re 81 MOTION to Stay filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3. (GANNAM, ROGER) (Entered: 12/08/2021) |
| 12/13/2021 | 93 | Joint MOTION Amendment to Agreed-Upon Protective Order by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH Responses due by 1/3/2022. (Attachments: # 1 Text of |

| | | |
|---|---|---|
| | | Proposed Order Agreed-Upon Amendment to Protective Order)(ERWIN, JAMES) (Entered: 12/13/2021) |
| 12/14/2021 | 94 | AGREED-UPON AMENDMENT TO PROTECTIVE ORDER re 93 Joint MOTION Amendment to Agreed-Upon Protective Order By JUDGE JON D. LEVY. (aks) (Entered: 12/14/2021) |
| 12/30/2021 | 95 | ORDER granting 76 Motion to Intervene By JUDGE JON D. LEVY. (aks) (Entered: 12/30/2021) |
| 01/04/2022 | | Set Deadlines : Per Local Rule 7.1 Notice of Interested Parties or Corporate Disclosure Statement due by 1/11/2022 as to SJ ACQUISITION INC. (aks) (Entered: 01/04/2022) |
| 01/04/2022 | 96 | ORDER ON MOTION TO STAY denying 81 Motion to Stay By JUDGE JON D. LEVY. (clp) (Entered: 01/04/2022) |
| 01/04/2022 | 97 | ORDER mooting 74 Motion to Amend. By JUDGE JON D. LEVY. (clp) (Entered: 01/04/2022) |
| 01/05/2022 | 98 | NOTICE of Hearing: Case Management Conference set for 1/13/2022 at 02:00 PM via Zoom video conference before JUDGE JON D. LEVY. The parties have been previously provided the court's video conferencing access information.(clp) (Entered: 01/05/2022) |
| 01/13/2022 | 99 | Minute Entry for proceedings held before JUDGE JON D. LEVY: Case Management Conference held on 1/13/2022. Order to Follow. (Court Reporter: Tammy Martell) (clp) (Entered: 01/13/2022) |
| 01/13/2022 | 100 | ORDER-Per Case Management Conference held on 1/13/2022. The parties are ORDERED to file their Answer or Responsive Pleadings by February 14, 2022. Additionally, the Intervenors motion (as discussed on the record) shall be filed by January 27, 2022, Response to motion be filed by February 28, 2022, Reply to motion to be filed 3/14/2022. By JUDGE JON D. LEVY. (clp) (Entered: 01/13/2022) |
| 01/13/2022 | | Set Deadlines per order #100: (Answer or Responsive Pleadings due by 2/14/2022). (Intervenor's Motion due by 1/27/2022, Response to Motion due by 2/28/2022, Reply to Motion due by 3/14/2022.) (clp) (Entered: 01/13/2022) |
| 01/19/2022 | 101 | MOTION to Substitute Party and Corporate Disclosure Statement of NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER by NORTHERN LIGHT HEALTH FOUNDATION Responses due by 2/9/2022. (DUMAIS, RYAN) Modified on 1/20/2022 to add Corporate Disclosure Statement text (mnd). (Entered: 01/19/2022) |
| 01/20/2022 | 102 | ORDER granting 101 Motion to Substitute Party. NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER substituted for NORTHERN LIGHT HEALTH FOUNDATION. By JUDGE JON D. LEVY. (mnd) (Entered: 01/20/2022) |
| 01/27/2022 | 105 | MOTION Unseal Plaintiffs' Identities by MTM ACQUISITION INC, SJ ACQUISITION INC Responses due by 2/17/2022. (SCHUTZ, SIGMUND) (Entered: 01/27/2022) |
| 01/28/2022 | | Reset Deadlines as to 105 MOTION Unseal Plaintiffs' Identities per Order No. 100: Responses due by 2/28/2022. (clp) (Entered: 01/28/2022) |
| 01/31/2022 | 106 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings Case Management Conference via Zoom held on January 13, 2022 before Judge Jon D. Levy. Court Reporter/Transcriber: Tammy Martell, Telephone Number: 207.272.5566. **NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website** |

| | | |
|---|---|---|
| | | **at www.med.uscourts.gov.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 5/2/2022. (MARTELL, TAMMY) (Entered: 01/31/2022) |
| 02/14/2022 | [107](#) | MOTION to Dismiss , MOTION to Dismiss for Failure to State a Claim by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH Responses due by 3/7/2022. (RAND, KATHARINE) (Entered: 02/14/2022) |
| 02/14/2022 | [108](#) | MOTION to Dismiss for Failure to State a Claim by NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER Responses due by 3/7/2022. (DUMAIS, RYAN) (Entered: 02/14/2022) |
| 02/14/2022 | [109](#) | MOTION to Dismiss for Failure to State a Claim , MOTION to Dismiss for Lack of Jurisdiction by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH Responses due by 3/7/2022. (Attachments: # [1](#) Affidavit Wismer Declaration, # [2](#) Exhibit 1 to Wismer Dec., # [3](#) Affidavit Gagne-Holmes Declaration)(PATWARDHAN, KIMBERLY) (Entered: 02/14/2022) |
| 02/28/2022 | [110](#) | RESPONSE in Opposition re [105](#) MOTION Unseal Plaintiffs' Identities filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3. Reply due by 3/14/2022. (GANNAM, ROGER) (Entered: 02/28/2022) |
| 03/04/2022 | [111](#) | Unopposed MOTION to Extend Time To File Response In Opposition to Motions to Dismiss, Unopposed MOTION for Leave to File Consolidated Response by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 Responses due by 3/25/2022. (SCHMID, DANIEL). Modified on 3/4/2022 to add motion part and clean up docket text (clp) (Entered: 03/04/2022) |
| 03/04/2022 | 112 | ORDER granting [111](#) Motion to Extend Time; granting [111](#) Motion for Leave to File By JUDGE JON D. LEVY. (clp) (Entered: 03/04/2022) |
| 03/04/2022 | | Reset Deadlines as to [107](#) MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim , [109](#) MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction , [108](#) MOTION to Dismiss for Failure to State a Claim per order #112: Responses due by 3/21/2022. (clp) (Entered: 03/04/2022) |
| 03/14/2022 | [113](#) | REPLY to Response to Motion re [105](#) MOTION Unseal Plaintiffs' Identities filed by MTM ACQUISION INC, SJ ACQUISITION INC. (SCHUTZ, SIGMUND) (Entered: 03/14/2022) |
| 03/15/2022 | 114 | NOTICE of Hearing on Motion [105](#) MOTION Unseal Plaintiffs' Identities: Oral Argument set for 5/4/2022 at 12:00 PM via VIDEO HEARING before JUDGE JON D. LEVY. The parties have been previously provided the Court's video hearing access information. (clp) (Entered: 03/15/2022) |
| 03/21/2022 | [115](#) | Unopposed MOTION to Extend Time to File Response in Opposition to Motions to Dismiss by 24 Hours by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 Responses due by 4/11/2022. (SCHMID, DANIEL) (Entered: 03/21/2022) |
| 03/21/2022 | 116 | ORDER granting [115](#) Motion to Extend Time By JUDGE JON D. LEVY. (clp) (Entered: 03/21/2022) |
| 03/21/2022 | | Reset Deadlines as to [107](#) MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim , [108](#) MOTION to Dismiss for Failure to State a Claim, [109](#) MOTION to Dismiss |

| | | |
|---|---|---|
| | | for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction per Order #116: Responses due by 3/22/2022. (clp) (Entered: 03/21/2022) |
| 03/22/2022 | 117 | RESPONSE in Opposition re 109 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction , 107 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim , 108 MOTION to Dismiss for Failure to State a Claim filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3. Reply due by 4/5/2022. (GANNAM, ROGER) (Entered: 03/22/2022) |
| 03/31/2022 | 118 | Consent MOTION to Extend Time to April 12, 2022, Consent MOTION for Leave to File Reply Memoranda in Exceed Page Limitation by NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER (DUMAIS, RYAN). Modified on 3/31/2022 to add motion part and clean up docket text (clp). (Entered: 03/31/2022) |
| 04/04/2022 | 119 | ORDER granting 118 Motion to Extend Time; granting 118 Motion for Leave to File Reply Memoranda in Exceed Page Limitation By JUDGE JON D. LEVY. (clp) (Entered: 04/04/2022) |
| 04/04/2022 | | Reset Deadlines as to 107 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim, 108 MOTION to Dismiss for Failure to State a Claim, 109 MOTION to Dismiss for Failure to State a Claim, MOTION to Dismiss for Lack of Jurisdiction- Per order No. 119: Reply due by 4/12/2022. (clp) (Entered: 04/04/2022) |
| 04/12/2022 | 120 | REPLY to Response to Motion re 109 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH. (PATWARDHAN, KIMBERLY) (Entered: 04/12/2022) |
| 04/12/2022 | 121 | REPLY to Response to Motion re 107 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim filed by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH. (ERWIN, JAMES) (Entered: 04/12/2022) |
| 04/12/2022 | 122 | REPLY to Response to Motion re 108 MOTION to Dismiss for Failure to State a Claim filed by NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER. (DUMAIS, RYAN) (Entered: 04/12/2022) |
| 04/14/2022 | 123 | NOTICE of Hearing on Motion 107 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim , 108 MOTION to Dismiss for Failure to State a Claim , 109 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction: Oral Argument set for 6/2/2022 at 10:00 AM via video hearing before JUDGE JON D. LEVY. The parties have been previously provided the Court's video hearing access information.(clp) (Entered: 04/14/2022) |
| 04/19/2022 | 124 | MOTION by Attorney Valerie A. Wright to Withdraw as Attorney by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH Responses due by 5/10/2022. (WRIGHT, VALERIE) (Entered: 04/19/2022) |
| 04/19/2022 | 125 | ORDER granting 124 Motion to Withdraw as Attorney. By JUDGE JON D. LEVY. (clp) (Entered: 04/19/2022) |
| 05/02/2022 | 126 | NOTICE/CORRESPONDENCE Re: SUPPLEMENTAL AUTHORITY by MTM ACQUISITION INC, SJ ACQUISITION INC (Attachments: # 1 Exhibit 1 - Courthouse News Service v. Quinlan)(SCHUTZ, SIGMUND) (Entered: 05/02/2022) |
| 05/02/2022 | 127 | NOTICE/CORRESPONDENCE Re: Response to Media Intervenors' Notice of Supplemental Authority (dkt. 126) by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 (SCHMID, DANIEL) (Entered: 05/02/2022) |

| | | |
|---|---|---|
| 05/02/2022 | 128 | NOTICE/CORRESPONDENCE Re: Supplemental Authority by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 (SCHMID, DANIEL) (Entered: 05/02/2022) |
| 05/04/2022 | 129 | Minute Entry for proceedings held before JUDGE JON D. LEVY: Oral Argument held re 105 MOTION Unseal Plaintiffs' Identities filed by SJ ACQUISITION INC, MTM ACQUISITION INC. Written Decision to enter. (Court Reporter: Dennis Ford) (clp) (Entered: 05/04/2022) |
| 05/26/2022 | 130 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings Oral Argument held on 5-4-2022 before Judge Jon D. Levy. Court Reporter/Transcriber: Dennis Ford, Telephone Number: 2078318056. **NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.med.uscourts.gov.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 8/24/2022. (FORD, DENNIS) (Entered: 05/26/2022) |
| 05/31/2022 | 131 | ORDER ON MOTION TO UNSEAL PLAINTIFFS' IDENTITIES granting 105 Motion to Unseal Plaintiffs' Identities By JUDGE JON D. LEVY. (tcs) (Entered: 05/31/2022) |
| 05/31/2022 | | Set Deadlines per ECF No. 131: Plaintiffs' First Amended Complaint due by 6/7/2022. (tcs) Modified on 5/31/2022 to include "per ECF No. 131" (tcs). (Entered: 05/31/2022) |
| 06/01/2022 | 132 | NOTICE OF APPEAL as to 131 Order on Motion to Unseal Plaintiffs' Identities by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 . ( Filing fee $ 505 receipt number AMEDC-2659169.)<br><br>**NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from our web site at http://www.med.uscourts.gov/forms/ MUST be completed and submitted to the Court of Appeals. Counsel should also register for a First Circuit CM/ECF Appellate Filer Account at https://pacer.psc.uscourts.gov/pscof/regWizard.jsf and review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf** (SCHMID, DANIEL) Modified on 6/1/2022 to clean up docket text (clp). (Entered: 06/01/2022) |
| 06/01/2022 | | COPIES of Notice of Appeal Sent to Counsel Re: 132 Notice of Appeal, filed by JOHN DOES 1-3, JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6. (bfa) (Entered: 06/01/2022) |
| 06/01/2022 | 133 | APPEAL COVER SHEET Re: 132 Notice of Appeal (bfa) (Entered: 06/01/2022) |
| 06/01/2022 | 134 | CLERK'S CERTIFICATE Re: 132 Notice of Appeal. Documents sent to the U.S. Court of Appeals. (bfa) (Entered: 06/01/2022) |
| 06/01/2022 | | Abbreviated Appeal Record Transmitted Electronically to U.S. Court of Appeals re 132 Notice of Appeal (bfa) (Entered: 06/01/2022) |
| 06/01/2022 | 135 | **NOTICE OF CANCELLED HEARING:** Oral Argument re Motion No. 107 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim, Motion No. 108 MOTION to Dismiss for Failure to State a Claim, Motion No. 109 MOTION to Dismiss for Failure to State a Claim, MOTION to Dismiss for Lack of Jurisdiction set for 6/2/2022 at 10:00 |

| | | |
|---|---|---|
| | | AM via video hearing before JUDGE JON D. LEVY has been cancelled and will be rescheduled by the Clerk's Office. (clp) (Entered: 06/01/2022) |
| 06/02/2022 | 136 | USCA Case Number 22-1435 for 132 Notice of Appeal, filed by JOHN DOES 1-3, JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6. (bfa) (Entered: 06/02/2022) |
| 06/03/2022 | 137 | NOTICE OF VIDEO HEARING re: 107 MOTION to Dismiss/MOTION to Dismiss for Failure to State a Claim ; 108 MOTION to Dismiss for Failure to State a Claim & 109 MOTION to Dismiss for Failure to State a Claim/MOTION to Dismiss for Lack of Jurisdiction : Oral Argument set for 6/24/2022 at 2:00 PM before JUDGE JON D. LEVY. All participants have been provided with the video connection information. (mnd) (Entered: 06/03/2022) |
| 06/07/2022 | 138 | MOTION to Stay *Proceedings Pending Interlocutory Appeal* by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 Responses due by 6/28/2022. (SCHMID, DANIEL) (Entered: 06/07/2022) |
| 06/08/2022 | 139 | RESPONSE in Opposition re 138 MOTION to Stay *Proceedings Pending Interlocutory Appeal* filed by MTM ACQUISITION INC, SJ ACQUISITION INC. Reply due by 6/22/2022. (SCHUTZ, SIGMUND) (Entered: 06/08/2022) |
| 06/08/2022 | 140 | ORDER By JUDGE JON D. LEVY. (clp) (Entered: 06/08/2022) |
| 06/08/2022 | | Reset Deadlines as to 138 MOTION to Stay *Proceedings Pending Interlocutory Appeal* per order No. 140: Responses due by 6/13/2022. Reply due by 6/15/2022. (clp) (Entered: 06/08/2022) |
| 06/13/2022 | 141 | RESPONSE in Opposition re 138 MOTION to Stay *Proceedings Pending Interlocutory Appeal* filed by NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER. Reply due by 6/27/2022. (DUMAIS, RYAN) (Entered: 06/13/2022) |
| 06/13/2022 | | Reset Deadlines as to 138 MOTION to Stay *Proceedings Pending Interlocutory Appeal* per order no. 140: Reply due by 6/15/2022. (clp) (Entered: 06/13/2022) |
| 06/13/2022 | 142 | RESPONSE in Opposition re 138 MOTION to Stay *Proceedings Pending Interlocutory Appeal* filed by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH. Reply due by 6/27/2022. (PATWARDHAN, KIMBERLY) (Entered: 06/13/2022) |
| 06/13/2022 | | Reset Deadlines as to 138 MOTION to Stay *Proceedings Pending Interlocutory Appeal* per order no. 140: Reply due by 6/15/2022. (clp) (Entered: 06/13/2022) |
| 06/13/2022 | 143 | RESPONSE in Opposition re 138 MOTION to Stay *Proceedings Pending Interlocutory Appeal* filed by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH. Reply due by 6/27/2022. (ERWIN, JAMES) (Entered: 06/13/2022) |
| 06/14/2022 | | Reset Deadlines as to 138 MOTION to Stay *Proceedings Pending Interlocutory Appeal* per order no. 140: Reply due by 6/15/2022. (clp) (Entered: 06/14/2022) |
| 06/15/2022 | 144 | REPLY to Response to Motion re 138 MOTION to Stay *Proceedings Pending Interlocutory Appeal* filed by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3. (SCHMID, DANIEL) (Entered: 06/15/2022) |
| 06/17/2022 | 145 | ORDER ON MOTION TO STAY PENDING APPEAL denying 138 Motion to Stay By JUDGE JON D. LEVY. (clp) (Entered: 06/17/2022) |
| 06/17/2022 | | Reset Deadlines Per order no. 145: Plaintiff's Amended Complaint due by 7/8/2022. (clp) (Entered: 06/17/2022) |

| 06/24/2022 | 146 | Minute Entry for proceedings held before JUDGE JON D. LEVY: Oral Argument held re 109 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by NIRAV D SHAH, JANET T MILLS, JEANNE M LAMBREW, 107 MOTION to Dismiss MOTION to Dismiss for Failure to State a Claim filed by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEHEALTH, MAINEGENERAL HEALTH, 108 MOTION to Dismiss for Failure to State a Claim filed by NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER. Written Decision to issue. (Court Reporter: Lori Dunbar) (clp) (Entered: 06/24/2022) |
| --- | --- | --- |
| 07/07/2022 | 147 | Opinion of USCA Re: Request to Stay pending this 132 Notice of Appeal and filed by JOHN DOES 1-3, JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6 (jwr) (Entered: 07/08/2022) |
| 07/07/2022 | 148 | ORDER of USCA re: Request to Stay as to 132 Notice of Appeal filed by JOHN DOES 1-3, JOAN DOES 1-1000, JACK DOES 1-1000, JANE DOES 1-6 (jwr) (Entered: 07/08/2022) |
| 07/08/2022 | 149 | Unopposed MOTION to Extend Time to File First Amended Complaint by JACK DOES 1-1000, JANE DOES 1-6, JOAN DOES 1-1000, JOHN DOES 1-3 Responses due by 7/29/2022. (SCHMID, DANIEL) (Entered: 07/08/2022) |
| 07/08/2022 | 150 | ORDER granting 149 Motion to Extend Time By JUDGE JON D. LEVY. (clp) (Entered: 07/08/2022) |
| 07/08/2022 | | Reset Deadlines per order no. 150: Amended Complaint due by 7/11/2022. (clp) (Entered: 07/08/2022) |
| 07/08/2022 | 151 | CLERK'S FIRST SUPPLEMENTAL CERTIFICATE Re: 132 Notice of Appeal. Documents Sent to U.S. Court of Appeals (clp) (Entered: 07/08/2022) |
| 07/08/2022 | | Supplemental Record on Appeal transmitted to US Court of Appeals re 132 Notice of Appeal (clp) (Entered: 07/08/2022) |
| 07/11/2022 | 152 | First AMENDED COMPLAINT against All Defendants. (Service of Process Deadline 10/11/2022)(SCHMID, DANIEL) (Entered: 07/11/2022) |
| 07/12/2022 | 153 | CLERK'S Second SUPPLEMENTAL CERTIFICATE Re: 132 Notice of Appeal. Documents Sent to U.S. Court of Appeals (bfa) (Entered: 07/12/2022) |
| 07/12/2022 | | Supplemental Record on Appeal transmitted to US Court of Appeals re 132 Notice of Appeal (bfa) (Entered: 07/12/2022) |
| 07/14/2022 | 154 | JUDGMENT of USCA re 132 Notice of Appeal (clp) (Entered: 07/15/2022) |
| 07/14/2022 | 155 | MANDATE of USCA as to 132 Notice of Appeal (clp) (Entered: 07/15/2022) |
| 08/18/2022 | 156 | ORDER ON MOTIONS TO DISMISS re 107 Motion to Dismiss; Motion to Dismiss for Failure to State a Claim; 108 Motion to Dismiss for Failure to State a Claim; 109 Motion to Dismiss for Failure to State a Claim; Motion to Dismiss for Lack of Jurisdiction By JUDGE JON D. LEVY. (clp) (Entered: 08/18/2022) |
| 08/19/2022 | 157 | JUDGMENT By DEPUTY CLERK: Charity Pelletier. (clp) (Entered: 08/19/2022) |
| 09/15/2022 | 158 | NOTICE OF APPEAL by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA . ( Filing fee $ 505 receipt number AMEDC-2701259.)<br><br>**NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from our web site at http://www.med.uscourts.gov/forms/ MUST be completed and submitted to the Court of Appeals. Counsel should also register for a** |

| | | |
|---|---|---|
| | | **First Circuit CM/ECF Appellate Filer Account at** **https://pacer.psc.uscourts.gov/pscof/regWizard.jsf and review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at** **http://www.ca1.uscourts.gov/cmecf** (SCHMID, DANIEL) (Entered: 09/15/2022) |
| 09/16/2022 | | COPIES of Notice of Appeal Sent to Counsel Re: 158 Notice of Appeal, filed by ADAM JONES, DEBRA CHALMERS, NATALIE SALAVARRIA, JENNIFER BARBALIAS, ALICIA LOWE, GARTH BERENYI, NICOLE GIROUX. (bfa) (Entered: 09/16/2022) |
| 09/16/2022 | 159 | APPEAL COVER SHEET Re: 158 Notice of Appeal (bfa) (Entered: 09/16/2022) |
| 09/16/2022 | 160 | CLERK'S CERTIFICATE Re: 158 Notice of Appeal. Documents sent to the U.S. Court of Appeals. (bfa) (Entered: 09/16/2022) |
| 09/16/2022 | | Abbreviated Appeal Record Transmitted Electronically to U.S. Court of Appeals re 158 Notice of Appeal (bfa) (Entered: 09/16/2022) |
| 09/19/2022 | 161 | USCA Case Number 22-1710 for 158 Notice of Appeal, filed by ADAM JONES, DEBRA CHALMERS, NATALIE SALAVARRIA, JENNIFER BARBALIAS, ALICIA LOWE, GARTH BERENYI, NICOLE GIROUX. (bfa) (Entered: 09/19/2022) |
| 11/23/2022 | 162 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings Videoconference Oral Argument held on 6/24/22 before Judge Jon D. Levy. Court of Appeals Docket Number 22-1710. Court Reporter/Transcriber: Lori Dunbar, Telephone Number: (207) 749-4072. **NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.med.uscourts.gov.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 2/21/2023. (DUNBAR, LORI) (Entered: 11/23/2022) |
| 05/25/2023 | 163 | Opinion of USCA Re: 158 Notice of Appeal filed by ADAM JONES, DEBRA CHALMERS, NATALIE SALAVARRIA, JENNIFER BARBALIAS, ALICIA LOWE, GARTH BERENYI, NICOLE GIROUX. Check for Receipt of Mandate on 6/26/2023. (clp) (Entered: 05/25/2023) |
| 05/25/2023 | 164 | JUDGMENT of USCA re 158 Notice of Appeal (clp) (Entered: 05/25/2023) |
| 06/16/2023 | 165 | MANDATE of USCA as to 158 Notice of Appeal. (clp) (Entered: 06/20/2023) |
| 06/21/2023 | 166 | NOTICE of Video Hearing: Case Management Conference set for 7/12/2023 at 02:00 PM via Zoom VIDEO HEARING before JUDGE JON D. LEVY. The parties have been previously provided the Court's Zoom Video Hearing access information.(clp) (Entered: 06/21/2023) |
| 07/11/2023 | 167 | NOTICE/CORRESPONDENCE Re: Proposed Rule Change and Enforcement Change by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH (Attachments: # 1 Press Release)(PATWARDHAN, KIMBERLY) (Entered: 07/11/2023) |
| 07/12/2023 | 168 | MOTION to Substitute Party by JEANNE M LAMBREW, JANET T MILLS, NIRAV D SHAH Responses due by 8/2/2023. (PATWARDHAN, KIMBERLY) (Entered: 07/12/2023) |
| 07/12/2023 | 169 | Minute Entry for proceedings held before JUDGE JON D. LEVY: Case Management Conference held on 7/12/2023. Order to follow. (Court Reporter: Tammy Martell) (slg) (Entered: 07/12/2023) |

| | | |
|---|---|---|
| 07/12/2023 | 170 | ORDER AND REPORT OF CONFERENCE - granting 168 Motion to Substitute Party. NANCY BEARDSLEY substituted for NIRAV D SHAH. By JUDGE JON D. LEVY. (mnd) (Entered: 07/12/2023) |
| 07/12/2023 | 171 | SCHEDULING ORDER: Discovery due by 11/29/2023. Written Notice of Intent to File Summary Judgment Motion and Request for Pre-Filing Conference due by 12/6/2023. Motions due by 12/20/2023. Ready for Trial on 3/5/2024. By JUDGE JON D. LEVY. (mnd) (Entered: 07/12/2023) |
| 07/12/2023 | | Set Deadlines - Per Order and Report of Conference #170: Provider Defendants shall file any Rule 54(b) motion by 7/28/2023. (mnd) (Entered: 07/12/2023) |
| 07/28/2023 | 172 | MOTION for Judgment *(Final)* pursuant to Fed. R. Civ. P. 54(b) by GENESIS HEALTHCARE LLC, GENESIS HEALTHCARE OF MAINE LLC, MAINEGENERAL HEALTH, MAINEHEALTH, NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER Responses due by 8/18/2023. (ERWIN, JAMES) (Entered: 07/28/2023) |
| 07/28/2023 | 173 | MOTION to Stay by NANCY BEARDSLEY, JEANNE M LAMBREW, JANET T MILLS Responses due by 8/18/2023. (Attachments: # 1 Exhibit 1 - Ch. 264 (July 2023 proposed amendments))(PATWARDHAN, KIMBERLY) (Entered: 07/28/2023) |
| 08/02/2023 | 174 | **FILED IN ERROR** JOINT Proposed Discovery and Motion Filing Plan *and Objection to Scheduling Order (dkt. 171)* by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA. (Attachments: # 1 Exhibit A - Proposed Scheduling Order) (SCHMID, DANIEL) Modified on 8/2/2023 to add filed in error notation. Document to be re-filed as motion at the request of the Clerk's office.(clp). (Entered: 08/02/2023) |
| 08/02/2023 | 175 | NOTICE of Docket Entry Modification regarding 174 Joint Proposed Discovery and Motion Filing Plan : Modified on 8/2/2023 by the Clerk's Office to add filed in error notation. Document to be re-filed as motion at the request of the Clerk's office. (clp) (Entered: 08/02/2023) |
| 08/02/2023 | 176 | Joint MOTION to Amend Scheduling Order by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA Responses due by 8/23/2023. (Attachments: # 1 Exhibit A - Proposed Scheduling Order)(SCHMID, DANIEL) (Entered: 08/02/2023) |
| 08/04/2023 | 177 | ORDER granting in part 176 Motion to Amend Scheduling Order. This matter is is placed on a modified standard track. The parties' shall be allowed to serve 30 interrogatories per side and two sets of requests for production of documents per side, and shall be allowed five depositions per side in addition to the depositions of each named party and each designated expert. The State Defendants shall answer or otherwise respond to Plaintiffs' First Amended Complaint 152 14 days following the issuance of a decision and order on Defendants' Motion to Stay 173 . The Court notes that the proposed time periods in the parties' joint objection appear reasonable at present. For tracking purposes, the precise remaining scheduling order deadlines will be established upon the issuance of a decision and order on the Motion to Stay. By MAGISTRATE JUDGE KAREN FRINK WOLF. (WOLF, KAREN) (Entered: 08/04/2023) |
| 08/04/2023 | 178 | ORDER -It is ORDERED that the parties shall submit their filings in response to the State Defendants' Motion to Stay (ECF No. 173) in accordance with the following expedited schedule: Plaintiffs' responses shall be due no later than August 14, 2023. State Defendants' replies shall be due no later than August 21, 2023. /s/ Jon D. Levy, Chief Judge. By JUDGE JON D. LEVY. (clp) (Entered: 08/04/2023) |
| 08/04/2023 | | Reset Deadlines as to 173 MOTION to Stay per order no. 178: Responses due by |

| | | |
|---|---|---|
| | | 8/14/2023. Reply due by 8/21/2023. (clp) (Entered: 08/04/2023) |
| 08/14/2023 | [179](#) | RESPONSE in Opposition re [173](#) MOTION to Stay filed by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA. Reply due by 8/28/2023. (SCHMID, DANIEL) (Entered: 08/14/2023) |
| 08/15/2023 | | Reset Deadlines as to [173](#) MOTION to Stay per order no. 178: Reply due by 8/21/2023. (clp) (Entered: 08/15/2023) |
| 08/18/2023 | [180](#) | RESPONSE in Opposition re [172](#) MOTION for Judgment *(Final) pursuant to Fed. R. Civ. P. 54(b)* filed by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA. Reply due by 9/1/2023. (SCHMID, DANIEL) (Entered: 08/18/2023) |
| 08/21/2023 | [181](#) | REPLY to Response to Motion re [173](#) MOTION to Stay filed by NANCY BEARDSLEY, JEANNE M LAMBREW, JANET T MILLS. (PATWARDHAN, KIMBERLY) (Entered: 08/21/2023) |
| 08/25/2023 | [182](#) | ORDER ON STATE DEFENDANTS' MOTION TO STAY denying [173](#) Motion to Stay By JUDGE JON D. LEVY. (clp) (Entered: 08/25/2023) |
| 08/28/2023 | 183 | ORDER setting Scheduling Order Deadlines as follows: the State Defendants shall answer or otherwise respond to the Amended Complaint by September 8, 2023. Initial Disclosures shall be served by September 29, 2023. The deadline for amendment of the pleadings and joinder of parties is September 29, 2023. Plaintiff shall designate experts by January 19, 2024. Defendants shall designate experts by February 23, 2024. Discovery shall be completed by May 17, 2024. Notice of Intent to File Summary Judgment Motion and Request for Pre-filing Conference shall be filed by May 24, 2024. Dispositive motions and Daubert/Kumho motions shall be filed by June 14, 2024. The case shall be ready for trial on September 3, 2024. Plaintiffs shall serve a written settlement demand by April 26, 2024, and Defendants shall respond in writing to same by May 17, 2024. Absent extraordinary circumstances, given the length of time this matter has existed on the docket and the modified discovery schedule set herein, the parties should not expect future enlargements of scheduling order deadlines. By MAGISTRATE JUDGE KAREN FRINK WOLF. (clp) (Entered: 08/28/2023) |
| 08/29/2023 | [184](#) | MOTION to Substitute Party by NANCY BEARDSLEY, JEANNE M LAMBREW, JANET T MILLS Responses due by 9/19/2023. (PATWARDHAN, KIMBERLY) (Entered: 08/29/2023) |
| 08/31/2023 | [185](#) | Unopposed MOTION by Attorney Roger K. Gannam to Withdraw as Attorney by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA Responses due by 9/21/2023. (GANNAM, ROGER) (Entered: 08/31/2023) |
| 09/01/2023 | 186 | ORDER granting [185](#) Motion to Withdraw as Attorney. By MAGISTRATE JUDGE KAREN FRINK WOLF. (WOLF, KAREN) (Entered: 09/01/2023) |
| 09/01/2023 | [187](#) | NOTICE/CORRESPONDENCE Re: Rule change finalized by NANCY BEARDSLEY, JEANNE M LAMBREW, JANET T MILLS (PATWARDHAN, KIMBERLY) (Entered: 09/01/2023) |
| 09/08/2023 | [188](#) | MOTION to Dismiss for Lack of Jurisdiction *Remaining Claims in Amended Complaint (ECF No. 152) as Moot* by NANCY BEARDSLEY, JEANNE M LAMBREW Responses due by 9/29/2023. (Attachments: # [1](#) Affidavit of Nancy Beardsley, # [2](#) Exhibit 1 to Beardsley Decl., # [3](#) Exhibit 2 to Beardsley Decl.)(PATWARDHAN, KIMBERLY) Modified on 2/23/2024 to remove JANET MILLS as filer (clp). (Entered: 09/08/2023) |

| 09/20/2023 | 189 | ORDER granting 184 Motion to Substitute Party. PUTHIERY VA added. NANCY BEARDSLEY (Acting Director of the Maine Center for Disease Control and Prevention) terminated By JUDGE JON D. LEVY. (clp) (Entered: 09/20/2023) |
| 09/26/2023 | 190 | Unopposed MOTION to Extend Time to File Response to Motion to Dismiss by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA Responses due by 10/17/2023. (SCHMID, DANIEL) (Entered: 09/26/2023) |
| 09/27/2023 | 191 | ORDER granting 190 Motion to Extend Time. Plaintiffs shall respond to the State Defendants' Motion to Dismiss by October 6, 2023. By MAGISTRATE JUDGE KAREN FRINK WOLF. (WOLF, KAREN) (Entered: 09/27/2023) |
| 09/27/2023 | | Reset Deadlines as to 188 MOTION to Dismiss for Lack of Jurisdiction *Remaining Claims in Amended Complaint (ECF No. 152) as Moot* per order no. 191: Responses due by 10/6/2023. (clp) (Entered: 09/27/2023) |
| 10/06/2023 | 192 | Unopposed MOTION to Extend Time Time to File Response to Motion to Dismiss *by One Business Day* by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA Responses due by 10/27/2023. (SCHMID, DANIEL) (Entered: 10/06/2023) |
| 10/06/2023 | 193 | RESPONSE to Motion re 192 Unopposed MOTION to Extend Time Time to File Response to Motion to Dismiss *by One Business Day* filed by JEANNE M LAMBREW, PUTHIERY VA. Reply due by 10/20/2023. (PATWARDHAN, KIMBERLY) (Entered: 10/06/2023) |
| 10/06/2023 | 194 | ORDER granting 192 Motion to Extend Time to File Response to Motion to Dismiss by One Business Day By JUDGE JON D. LEVY. (clp) (Entered: 10/06/2023) |
| 10/06/2023 | | Reset Deadlines as to 188 MOTION to Dismiss for Lack of Jurisdiction *Remaining Claims in Amended Complaint (ECF No. 152) as Moot* per order no. 194: Responses due by 10/10/2023. (clp) (Entered: 10/06/2023) |
| 10/10/2023 | 195 | RESPONSE in Opposition re 188 MOTION to Dismiss for Lack of Jurisdiction *Remaining Claims in Amended Complaint (ECF No. 152) as Moot* filed by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA. Reply due by 10/24/2023. (SCHMID, DANIEL) (Entered: 10/10/2023) |
| 10/24/2023 | 196 | REPLY to Response to Motion re 188 MOTION to Dismiss for Lack of Jurisdiction *Remaining Claims in Amended Complaint (ECF No. 152) as Moot* filed by JEANNE M LAMBREW, JANET T MILLS, PUTHIERY VA. (PATWARDHAN, KIMBERLY) (Entered: 10/24/2023) |
| 10/27/2023 | 197 | Joint MOTION for Confidentiality Order by JEANNE M LAMBREW, PUTHIERY VA Responses due by 11/17/2023. (Attachments: # 1 Proposed Confidentiality Order) (PATWARDHAN, KIMBERLY) (Entered: 10/27/2023) |
| 10/27/2023 | 198 | CONFIDENTIALITY ORDER granting 197 Motion for Confidentiality Order. By MAGISTRATE JUDGE KAREN FRINK WOLF. (jgd) (Entered: 10/27/2023) |
| 10/31/2023 | 199 | NOTICE of Hearing on Motion 188 MOTION to Dismiss for Lack of Jurisdiction *Remaining Claims in Amended Complaint (ECF No. 152) as Moot* : Oral Argument set for 12/4/2023 at 02:00 PM in Portland Courtroom 2 before JUDGE JON D. LEVY. (clp) (Entered: 10/31/2023) |

| | | |
|---|---|---|
| 10/31/2023 | 200 | Unopposed MOTION Leave to Appear in the Absence of Local Counsel by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA Responses due by 11/21/2023. (SCHMID, DANIEL) (Entered: 10/31/2023) |
| 11/03/2023 | 201 | ORDER granting 200 Motion for Leave to Appear in the Absence of Local Counsel By JUDGE JON D. LEVY. (clp) (Entered: 11/03/2023) |
| 11/07/2023 | 202 | ORDER - Provider Defendants' supplemental filing re: Motion for Entry of Final Judgment due by 11/21/2023. By JUDGE JON D. LEVY. (lrt) (Entered: 11/07/2023) |
| 11/21/2023 | 203 | Supplemental MOTION for Judgment by NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER, NORTHERN LIGHT HEALTH FOUNDATION Responses due by 12/12/2023. (DUMAIS, RYAN) (Entered: 11/21/2023) |
| 11/27/2023 | 204 | ORDER-It is ORDERED that the Plaintiffs shall be prepared to respond to the Provider Defendants' supplemental briefing (ECF No. 203) on the Motion for Entry of Final Judgment (ECF No. 172) at the hearing on December 4, 2023. (clp) (Entered: 11/27/2023) |
| 12/01/2023 | 205 | NOTICE/CORRESPONDENCE Re: December 4, 2023 Oral Argument by NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER (DUMAIS, RYAN) (Entered: 12/01/2023) |
| 12/04/2023 | 206 | Minute Entry for proceedings held before JUDGE JON D. LEVY: Oral Argument held re 188 MOTION to Dismiss for Lack of Jurisdiction *Remaining Claims in Amended Complaint (ECF No. 152) as Moot* filed by JANET T MILLS, NANCY BEARDSLEY, JEANNE M LAMBREW. Decision to Enter. (Court Reporter: Michelle Feliccitti) (clp) (Entered: 12/04/2023) |
| 12/11/2023 | 207 | ORDER granting 172 Motion for Judgment; dismissing as moot 203 Motion for Judgment. It is ORDERED that the Provider Defendants' Motion for Entry of Final Judgment (ECF No. 172) is GRANTED. Accordingly, the Provider Defendants' Supplement to their Motion for Entry of Final Judgment (ECF No. 203) is DISMISSED as moot. By JUDGE JON D. LEVY. (clp) (Entered: 12/11/2023) |
| 12/11/2023 | 208 | JUDGMENT of DISMISSAL entered as to MAINEHEALTH, GENESIS HEALTHCARE OF MAINE LLC, GENESIS HEALTHCARE LLC, MAINEGENERAL HEALTH and NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER- By DEPUTY CLERK: Charity Pelletier. (clp) Modified on 2/23/2024 to add clarifying text (clp). (Entered: 12/11/2023) |
| 01/04/2024 | 210 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings Oral Argument on Motion No. 188 (Motion to Dismiss) held on December 4, 2023 before Judge Jon D. Levy. Court Reporter/Transcriber: Michelle Feliccitti, Telephone Number: 207.432.3114. **NOTICE RE REDACTION OF TRANSCRIPTS: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.med.uscourts.gov.** Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Release of Transcript Restriction set for 4/3/2024. (FELICCITTI, MICHELLE) (Entered: 01/04/2024) |
| 02/23/2024 | 211 | ORDER ON DEFENDANTS' MOTION TO DISMISS SURVIVING CLAIMS AS MOOT granting 188 Motion to Dismiss for Lack of Jurisdiction By JUDGE JON D. |

| | | LEVY. (clp) (Entered: 02/23/2024) |
|---|---|---|
| 02/23/2024 | 212 | JUDGMENT OF DISMISSAL entered as to Defendants JEANNE M. LAMBREW and DR. PUTHIERY VA - By DEPUTY CLERK: Charity Pelletier. (clp) (Entered: 02/23/2024) |
| 03/22/2024 | 213 | NOTICE OF APPEAL by JENNIFER BARBALIAS, GARTH BERENYI, DEBRA CHALMERS, NICOLE GIROUX, ADAM JONES, ALICIA LOWE, NATALIE SALAVARRIA . ( Filing fee $ 605 receipt number AMEDC-2930913.)<br><br>**NOTICE TO FILER:** A transcript Report/Order form <u>MUST</u> be completed and submitted to the First Circuit Court of Appeals. The form can be found under the Forms & Fees section on their website at https://www.ca1.uscourts.gov.<br><br>**NOTICE TO COUNSEL:** Counsel should register for a First Circuit CM/ECF Appellate Filer Account at https://pacer.psc.uscourts.gov. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at https://www.ca1.uscourts.gov/cmecf (SCHMID, DANIEL) (Entered: 03/22/2024) |
| 03/22/2024 | | COPIES of Notice of Appeal Sent to Counsel Re: 213 Notice of Appeal filed by ADAM JONES, DEBRA CHALMERS, NATALIE SALAVARRIA, JENNIFER BARBALIAS, ALICIA LOWE, GARTH BERENYI, NICOLE GIROUX. (clp) (Entered: 03/22/2024) |
| 03/22/2024 | 214 | APPEAL COVER SHEET Re: 213 Notice of Appeal (clp) (Entered: 03/22/2024) |
| 03/22/2024 | 215 | CLERK'S CERTIFICATE Re: 213 Notice of Appeal. Documents sent to the U.S. Court of Appeals. (clp) (Entered: 03/22/2024) |
| 03/22/2024 | | Supplemental Record on Appeal transmitted to US Court of Appeals re 213 Notice of Appeal (clp) (Entered: 03/22/2024) |
| 03/22/2024 | 216 | USCA Case Number 24-1283 for 213 Notice of Appeal filed by ADAM JONES, DEBRA CHALMERS, NATALIE SALAVARRIA, JENNIFER BARBALIAS, ALICIA LOWE, GARTH BERENYI, NICOLE GIROUX. (clp) (Entered: 03/22/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/22/2024 09:10:53 | | |
| **PACER Login:** | djschmid | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-00242-JDL |
| **Billable Pages:** | 29 | **Cost:** | 2.90 |

# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE
### Bangor Division

| | |
|---|---|
| ALICIA LOWE, DEBRA CHALMERS, JENNIFER BARBALIAS, NATALIE SALAVARRIA, NICOLE GIROUX, GARTH BERENYI, ADAM JONES, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 1:21-cv-00242-JDL ) ) ) |
| v. | ) ) |
| JANET T. MILLS, in her official capacity as Governor of the State of Maine, JEANNE M. LAMBREW, in her official capacity as Commissioner of the Maine Department of Health and Human Services, NIRAV D. SHAH, in his official capacity as Director of the Maine Center for Disease Control and Prevention, MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE, LLC, NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER, MAINEGENERAL HEALTH, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

*"I believe we must do everything in our power not to fan the flames of fear but to encourage public health professionals . . . to continue their brave humanitarian work."* – Janet Mills[1]

## FIRST AMENDED VERIFIED COMPLAINT
## FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND DAMAGES

For their FIRST AMENDED VERIFIED COMPLAINT against Defendants, JANET T.

MILLS, in her official capacity as Governor of the State of Maine, JEANNE M. LAMBREW, in

her official capacity as Commissioner of the Maine Department of Health and Human Services,

---

[1] Jacob Sullum, *Ebola Panic Control*, Reason.com (Nov. 5, 2014), https://reason.com/2014/11/05/ebola-panic-control/ (quoting then-Attorney General Janet Mills concerning unwarranted quarantine orders against healthcare professionals) (emphasis added)).

NIRAV D. SHAH, in his official capacity as Director of the Maine Center for Disease Control and Prevention, MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE, LLC, NORTHERN LIGHT EASTERN MAINE MEDICAL CENTER, and MAINEGENERAL HEALTH, Plaintiffs, ALICIA LOWE, DEBRA CHALMERS, JENNIFER BARBALIAS, NATALIE SALAVARRIA, NICOLE GIROUX, GARTH BERENYI, and ADAM JONES, allege and aver as follows:

## <u>INTRODUCTION</u>

1. The seminal issue before this Court can be boiled down to a simple question: Does federal law apply in Maine? Though the question borders on the absurd, so does Defendants' answer to it. Defendants have explicitly claimed to healthcare workers in Maine, including Plaintiffs, that federal law does not apply, and neither should they. Defendants have informed Plaintiffs, who have sincerely held religious objections to the Governor's mandate that all healthcare workers in Maine must receive a COVID-19 vaccine by October 1, 2021 (the "**COVID-19 Vaccine Mandate**"), that no protections or considerations are given to religious beliefs in Maine. That deadline was subsequently extended to October 29, 2021. Indeed, Defendants' answer has been an explicit claim that federal law does not provide protections to Maine's healthcare workers. When presented with requests from Plaintiffs for exemption and accommodation for their sincerely held religious beliefs, Defendants responded in the following ways:

- "I can share MaineHealth's view that **federal law does not supersede state law in this instance**." (*See infra* ¶ 77 (emphasis added).)

- "**[W]e are no longer able to consider religious exemptions for those who work in the state of Maine**." (*See infra* ¶ 74 (bold emphasis original).)

- "All MaineGeneral employees will have to be vaccinated against COVID-19 by Oct. 1 unless they have a medical exemption. The mandate

also states that only medical exemptions are allowed, **no religious exemptions are allowed**." (*Infra* ¶ 84 (emphasis added).)

- "Allowing for a religious exemption would be a violation of the state mandate issued by Governor Mills. So, unfortunately, that is not an option for us." (*Infra* ¶ 85.)

2.      The answer to the question before this Court is clear: **federal law and the United States Constitution are supreme over any Maine statute or edict, and Maine cannot override, nullify, or violate federal law**. *See* U.S. Const. Art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). "**This Court has long made clear that federal law is as much the law of the several States as are the laws passed by their legislatures**." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added). Indeed, "**[i]t is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (emphasis added) (cleaned up).

3.      Thus, there can be no dispute that **Maine is required to abide by federal law and provide protections to employees who have sincerely held religious objections to the COVID-19 vaccines**. And, here, the federal law is clear: There can be no dispute that Title VII of the Civil Rights Act prohibits Defendants from discriminating against Plaintiffs on the basis of their sincerely held religious beliefs. 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

3

privileges of employment because of such individual's . . . religion."). And, Defendants have a duty under Title VII to provide religious exemptions and accommodations to those with sincerely held religious objections to the COVID-19 Vaccine Mandate. In direct contrast to this unquestionable principle of black letter law, however, every Defendant in this suit has seen fit to claim to its healthcare workers that the converse is true, and that Maine law is supreme over federal law; has engaged in a conspiracy and scheme to discourage employees with religious objections to the mandatory vaccines from even seeking religious exemptions from such a policy; has informed Plaintiffs that their requests for an exemption and accommodation from the mandate cannot even be evaluated or considered; and has flatly denied all requests for religious exemption and accommodation from the mandate that all healthcare workers receive a COVID-19 vaccine. Employers bent on discrimination "usually don't post help wanted signs reading 'blacks need not apply.'" *Lewis v. City of Unity City*, 918 F.3d 1213, 1261 (11th Cir. 2019) (Rosenbaum, J., concurring in part). But Maine and its healthcare employers have no problem being direct: "**religious misbelievers need not apply**."

4.      The dispute in this case is not about what accommodations are available to Plaintiffs or whether accommodation of Plaintiffs' sincerely held religious objections can be conditioned on compliance with certain reasonable requirements. Plaintiffs have already acknowledged to Defendants that they are willing to comply with reasonable health and safety requirements that were deemed sufficient mere weeks before this action was commenced. **The dispute is about whether Defendants are required to even consider a request for reasonable accommodation of Plaintiffs' sincerely held religious beliefs**. The answer is clear: **yes**. And this Court should require Defendants to acknowledge and accept that federal law mandates accommodation for Plaintiffs' sincerely held religious beliefs and order Defendants to extend such protections.

4

**Appendix - 036**

5. **Plaintiffs were given a deadline to become vaccinated by October 29, 2021, or face termination and deprivation of their abilities to feed their families. No American should be faced with this unconscionable choice, especially the healthcare heroes who have served us admirably for the entire duration of COVID-19. Plaintiffs suffered irreparable harm by being forced to choose between their jobs and their sincerely held religious beliefs. All Plaintiffs have also now been terminated from their positions for failure to accept or receive a COVID-19 vaccine that violates their sincerely held religious beliefs. Relief from this unconscionable and unlawful deprivation of Plaintiffs' liberties should not wait another day.**

6. Early last year, the Governor rightfully declared that Maine's healthcare workers were "Superheroes" and requested that "all Maine people join me in thanking all of our healthcare workers who have heeded the call of duty and worked long hours, days, and weeks, often at great sacrifice to themselves and their families, to protect Maine people during this extraordinary crisis." Office of Governor Janet T. Mills, *Governor Mills Announces Four Maine Healthcare Superheroes to Attend Super Bowl LV Thanks to Generosity of New England Patriots' Kraft Family* (Feb. 2, 2021), https://www.maine.gov/governor/mills/news/governor-mills-announces-four-maine-healthcare-superheroes-attend-super-bowl-lv-thanks. Every word of that statement is equally as true today as it was the day the Governor uttered it. **Yet, on August 12, 2021, those same superheroes were cast as evil villains for requesting exemption and accommodation for their sincerely held religious beliefs**.

7. Neither the Governor nor any of the Defendant employers is permitted to blatantly ignore federal protections under the First Amendment and Title VII, yet that is precisely why relief is needed in the instant action: Plaintiffs need **an order mandating that Defendants follow federal protections for religious objectors to the COVID-19 Vaccine Mandate.**

5

**Appendix - 037**

8.     Plaintiffs are all healthcare workers in Maine who have sincerely held religious beliefs that preclude them from accepting any of the COVID-19 vaccines because of the vaccines' connections to aborted fetal cell lines and for other religious reasons that have been articulated to Defendants. Since COVID-19 first arrived in Maine, Plaintiffs have risen every morning, donned their personal protective equipment, and fearlessly marched into hospitals, doctor's offices, emergency rooms, operating rooms, and examination rooms with one goal: to provide quality healthcare to those suffering from COVID-19 and every other illness or medical need that confronted them. They did it bravely and with honor. They answered the call of duty to provide healthcare to the folks who needed it the most and worked tirelessly to ensure that those ravaged by the pandemic were given appropriate care. **All Plaintiffs seek in this lawsuit is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for over two years**. Defendants shamelessly seek to throw these healthcare workers out into the cold and ostracize them from the very medical facilities for which they have sacrificed so much solely because of Plaintiffs' desire to continue to provide quality healthcare while still exercising their sincerely held religious beliefs.

9.     The law mandates that Defendants permit them to do both. Regardless of whether Maine sees fit to extend protections to religious objectors under its own statutory framework, **federal law demands that these Plaintiffs and all employees in Maine receive protections for their sincerely held religious beliefs**. This Court should hold Maine to the bargain it made with its citizens when it joined the union and ensure that Maine extends the required protections that federal law demands. As the Supreme Court recently held, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct.

6

63, 68 (2020) (emphasis added). When we have demanded so much of our healthcare heroes, we owe them nothing less than the full measure of our own commitment to constitutional principles. Anything less would be desecrating the sacrifice these medical heroes made for untold numbers of people—including Defendants—when the call of duty demanded it of them.

## **PARTIES**

10.     Plaintiff Alicia Lowe is a citizen of the State of Maine and is a healthcare worker previously employed by Defendant MaineHealth at one of its healthcare facilities in Maine. Plaintiff Lowe submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs but was denied an exemption because MaineHealth informed her that the Governor does not allow MaineHealth to consider or grant religious exemption or accommodation requests. Plaintiff Lowe was terminated from her position for refusing to accept a vaccine that violates her sincerely held religious beliefs. After submitting a notice of discrimination to the EEOC, Plaintiff Lowe received a Notice of Right to Sue.

11.     Plaintiff Debra Chalmers is a citizen of the State of Maine and is a healthcare worker previously employed by Genesis Healthcare at one of its healthcare facilities in Maine. Plaintiff Chalmers submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs but was denied an exemption because Genesis Healthcare informed her that the Governor does not allow Genesis Healthcare to consider or grant religious exemption or accommodation requests. Plaintiff Chalmers was given until August 23rd to receive the vaccination or be terminated from her employment in the healthcare industry. Plaintiff Chalmers has received notification that the exercise of her religious beliefs has resulted in her termination from Genesis Healthcare. After

submitting a notice of discrimination to the EEOC, Plaintiff Chalmers received a Notice of Right to Sue.

12.     Plaintiff Jennifer Barbalias is a citizen of the State of Maine and is a healthcare worker previously employed by Northern Light Eastern Maine Medical Center at one of its healthcare facilities in Maine. Plaintiff Barbalias submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs but was denied an exemption because Northern Light EMMC informed her that the Governor does not allow Northern Light EMMC to consider or grant religious exemption or accommodation requests. Plaintiff Barbalias was terminated from her position for refusing to accept a vaccine that violates her sincerely held religious beliefs. After submitting a notice of discrimination to the EEOC, Plaintiff Barbalias received a Notice of Right to Sue.

13.     Plaintiff Natalie Salavarria is a citizen of the State of Maine and is a healthcare worker previously employed by Northern Light Eastern Maine Medical Center at one of its healthcare facilities in Maine. Plaintiff Salavarria submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs but was denied an exemption because Northern Light EMMC informed her that the Governor does not allow Northern Light EMMC to consider or grant religious exemption or accommodation requests. Plaintiff Salavarria was terminated from her position for refusing to accept a vaccine that violates her sincerely held religious beliefs. After submitting a notice of discrimination to the EEOC, Plaintiff Salavarria received a Notice of Right to Sue.

14.     Plaintiff Nicole Giroux is a citizen of the State of Maine and is a healthcare worker previously employed by MaineGeneral Health at one of its healthcare facilities in Maine. Plaintiff Giroux submitted a written request for an exemption and accommodation from the Governor's

COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs but was denied an exemption because MaineGeneral Health informed her that the Governor does not allow MaineGeneral Health to consider or grant religious exemption or accommodation requests. Plaintiff Giroux was terminated from her position for refusing to accept a vaccine that violates her sincerely held religious beliefs. After submitting a notice of discrimination to the EEOC, Plaintiff Giroux received a Notice of Right to Sue.

15.     Plaintiff Garth Berenyi is a citizen of the State of Maine and is a healthcare worker previously employed by Genesis Healthcare at one of its healthcare facilities in Maine. Plaintiff Berenyi submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon his sincerely held religious beliefs but was denied an exemption because Genesis Healthcare informed him that the Governor does not allow Genesis Healthcare to consider or grant religious exemption or accommodation requests. Plaintiff Berenyi was terminated from his position for refusing to accept a vaccine that violates his sincerely held religious beliefs. After submitting a notice of discrimination to the EEOC, Plaintiff Berenyi received a Notice of Right to Sue

16.     Plaintiff Adam Jones is a citizen of the State of Maine and is a healthcare worker previously employed by Northern Light Eastern Maine Medical Center at one of its healthcare facilities in Maine. Plaintiff Jones submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon his sincerely held religious beliefs but was denied an exemption because Northern Light EMMC informed him that the Governor does not allow Northern Light EMMC to consider or grant religious exemption or accommodation requests. Plaintiff Jones was terminated from his position for refusing to accept a

vaccine that violates his sincerely held religious beliefs. After submitting a notice of discrimination to the EEOC, Plaintiff Jones received a Notice of Right to Sue.

17.     Defendant, Janet T. Mills, in her official capacity as Governor of the State of Maine ("the Governor") is responsible for enacting the COVID-19 Vaccine Mandate. Governor Mills is sued in her official capacity

18.     Defendant Jeanne M. Lambrew, in her official capacity as the Commissioner of the Maine Department of Health and Human Services is responsible for overseeing the healthcare industry in Maine and is responsible for the Governor's COVID-19 Vaccine Mandate and enforcing the provisions of threatened loss of licensure for those healthcare providers who refuse to mandate the COVID-19 vaccine. Defendant Lambrew is sued in her official capacity.

19.     Defendant Nirav D. Shah in his official capacity as the Director of the Maine Center for Disease Control and Prevention is responsible for overseeing the healthcare industry in Maine and is responsible for the Governor's COVID-19 mitigation measures and COVID-19 Vaccine Mandate and enforcing the provisions of threatened loss of licensure for those healthcare providers who refuse to mandate the COVID-19 vaccine. Defendant Shah is sued in his official capacity.

20.     Defendant MaineHealth is a nonprofit corporation incorporated under the laws of the State of Maine, employees a number of Plaintiffs in this action, has refused to even consider requests for religious accommodations, and has terminated Plaintiffs for their refusal to accept a vaccine that violates their sincerely held religious beliefs.

21.     Defendant Genesis Healthcare of Maine, LLC is a limited liability company organized under the laws of the State of Maine, employees a number of Plaintiffs in this action, has refused to even consider requests for religious accommodations, and has terminated Plaintiffs for their refusal to accept a vaccine that violates their sincerely held religious beliefs. Defendant

Genesis Healthcare, LLC is a foreign limited liability company organized under the laws of the State of Delaware and is a corporate parent of Genesis Healthcare of Maine, LLC. Plaintiffs collectively refer to the parent and subsidiary corporations as Genesis Healthcare in this Verified Complaint.

22.    Defendant Northern Light Eastern Maine Medical Center is a nonprofit corporation incorporated under the laws of the State of Maine, employees a number of Plaintiffs in this action, has refused to even consider requests for religious accommodations, and has terminated Plaintiffs for their refusal to accept a vaccine that violates their sincerely held religious beliefs.

23.    Defendant MaineGeneral Health is a nonprofit corporation incorporated under the laws of the State of Maine, employees a number of Plaintiffs in this action, has refused to even consider requests for religious accommodations, and has terminated Plaintiffs for their refusal to accept a vaccine that violates their sincerely held religious beliefs.

## JURISDICTION AND VENUE

24.    This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under federal statutory laws, namely 42 U.S.C. § 1985(3) and 42 U.S.C. § 2000e-2.

25.    This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1331 and 1343.

26.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

27.    This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

28.     This Court is authorized to grant Plaintiffs' prayer for permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

29.     This Court is authorized to grant Plaintiffs' prayer for damages under 42 U.S.C. § 2000e-5.

30.     This Court is authorized to grant Plaintiffs' prayer for costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

<u>**GENERAL ALLEGATIONS**</u>

**A.     THE     GOVERNOR'S     COVID-19     VACCINE     MANDATE     FOR     HEALTHCARE WORKERS.**

31.     On August 12, 2021, Governor Mills announced that Maine will now require health care workers to accept or receive one of the three, currently available COVID-19 vaccines in order to remain employed in the healthcare profession. *See* Office of Governor Janet Mills, *Mills Administration Requires Health Care Workers To Be Fully Vaccinated Against COVID-19 By October 1* (Aug. 12, 2021), https://www.maine.gov/governor/mills/news/mills-administration-requires-health-care-workers-be-fully-vaccinated-against-covid-19-october (last visited Aug. 24, 2021) (hereinafter "COVID-19 Vaccine Mandate"). (A true and correct copy of the Governor's COVID-19 Vaccine Mandate was attached to the original Verified Complaint and is incorporated herein as **EXHIBIT A**, and is located at ECF No. 1-1.)

32.     The Governor's COVID-19 Vaccine Mandate defines health care workers as "any individual employed by a hospital, multi-level health care facility, home health agency, nursing facility, residential care facility, and intermediate care facility for individuals with intellectual disabilities that is licensed by the State of Maine" as well as "those employed by emergency medical service organizations or dental practices."

33.     The Governor's COVID-19 Vaccine Mandate also says that "[t]he organizations to which this requirement applies must ensure that each employee is vaccinated, with this requirement being enforced as a condition of the facilities' licensure."

34.     **Thus, the Governor has threatened to revoke the licenses of all health care employers who fail to mandate that all employees receive the COVID-19 vaccine**.

35.     In addition to the Governor's mandate, Plaintiffs and all health care workers in Maine were also stripped of their rights to request a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

36.     On August 14, 2021, Dr. Shah and the Maine Center for Disease Control and Prevention ("MCDC") amended 10-144 C.M.R. Ch. 264 to eliminate the ability of health care workers in Maine to request and obtain a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

37.     The only exemptions Maine now lists as available to health care workers are those outlined in 22 M.R.S. § 802.4-B, which purports to exempt only those individuals for whom an immunization is medically inadvisable and who provide a written statement from a doctor documenting the need for an exemption.

38.     Under the prior version of the rule, 10-144 C.M.R. Ch. 264, §3-B a health care worker could be exempt from mandatory immunizations if the "employee states in writing an opposition to immunization because of a sincerely held religious belief." *Id.*

39.     In fact, as acknowledged by MCDC, Maine removed the religious exemption to mandatory immunizations in early August 2021. *See* Division of Disease Surveillance, *Maine Vaccine Exemption Law Change* 2021, https://www.maine.gov/dhhs/mecdc/infectious-disease/immunization/maine-vaccine-exemption-law-changes.shtml (last visited July 11, 2022)

**Appendix - 045**

("The health care immunization law has removed the allowance for philosophical and religious exemptions . . . .").

## B. PLAINTIFFS' SINCERELY HELD RELIGIOUS OBJECTIONS TO COVID-19 VACCINE MANDATE.

40. Plaintiffs all have sincerely held religious beliefs that preclude them from accepting or receiving any of the three available COVID-19 vaccines because of the connection between the various COVID-19 vaccines and the cell lines of aborted fetuses, whether in the vaccines' origination, production, development, testing, or other inputs.

41. A fundamental component of Plaintiffs' sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

42. Plaintiffs' sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

43. Because of that sincerely held religious belief, Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

44. Plaintiffs have sincerely held religious beliefs that God forms children in the womb and knows them prior to their birth, and that because of this, life is sacred from the moment of conception. *See Psalm* 139:13–14 (ESV) ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made."); *Psalm* 139:16 (ESV) ("Your eyes saw my unformed substance; in your book were written, every one of them, the days that were formed for me, when as yet there was none of them."); *Isaiah* 44:2 (KJV) ("the LORD that made thee, and formed thee from the womb"); *Isaiah* 44:24 (KJV) ("Thus saith

the LORD, thy redeemer, and he that formed thee from the womb, I am the LORD that maketh all things."); *Isaiah* 49:1 (KJV) ("The LORD hath called my from the womb; from the bowels of my mother hath he made mention of my name."); *Isaiah* 49:5 (KJV) ("the LORD that formed me from the womb to be his servant"); *Jeremiah* 1:5 (KJV) ("Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee.").

45.     Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because they are made in the image of God. *See Genesis* 1:26–27 (KJV) ("Let us make man in our image, after our likeness. . . . So God created man in his own image; in the image of God created he him; male and female created he them.").

46.     Plaintiffs also have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g.*, *Exodus* 20:13 (KJV) ("Though shalt not kill."); *Exodus* 21:22–23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 (KJV) ("the innocent and righteous slay thou not, for I will not justify the wicked"); *Genesis* 9:6 (KJV) ("Whoso sheddeth a man's blood, by man shall his blood by shed: for in the image of God made he man."); *Deuteronomy* 27:25 (KJV) ("Cursed be he that taketh reward to slay an innocent person."); *Proverbs* 6:16–17 (KJV) ("These six things doth the LORD hate: yea, seven are an abomination to him . . . hands that shed innocent blood.").

47.     Plaintiffs also have the sincerely held religious belief that it would be better to tie a millstone around their necks and be drowned in the sea than bring harm to an innocent child. *See Matthew* 18:6; *Luke* 17:2.

48.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that anything that condones, supports, justifies, or benefits from the taking of innocent human life

15
**Appendix - 047**

via abortion is sinful, contrary to the Scriptures, and must be denounced, condemned, and avoided altogether.

49.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that it is an affront to Scripture's teaching that all life is sacred when any believer uses a product derived from or connected in any way with abortion.

50.     Plaintiffs' sincerely held religious beliefs, rooted in the above Scriptures, preclude them from accepting any one of the three currently available COVID-19 vaccines derived from, produced or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

51.     Plaintiffs have sincerely held religious objections to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it unquestionably used aborted fetal cells lines to produce and manufacture the vaccine.

52.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Dec. 1, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf.

53.     The Louisiana Department of Health likewise confirms that the PER.C6 fetal cell line, which is used in producing the Johnson & Johnson COVID-19 vaccine, "is a retinal cell line that was **isolated from a terminated fetus in 1985**." Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 21, 2020),

https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (emphasis added).

54.     Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. Meredith Wadman, *Vaccines that use human fetal cells draw fire*, Science (June 12, 2020), *available at* https://science.sciencemag.org/content/368/6496/1170.full.

55.     Plaintiffs have sincerely held religious objections to the Moderna and Pfizer/BioNTech COVID-19 vaccines because both of these vaccines, too, have their origins in research on aborted fetal cells lines.

56.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Dec. 1, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (emphasis added).

57.     The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers:*

*COVID-19 Vaccine FAQ* (Dec. 21, 2020), https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf.

58.     Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

59.     Plaintiffs have sincerely held religious beliefs that their bodies are temples of the Holy Spirit, and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit. (*See 1 Corinthians* 6:15-20 (KJV) ("Know ye not that your bodies are the members of Christ? shall I then take the members of Christ and make them members of an harlot? God forbid. . . . What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's.").

60.     In addition to their sincerely held religious beliefs that compel them to abstain from any connection to the grave sin of abortion, Plaintiffs have sincerely held religious beliefs that the Holy Spirit—through prayer and the revelation of Scripture—guide them in all decisions they make in life.

61.     Plaintiffs have sincerely held religious beliefs that Jesus Christ came to this earth, died on the cross for their sins, and was resurrected three days later, and that when He ascended to Heaven, He sent the Holy Spirit to indwell His believers and to guide them in all aspects of their lives. *See John* 16:7 (KJV) ("Nevertheless I tell you the truth, It is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him

unto you."); *John* 14:26 (KJV) ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you.").

62.     Plaintiffs have sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. *See John* 16:8, 13 (KJV) ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . . [W]hen he, the Spirit of truth, is come, he will guide you into all truth: for he shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come.").

63.     Plaintiffs also have sincerely held religious beliefs that they shall receive all answers to their questions through prayer and supplication, including for decisions governing their medical health. *See James* 1:5 (KJV) ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him."); *Mark* 11:24 (KJV) ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them."); *Philippians* 4:6–7 (KJV) ("Be careful for nothing, but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus."); *1 John* 4:14–15 (KJV) ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him.").

64.     Through much prayer and reflection, Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and Plaintiffs

have been convicted by the Holy Spirit in their beliefs that accepting any of the three currently available vaccines is against the teachings of Scripture and would be a sin.

### C. PLAINTIFFS' WILLINGNESS TO COMPLY WITH ALTERNATIVE SAFETY MEASURES.

65.     Plaintiffs have offered, and are ready, willing, and able to comply with all reasonable health and safety requirements to facilitate their religious exemption and accommodation from the COVID-19 Vaccine Mandate.

66.     Plaintiffs have all informed their respective employers that they are willing to wear facial coverings, submit to reasonable testing and reporting requirements, monitor symptoms, and otherwise comply with reasonable conditions that were good enough to permit them to do their jobs for the last 18 months with no questions asked.

67.     In fact, early in the pandemic the State said Plaintiffs were heroes because of their willingness to abide by the same conditions and requirements that Plaintiffs are willing to abide by now.

68.     In fact, Defendant Shah and the MCDC continues to say that facial coverings are one of the most effective ways to prevent COVID-19. In its Face Covering FAQs page, the MCDC states:

> How does wearing a face covering prevent the spread of COVID-19?
>
> COVID-19 is an airborne virus that most commonly spreads between people who are in close contact with one another. It spreads through respiratory droplets or small particles, such as those in aerosols, produced when an infected person coughs, sneezes, sings, talks, or breathes. Because it helps contain respiratory droplets, **wearing a face covering has been proven to be one of the most significant, effective, and easiest ways to reduce the spread of COVID-19**.

COVID-19     Response,     *Face     Covering     FAQs*     (July     29,     2021), https://www.maine.gov/covid19/faqs/face-coverings (emphasis added).

69.     In fact, the MCDC still recommends that vaccinated individuals wear a masks. And the reason for this is simple:

> A preliminary study has shown that in the case of a breakthrough infection, the Delta variant is able to grow in the noses of vaccinated people **to the same degree as if they were not vaccinated at all**. The virus that grows is just as infectious as that in unvaccinated people, meaning vaccinated people can transmit the virus and infect others.

National Geographic, *Evidence mounts that people with breakthrough infections can spread Delta easily* (Aug. 20, 2021), https://www.nationalgeographic.com/science/article/evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily (emphasis added).

70.     Masking and testing protocols remain sufficient to prevent the spread of COVID-19 among healthcare workers, and constitute a reasonable alternative to vaccination as an accommodation of sincerely held religious beliefs.

71.     In fact, the United States District Court for the Western District of Louisiana issued a temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body. *See Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 3679227 (W.D. La. Aug. 17, 2021).

**D.     DEFENDANTS' RESPONSES CLAIMING FEDERAL LAW IS IRRELEVANT IN MAINE.**

72.     Consistent with her sincerely held religious beliefs, Plaintiff Lowe submitted to her employer, Defendant MaineHealth, a request for a religious exemption from the Governor's COVID-19 Vaccine Mandate.

73.     On August 17, 2021, MaineHealth denied Plaintiff Lowe's request for a religious exemption and accommodation. (A true and correct copy of the communications between

MaineHealth and Plaintiff Lowe was attached to the original Verified Complaint and is incorporated herein as **EXHIBIT B**, and is located at ECF No. 1-2.)

74.     In its response, MaineHealth stated:

Please be advised that due to the addition of the COVID-19 vaccine to Maine's Healthcare Worker Immunization law announced by the governor in a press conference on 8/12/21, **we are no longer able to consider religious exemptions for those who work in the state of Maine. This also includes those of you who submitting [sic] influenza exemptions as well.** The State of Maine now requires all healthcare workers to be fully vaccinated by October 1st, which means you are two weeks beyond the completion of a COVID-19 vaccination series. (i.e. Both doses of the mRNA vaccine, or the single dose of J & J) as of that date.

You submitted a religious exemption, your request is unable to be evaluated due to a change in the law. Your options are to receive vaccination or provide documentation for a medical exemption to meet current requirements for continued employment.

(ECF No. 1-2 at 2 (bold emphasis original).)

75.     On August 20, 2021, after receiving her first denial from MaineHealth, Plaintiff Lowe responded to MaineHealth, stating:

My request for an exemption was made under federal law, including Title VII of the Civil Rights [Act] of 1964. The Constitution provides that federal law is supreme over state law, and Maine cannot abolish the protections of federal law. You may be interested in this press release from Liberty Counsel, and the demand letter they have sent to Governor Mills on this issue (which is linked in the press release): https://lc.org/newsroom/details/081821-maine-governor-must-honor-religious-exemptions-for-shot-mandate. Regardless of what the Governor chooses to do, Franklin Memorial has a legal obligation under federal law to consider and grant my proper request for a religious exemption. Please let me know promptly if you will do so.

(ECF No. 1-2 at 1.)

76.     That same day, MaineHealth responded to Plaintiff Lowe stating that federal law does not supersede state law or the Governor's COVID-19 Vaccine Mandate and that MaineHealth would not be following federal law on the issue.

77.     Specifically, MaineHealth stated:

> Although I cannot give legal guidance to employees, **I can share MaineHealth's view that federal law does not supersede state law in this instance**. The EEOC is clear in its guidance that employers need only provide religious accommodations when doing so does not impose an undue hardship on operations. Requiring MaineHealth to violate state law by granting unrecognized exemptions would impose such a hardship. **As such, we are not able to grant a request for a religious exemption from the state mandated vaccine**.

(EFCF No. 1-2 at 1 (emphasis added).)

78.     Plaintiff Lowe was terminated from her employment for refusing to accept a vaccine that violates her sincerely held religious beliefs.

79.     Plaintiff Chalmers submitted to her employer, Genesis Healthcare, a request for a religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate. After reviewing Plaintiff Chalmers's submission, which articulated her sincerely held religious beliefs, Genesis Healthcare sent Plaintiff Chalmers a cursory response stating that her religious beliefs did not qualify for an exemption from the vaccine mandate. **Plaintiff Chalmers was given until August 23 to become vaccinated, and when her request for a religious objection and accommodation was denied, Plaintiff Chalmers was terminated from her employment**.

80.     Plaintiff Barbalias submitted a request to her employer, Defendant Northern Light EMMC, seeking an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate. Northern Light EMMC responded to Plaintiff Barbalias, denying her request and stating that the Governor's COVID-19 Vaccine Mandate does not permit exemptions or accommodations for sincerely held religious beliefs. (A true and correct copy of Northern Light's denial of Plaintiff Barbalias's request for a religious exemption and accommodation was attached to the original Verified Complaint and is incorporated herein as **EXHIBIT C**, and is located at ECF No. 1-3.)

81.     Specifically, Northern Light EMMC informed Plaintiff Barbalias that her request for a religious exemption could not be granted because Maine law and the Governor do not permit "non-medical exemptions," and stated, "the only exemptions that may be made to this requirement

are medical exemptions supported by a licensed physician, nurse practitioner, or physician assistant." (ECF No. 1-3 at 1.)

82.     Northern Light EMMC therefore ignored federal law on the basis that the Governor has removed any exemptions for sincerely held religious beliefs, and it terminated Plaintiff Barbalias's employment for her refusal to accept a vaccine that violates her sincerely held religious beliefs.

83.     On August 19, 2021, Plaintiff Giroux submitted a request to her employer, Defendant MaineGeneral Health, stating that she has sincerely held religious objections to the COVID-19 vaccines and requesting an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate. MaineGeneral responded to Plaintiff Giroux, stating that no religious exemptions were permitted under the Governor's mandate and that her request for a religious exemption and accommodation was denied. (A true and correct copy of MaineGeneral's denial of Plaintiff Giroux's request for a religious exemption was attached to the original Verified Complaint and is incorporated herein as **EXHIBIT D**, and is located at ECF No. 1-4.)

84.     Specifically, MaineGeneral stated:

MaineGeneral Health must comply with Governor's Mill's [sic] COVID-19 vaccination mandate for all health care employees. All MaineGeneral employees will have to be vaccinated against COVID-19 by Oct. 1 unless they have a medical exemption. **The mandate also states that only medical exemptions are allowed, no religious exemptions are allowed**.

(ECF No. 1-4 at 1 (emphasis added).)

85.     Thus, MaineGeneral has made it abundantly clear to its employees that religious exemptions are not available because of the Governor's Mandate. But, if its initial denials left any room for doubt, its follow-up response to Plaintiff Giroux put all doubt to rest: "**Allowing for a**

religious exemption would be a violation of the state mandate issued by Governor Mills. So, unfortunately, it is not an option for us." (ECF No. 1-4 at 2.)

86.    The responses from Defendants MaineHealth, Genesis Healthcare, Northern Light EMMC, and MaineGeneral Health have been virtually identical for all other Plaintiffs as well, indicating that the various Defendants were not permitted by the Governor's COVID-19 Vaccine Mandate to allow for (or even consider) an exemption and accommodation for sincerely held religious beliefs.

### E.    DEFENDANTS ADMIT THAT OTHER, NON-RELIGIOUS EXEMPTIONS ARE AVAILABLE.

87.    Defendants' responses to Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs confirm that Maine is, indeed, willing to grant other exemptions from the Governor's COVID-19 Vaccine Mandate but have relegated religious exemption requests to constitutional orphan status.

88.    In its response to Plaintiff Lowe, Defendant MaineHealth has indicated it is perfectly willing to accept and grant medical exemptions but will not allow religious exemptions. Specifically, it told Plaintiff Lowe:

> You submitted a religious exemption, your request is unable to be evaluated due to a change in the law. Your options are to receive vaccination or provide documentation for a medical exemption to meet current requirements for continued employment.

(ECF No. 1-2 at 2.)

89.    Thus, while MaineHealth says it will consider and grant the preferred medical exemptions, **it will not even consider the constitutionally orphaned religious exemption requests**.

90.     To make matters even more clear, MaineHealth subsequently informed Plaintiff Lowe that she was permitted to seek any other exemption, except a religious one: "If you seek an accommodation **other than a religious exemption** from the state mandated vaccine, please let us know." (ECF No. 1-2 at 1 (emphasis added).)

91.     Defendant Northern Light EMMC gave a similar response to Plaintiff Barbalias, indicating that only medical exemptions would be considered or approved. Specifically, it stated that "the only exemptions that may be made to this requirement are medical exemptions" and that all Northern Light EMMC employees must comply with the Governor's COVID-19 Vaccine Mandate "except in the case of an approved medical exemption." (ECF No. 1-3 at 1.)

92.     Defendant MaineGeneral issued a similar response to Plaintiff Giroux, stating that all healthcare workers must comply with the Governor's COVID-19 Vaccine Mandate "unless they have a medical exemption," and that the Governor's "mandate states that only medical exemptions are allowed, no religious exemptions are allowed." (ECF No. 1-4 at 1.)

93.     The Governor, through her COVID-19 Vaccine Mandate, has created a two-tiered system of exemptions, and placed religious beliefs and those who hold them in a class less favorable than other exemptions that Defendants are perfectly willing to accept.

94.     Under the Governor's scheme of creating a disfavored class of religious exemptions, Defendants are not even willing to consider religious exemptions, much less grant them to those who have sincerely held religious objections to the COVID-19 vaccines.

### F.     IRREPARABLE HARM SUFFERED BY PLAINTIFFS.

95.     Because Plaintiff Lowe's request for an exemption and accommodation of her sincerely held religious beliefs was denied by MaineHealth, Plaintiff Lowe faced the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her

job. Because Plaintiff Lowe refused to violate her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she was terminated from her employment.

96. Plaintiff Chalmers's employer, Genesis Healthcare, mandated that she receive the vaccine by August 23, even though the Governor did not require compliance until October 1. Plaintiff Chalmers was informed that her religious beliefs would not be accommodated because religious exemptions were not available in Maine. Plaintiff Chalmers was informed that her employment was terminated on August 23 at 11:59 p.m.

97. Because Plaintiff Barbalias's request for an exemption and accommodation of her sincerely held religious beliefs was denied by Northern Light EMMC, she faced the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Because Plaintiff Barbalias refused to violate her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she was terminated from her employment.

98. Because Plaintiff Salavarria's request for an exemption and accommodation of her sincerely held religious beliefs was denied by Northern Light EMMC, she faced the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Because Plaintiff Salavarria refused to violate her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she was terminated from her employment.

99. Because Plaintiff Giroux's request for an exemption and accommodation of her sincerely held religious beliefs was denied by MaineGeneral, she faced the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Because Plaintiff

Giroux refused to violate her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she was terminated from her employment.

100.    Because Plaintiff Berenyi's request for an exemption and accommodation of his sincerely held religious beliefs was denied by Genesis Healthcare, he faced the unconscionable choice of accepting a vaccine that conflicts with his religious beliefs or losing his job. Because Plaintiff Berenyi refused to violate his conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, he was terminated from his employment.

101.    Because Plaintiff Jones's request for an exemption and accommodation of his sincerely held religious beliefs was denied by Northern Light EMMC, he faced the unconscionable choice of accepting a vaccine that conflicts with his religious beliefs or losing his job. Because Plaintiff Jones refused to violate his conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, he was terminated from his employment.

102.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being prohibited from engaging in their constitutionally and statutorily protected rights to the free exercise of their sincerely held religious beliefs.

103.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being forced to choose between maintaining the ability to feed their families and the free exercise of their sincerely held religious beliefs.

104.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being stripped of their rights to equal protection of the law and being subjected to disfavored class status in Maine.

## G. PLAINTIFFS' ATTEMPTS TO SECURE RELIEF PRIOR TO SEEKING A TRO AND PRELIMINARY INJUNCTION.

105.    On August 18, 2021, Plaintiffs' counsel sent the Governor, Director Shah, and Commissioner Lambrew a letter informing them that their COVID-19 Vaccine Mandate, on its own, and in its interpretation and application by others deprives Plaintiffs of their rights to request a sincerely held religious exemption and accommodation under federal law. (A true and correct copy of the Letter sent to the Governor, Director, and Commissioner was attached to the original Verified Complaint and is incorporated herein as **EXHIBIT E**, and is located at ECF No. 1-5.)

106.    Plaintiffs requested that the Governor withdraw her unlawful directives and publicly announce that any interpretation of her mandate to deprive Plaintiffs and all healthcare workers in Maine of their right to request and receive an exemption and accommodation for their sincerely held religious objections to the mandatory COVID-19 vaccine was unlawful and impermissible.

107.    Plaintiffs requested the response and the public announcement from the Governor prior to August 20, 2021, as that was the given deadline for compliance with the vaccine mandate for those individuals choosing a particular vaccine and because some of Defendants were demanding that their employees receive the first dose of a vaccine by that date.

108.    Plaintiffs' counsel requested a response informing counsel that the Governor's directives, and the interpretation of the Governor's COVID-19 Vaccine Mandate to deprive Plaintiffs of their federal rights were impermissible, and that the Governor would permit Plaintiffs and other healthcare workers with sincere religious objections to the vaccine to request and receive reasonable accommodation to the mandate.

109.    Neither Governor Mills, Director Shah, nor Commissioner Lambrew responded to Plaintiffs' counsel, nor announced that federal law would continue to apply in Maine, nor provided

any information to healthcare employers in Maine that federal law required Defendants to accept and permit their healthcare employees to request and receive religious exemptions and accommodation to the COVID-19 Vaccine Mandate.

### COUNT I—VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION. (All Plaintiffs v. Government Defendants)

110. Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-109 above as if fully set forth herein.

111. The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

112. Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

113. Plaintiffs reallege the discussion of their sincerely held religious beliefs (*supra* Section B) as if fully set forth herein.

114. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccine.

115. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the State's imposed value system.

116.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

117.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their ability to feed their families.

118.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable.

119.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, specifically targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

120.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

121.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, constitutes a religious gerrymander by unconstitutionally orphaning exemption and accommodation requests based solely on sincerely held religious beliefs of healthcare workers in Maine while permitting the more favored medical exemptions to be granted.

122.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, constitutes a substantial burden on Plaintiffs' exercise of their sincerely held religious beliefs.

123.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, fails to accommodate Plaintiffs' sincerely held religious beliefs.

124.     There is no legitimate, rational, or compelling interest in the Governor's COVID-19 Vaccine Mandate's exclusion of exemptions and accommodations for sincerely held religious beliefs.

125.     The Governor's COVID-19 Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest.

126.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

127.     Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

### COUNT II—DEFENDANTS' WILLFUL DISREGARD OF FEDERAL PROTECTIONS VIOLATES THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION BY ATTEMPTING TO MAKE MAINE LAW SUPERSEDE FEDERAL LAW
(All Plaintiffs v. All Defendants)

128.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-109 above as if fully set forth herein.

129.     The Supremacy Clause provides:

**This Constitution, and the Laws of the United States** which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 22 (emphasis added).

130.     "**When federal law forbids an action that state law requires, the state law is without effect**." *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 486 (2013) (emphasis added).

131.     Simply put, "**It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (emphasis added) (cleaned up).

132.     By claiming that the protections of Title VII are inapplicable in the State of Maine, which all Defendants have either explicitly or tacitly stated, Defendants are running roughshod over the Supremacy Clause and appointing themselves independent of the protections of federal law.

133.     As demonstrated by Defendant MaineHealth's response to Plaintiff Lowe, MaineHealth believes that "**federal law does not supersede state law in this instance**" because it believes granting the religious exemptions required by Title VII would "[r]equir[e] MaineHealth to violate state law." (ECF No. 1-2 at 1 (emphasis added).)

134.     Similarly, in its response to Plaintiff Giroux, MaineGeneral explicitly stated that "**[a]llowing for a religious exemption would be a violation of the state mandate issued by Governor Mills**." (ECF No. 1-4 at 2 (emphasis added).)

135.     Further, MaineGeneral noted that the Governor's "mandate also states that . . . no religious exemptions are allowed." (ECF No. 1-4 at 1.)

136.     Thus, all Defendants have purported to remove the availability of religious exemptions and accommodations within the State of Maine, have ignored Title VII's commands that employers provide reasonable accommodations to individuals with sincerely held religious beliefs, and have claimed that the Governor's COVID-19 Vaccine Mandate prohibits employers in Maine from even considering a religious exemption or accommodation request.

137.    By purporting to place itself outside of the protections of Title VII and the First Amendment, Maine and each individual Defendant have violated the most basic premise that "**federal law is as much the law of the several States as are the laws passed by their legislatures**." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added).

138.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

139.    Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

### COUNT III—VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (All Plaintiffs v. Government Defendants)

140.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-109 above as if fully set forth herein.

141.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

142.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is an unconstitutional abridgment of Plaintiffs' right to equal protection under the law, is not neutral, and specifically targets Plaintiffs' sincerely held religious beliefs for discriminatory and unequal treatment.

143.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' right to equal protection because it permits the State to

treat Plaintiffs differently from other similarly situated healthcare workers on the basis of Plaintiffs' sincerely held religious beliefs.

144. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, singles out Plaintiffs for selective treatment based upon their sincerely held religious objections to the COVID-19 vaccines.

145. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is intended to inhibit and punish the exercise of Plaintiffs sincerely held religious beliefs and objections to the COVID-19 vaccines.

146. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, creates a system of classes and categories that permit the Governor to accommodate the exemptions of some healthcare workers while denying consideration of those individuals requesting religious exemptions to the COVID-19 Vaccine Mandate.

147. By removing statutorily required religious accommodations from consideration in Maine, the Governor has created and singled out for disparate treatment a specific class of healthcare employees (*i.e.*, religious objectors to COVID-19 vaccinations) as compared to other similarly situated healthcare workers (*i.e.*, those with medical exemption requests).

148. There is no rational, legitimate, or compelling interest in the Governor's COVID-19 Vaccine Mandate's application of different standards to the similarly situated field of healthcare workers.

149. The Governor's COVID-19 Vaccine Mandate, on its face and as applied, discriminates between religion and nonreligion by allowing certain, nonreligious exemptions to the COVID-19 Vaccine Mandate while prohibiting religious exemptions to the same mandate for the same similarly situated field of healthcare workers.

35

150.    The Governor's COVID-19 Vaccine Mandate and the MCDC's removal of religious exemptions for healthcare workers in Maine, on their face and as applied, are each a "status-based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996).

151.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633.

152.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, along with the MCDC's removal of religious exemptions from immunizations—while keeping medical exemptions as perfectly acceptable in the healthcare field—results in a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.*

153.    "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [an exemption from the COVID-19 Vaccine Mandate] is itself a denial of equal protection of the laws in the most literal sense." *Id.* The Governor's COVID-19 Vaccine Mandate, on its face and as applied, and the MCDC's removal of religious exemptions for healthcare workers, are each such a law.

154.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

155.    Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

### COUNT IV—VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.* (All Plaintiffs v. Private Employer Defendants)

156.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-109 above as if fully set forth herein.

157.     Title VII prohibits discrimination against employees on the basis of their religion. 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . .").

158.     Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Moreover, as the EEOC has made clear, Title VII's protections also extend nonreligious beliefs if related to morality, ultimate ideas about life, purpose, and death. *See EEOC*, *Questions and Answers: Religious Discrimination in the Workplace* (June 7, 2008), https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace ("Title VII's protections also extend to those who are discriminated against or need accommodation because they profess no religious beliefs."); (*Id.* ("Religious beliefs include theistic beliefs (i.e. those that include a belief in God) as well as non-theistic 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.' Although courts generally resolve doubts about particular beliefs in favor of finding that they are religious, beliefs are not protected merely because

they are strongly held. Rather, religion typically concerns 'ultimate ideas' about 'life, purpose, and death.'").)

159.    Each of Defendants MaineHealth, Genesis Healthcare, Northern Light EMMC, and MaineGeneral Health is an employer within the meaning of Title VII and employs more than 15 employees.

160.    By refusing to even consider, much less grant, any religious accommodation or exemption to the Governor's COVID-19 Vaccine Mandate, Defendants have discriminated against Plaintiffs' sincerely held religious beliefs with respect to the terms, conditions, and privileges of employment.

161.    By threatening to fire Plaintiffs unless they violate their sincerely held religious beliefs and comply with the Governor's COVID-19 Vaccine Mandate, Defendants have unlawfully discriminated against Plaintiffs by discharging them or constructively discharging them for the exercise of their religious beliefs.

162.    Each Plaintiff has a bona fide and sincerely held religious belief against the COVID-19 vaccines, as outlined above.

163.    Plaintiffs' sincerely held religious beliefs conflict with Defendants' policies in collusion with the Governor to impose the Governor's COVID-19 Vaccine Mandate and to withhold from Plaintiffs any consideration of sincerely held religious objections.

164.    Plaintiffs have all raised their sincerely held religious beliefs with their respective Defendant employers, have brought their objections and their desire for a religious accommodation and exemption to the Defendants' attention, and have requested a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

165.    Defendants termination, threatened termination, denial of benefits, and other adverse employment actions against Plaintiffs are the result of Plaintiffs' exercise of their sincerely held religious beliefs.

166.    Defendants' refusal to consider or grant Plaintiffs' requests for accommodation and exemption from the Governor's COVID-19 Vaccine Mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

167.    Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT V—DEFENDANTS HAVE ENGAGED IN AN UNLAWFUL CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1985
### (All Plaintiffs v. All Defendants)

168.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-109 above as if fully set forth herein.

169.    Section 1985 provides a cause of action against public and private defendants who unlawfully conspire to deprive an individual of his constitutionally protected liberties. 42 U.S.C. § 1985(3) ("If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws").

170.    The elements of the claim of conspiracy to violate civil rights under § 1985 include (1) a conspiracy, (2) a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws or of a constitutionally protected liberty, (3) an overt act in furtherance of the conspiracy, and

(4) a deprivation of a constitutionally protected right. *See Parker v. Landry*, 935 F.3d 9, 17–18 (1st Cir. 2019).

171.   The Governor's COVID-19 Vaccine Mandate, combined with the Defendant employers' agreements to enforce its provisions and revoke any potential for a religious exemption for healthcare workers in Maine, constitutes a conspiracy to violate Plaintiffs' civil and constitutional rights.

172.   The Governor, Director Shah, and Commissioner Lambrew have all reached an agreement with the Defendant employers to deprive all healthcare workers in Maine with any exemption or accommodation for the exercise of their sincerely held religious beliefs.

173.   MaineHealth's agreement with the Governor to deprive Plaintiffs of their constitutionally protected liberties is evidenced in its denial of Plaintiff Lowe's request for a religious exemption and accommodation. Specifically, its statement that MaineHealth is "**no longer able to consider religious exemptions for those who work in the state of Maine**." (ECF No. 1-2 at 2 (emphasis added).) By agreeing to refuse to even consider its employees' requests for religious exemption and accommodation, MaineHealth has reached an express or tacit agreement to deprive Plaintiffs of their constitutionally protected rights to equal protection and religious exercise.

174.   Even if MaineHealth's denials of its employees' requests for religious exemptions was somehow insufficient to demonstrate an agreement, the Governor's own Official Statement concerning the imposition of the COVID-19 Vaccine Mandate shows that MaineHealth entered into an agreement with the Governor by noting the Governor's mandate was "welcomed by . . . MaineHealth" and its CEO's statement that it "*applauds Gov. Mills' decision to make COVID-19 vaccination a requirement for the state's health care workforce for the same reasons our*

*organization chose to require vaccination for all of its care team members*." (Exhibit A). *See also* Office of Governor Janet Mills, *Mills Administration Requires Health Care Workers To Be Fully Vaccinated Against COVID-19 By October 1* (Aug. 12, 2021), https://www.maine.gov/governor/mills/news/mills-administration-requires-health-care-workers-be-fully-vaccinated-against-covid-19-october.

175.    Defendant Northern Light EMMC's explanation of its agreement with the Governor to deprive Plaintiffs of their rights to seek and receive an accommodation of their sincerely held religious beliefs was even more explicit: "*Governor Mills' decision to require vaccination of health care workers is another example of close alignment between the government and the health care community.*" *See* Office of Governor Janet Mills, *Mills Administration Requires Health Care Workers To Be Fully Vaccinated Against COVID-19 By October 1* (Aug. 12, 2021), https://www.maine.gov/governor/mills/news/mills-administration-requires-health-care-workers-be-fully-vaccinated-against-covid-19-october.

176.    MaineGeneral's agreement with the Governor to deprive its employees of their constitutionally protected exercise of religious beliefs is plainly evidenced by its statements to Plaintiff Giroux that it was not permitted to even consider a request for a religious exemption because of the Governor's mandate. (ECF No. 1-4 at 1-2.).

177.    The Governor and Defendant employers have reached an express or tacit agreement to mandate COVID-19 vaccines for their employees while explicitly agreeing to deprive them of their right to request and receive an accommodation and exemption for their sincerely held religious beliefs.

178.    The purpose behind the Governor's COVID-19 Vaccine Mandate, the MCDC's removal of the option for a religious exemption in the State of Maine, and all Defendants'

agreement to blatantly ignore federal law's requirement that employees be provided with a religious exemption and accommodation for sincerely held religious beliefs is based upon a conspiratorial purpose to deprive Plaintiffs of their rights to the exercise of their religious beliefs and equal protection.

179.     Defendants' conspiratorial agreement has been made express by their stating that no religious exemptions would be permitted and by informing Plaintiff employees of the legally ridiculous position that Title VII does not apply in Maine and that federal law does not supersede Maine law when it comes to the Governor's COVID-19 Vaccine Mandate.

180.     The Governor has engaged in an overt act in furtherance of the conspiracy to deprive Plaintiffs of their civil rights by mandating that all healthcare workers receive a mandatory COVID-19 vaccine and by failing to recognize that federal law provides each of these employees with the option to request and receive a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

181.     Defendant employers have each engaged in an overt act in furtherance of the conspiracy to deprive Plaintiffs of their civil rights by refusing to consider, evaluate, or accept any Plaintiff's request for a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

182.     By denying Plaintiffs their requested religious exemption and accommodation and threatening termination and discharge from employment because of the exercise of their sincerely held religious beliefs, Defendants' conspiracy has resulted in a deprivation of Plaintiffs' constitutionally protected right to free exercise of religion.

183.     By denying Plaintiffs their requested religious exemption and accommodation and threatening termination and discharge from employment because of the exercise of their sincerely

held religious beliefs while at the same time granting and accepting the preferred category and class of medical exemptions for similarly situated healthcare workers, Defendants' conspiracy has resulted in a deprivation of Plaintiffs' constitutionally protected right to equal protection of the laws under the Fourteenth Amendment.

184. Defendants' refusal to consider or grant Plaintiffs' requests for accommodation and exemption from the Governor's COVID-19 Vaccine Mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

185. Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A. That the Court issue a permanent injunction upon judgment, restraining and enjoining Defendants, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Governor's COVID-19 Vaccine Mandate such that:

        i. Defendants immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

ii.    Defendants will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, provided that Plaintiffs agree to abide by reasonable accommodation provisions such as masking, testing, symptom monitoring, and reporting;

iii.    Defendants will immediately cease threatening to discharge and terminate Plaintiffs from their employment for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs; and

iv.    Defendants will immediately cease proclaiming that federal law does not apply in Maine or otherwise declining Plaintiffs' requests for religious exemption on the basis that Title VII does not apply in the State of Maine;

B.    That this Court render a declaratory judgment declaring that the Governor's COVID-19 Vaccine Mandate, both on its face and as applied by Defendants is illegal and unlawful in that it purports to remove federal civil rights and constitutional protections from healthcare workers in Maine, and further declaring that

i.    in imposing a mandatory COVID-19 vaccine without any provision for exemption or accommodation for sincerely held religious beliefs, the Governor has violated the First Amendment to the United States Constitution by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs while granting exemptions to similarly situated healthcare workers with medical exemptions to the COVID-19 Vaccine Mandate;

ii.    by refusing to consider or evaluate Plaintiffs' requests for religious exemption and accommodation, Defendants have violated Title VII and

other federal protections for Plaintiffs in Maine and have blatantly ignored the Supremacy Clause's mandate that federal protections for religious objectors in Maine supersede and apply with full force in Maine;

iii.  by terminating, threatening to terminate, or otherwise taking adverse employment action against Plaintiffs on the basis of their sincerely held religious beliefs, Defendants have violated Title VII of the Civil Rights Act of 1964;

iv.  that by creating a class system in which religious objectors in Maine are disparately and discriminatorily denied the option of receiving an exemption or accommodation while simultaneously allowing and granting exemptions for other nonreligious reasons, Defendant Governor Mills has violated Plaintiffs' rights to equal protection of the law; and

v.  that by entering into an agreement to unlawfully deprive Plaintiffs of their right to request and receive a religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, Defendants have conspired to violate Plaintiffs' civil rights to free exercise of religious beliefs and equal protection of the law;

C.  That this Court award Plaintiffs damages in an amount to be proven at trial, including damages for adverse employment action resulting in lost wages and other compensatory damages, and further including nominal damages in the absence of proof of damages;

D.  That this Court order Plaintiffs to be reinstated to their previous positions with all the compensation and benefits to which they were entitled prior to Defendants' unlawful and adverse employment actions;

E.      That this Court adjudge, decree, and declare the rights and other legal obligations

and relations within the subject matter here in controversy so that such declaration shall have the

full force and effect of final judgment;

F.      That this Court retain jurisdiction over the matter for the purposes of enforcing the

Court's order;

G.      That this Court award Plaintiffs the reasonable costs and expenses of this action,

including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988; and

H.      That this Court grant such other and further relief as the Court deems equitable and

just under the circumstances.

Respectfully submitted,

| | |
|---|---|
| /s/ Stephen C. Whiting | /s/ Daniel J. Schmid |
| Stephen C. Whiting | Mathew D. Staver* |
|      ME Bar No. 559 | Horatio G. Mihet* |
| The Whiting Law Firm | Roger K. Gannam* |
| 75 Pearl Street, Suite 207 | Daniel J. Schmid* |
| Portland, ME 04101 | LIBERTY COUNSEL |
| (207) 780-0681 | P.O. Box 540774 |
| Email: steve@whitinglawfirm.com | Orlando, FL 32854 |
| | (407) 875-1776 |
| | court@lc.org |
| | hmihet@lc.org |
| | rgannam@lc.org |
| | dschmid@lc.org |
| | *Admitted pro hac vice |
| | |
| | ***Attorneys for Plaintiffs*** |

## **VERIFICATION**

I, Alicia Lowe, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this FIRST AMENDED VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Maine, that the foregoing statements are true and correct to the best of my knowledge.

Dated: July 11, 2022

/s/ Alicia Lowe
Alicia Lowe
(Original Signature of Alicia Lowe retained by Counsel)

# <u>VERIFICATION</u>

I, Debra Chalmers, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this FIRST AMENDED VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Maine, that the foregoing statements are true and correct to the best of my knowledge.

Dated: July 11, 2022

/s/ Debra Chalmers
Debra Chalmers
(Original Signature of Debra Chalmers retained by Counsel)

## **VERIFICATION**

I, Jennifer Barbalias, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this FIRST AMENDED VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Maine, that the foregoing statements are true and correct to the best of my knowledge.

Dated: July 11, 2022

/s/ Jennifer Barbalias
Jennifer Barbalias
(Original Signature of Jennifer Barbalias retained by Counsel)

## **VERIFICATION**

I, Natalie Salavarria, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this FIRST AMENDED VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Maine, that the foregoing statements are true and correct to the best of my knowledge.

Dated: July 11, 2022

/s/ Natalie Salavarria
Natalie Salavarria
(Original Signature of Natalie Salavarria retained by Counsel)

## **VERIFICATION**

I, Nicole Giroux, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this FIRST AMENDED VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Maine, that the foregoing statements are true and correct to the best of my knowledge.

Dated: July 11, 2022

/s/ Nicole Giroux
Nicole Giroux
(Original Signature of Nicole Giroux retained by Counsel)

## **VERIFICATION**

I, Garth Berenyi, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this FIRST AMENDED VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Maine, that the foregoing statements are true and correct to the best of my knowledge.

Dated: July 11, 2022

/s/ Garth Berenyi
Garth Berenyi
(Original Signature of Garth Berenyi retained by Counsel)

## **VERIFICATION**

I, Adam Jones, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this FIRST AMENDED VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Maine, that the foregoing statements are true and correct to the best of my knowledge.

Dated: July 11, 2022

/s/ Adam Jones
Adam Jones
(Original Signature of Adam Jones retained by Counsel)



**AARON M. FREY**
**ATTORNEY GENERAL**

REGIONAL OFFICES
84 HARLOW ST. 2ND FLOOR
BANGOR, MAINE 04401
TEL: (207) 941-3070
FAX: (207) 941-3075

415 CONGRESS ST., STE. 301
PORTLAND, MAINE 04101
TEL: (207) 822-0260
FAX: (207) 822-0259

TEL: (207) 626-8800
TTY USERS CALL MAINE RELAY 711

14 ACCESS HIGHWAY, STE. 1
CARIBOU, MAINE 04736
TEL: (207) 496-3792
FAX: (207) 496-3291

**STATE OF MAINE**
**OFFICE OF THE ATTORNEY GENERAL**
**6 STATE HOUSE STATION**
**AUGUSTA, MAINE 04333-0006**

July 11, 2023

<u>Via CM/ECF</u>

Hon. Jon D. Levy, Chief Judge
United States District Court, District of Maine
Edward T. Gignoux U.S. Courthouse
156 Federal Street
Portland, ME 04101

Re: *Lowe et al. v. Mills et al.*, Civil Action No. 1:21-cv-00242-JDL

Dear Judge Levy,

Counsel for State Defendants in this matter writes to inform the Court that the Maine Department of Health and Human Services (Department) and the Maine Center for Disease Control and Prevention are proposing to amend the healthcare worker vaccination rule, Immunization Requirements for Healthcare Workers, 10-144 Me. Code R. ch. 264, to repeal the requirement that designated healthcare facilities (DHCFs) ensure their employees are vaccinated against COVID-19. The Department sent the proposed amendment to chapter 264 to the Maine Secretary of State's office this morning, and the attached statement announcing this change was issued today.

As alluded to in the statement, effective immediately, the Department will not enforce the COVID-19 vaccination requirement, such that DHCFs can permit employees who are not vaccinated against COVID-19 (and not medically exempt) to attend work in those facilities. DHCFs can continue to require vaccination against COVID-19 pursuant to their own policies.

Sincerely,

/s/ Kimberly L. Patwardhan
Kimberly L. Patwardhan
Counsel for State Defendants

Enc.
cc:    Counsel of Record via CM/ECF system

**Farwell, Jackie**

| | |
|---|---|
| **From:** | Farwell, Jackie |
| **Sent:** | Tuesday, July 11, 2023 2:03 PM |
| **Subject:** | NEWS RELEASE: Maine DHHS Proposes Removing COVID-19 Vaccination from Required Immunizations for Health Care Workers |

# Maine Department of Health and Human Services

**Jeanne M. Lambrew, Commissioner**          **www.maine.gov/dhhs**

**July 11, 2023**

**FOR MORE INFORMATION, PLEASE CONTACT:**
Jackie Farwell, Maine Department of Health and Human Services
Jackie.Farwell@Maine.gov
Shannon Moss, Maine Department of Public Safety
Shannon.Moss@Maine.gov

# <u>NEWS RELEASE</u>

## Maine DHHS Proposes Removing COVID-19 Vaccination from Required Immunizations for Health Care Workers
*Department of Public Safety to inform Board of Emergency Medical Services for consideration of corresponding action*

**AUGUSTA**— The Maine Department of Health and Human Services (DHHS) announced today that it will propose removing the COVID-19 vaccine from the list of required immunizations for workers in health care facilities in response to evolving scientific evidence and trends.

While COVID-19 vaccination remains an important tool to protect public health, the vaccination requirement for health care workers achieved the intended benefits of saving lives, protecting health care capacity, and limiting the spread of the virus in Maine during the height of the pandemic. Despite having the oldest population in the nation, Maine consistently rated among the top states in the country on vaccination and among the lowest on COVID-19 deaths. Maine currently ranks third on bivalent booster vaccination overall and first for those age 65 and older. Additionally, Maine health care professionals' strong culture of patient safety has limited risk of severe COVID-19 being spread among staff and patients.

The Department filed the proposed rule change with the Secretary of State today based on available clinical and epidemiological data about COVID-19, increased population immunity resulting from vaccination and prior infections, decreasing disease severity, improved treatments, and declining infection and death rates. This follows the U.S. Centers for Medicare and Medicaid Services' (CMS) withdrawal of its requirement for

1

**Appendix - 087**

COVID-19 vaccination of health care workers on June 6, 2023. Maine is among four remaining states with some type of COVID-19 vaccine requirement.

In light of this information, the Department of Public Safety's Maine Bureau of Emergency Medical Services (Maine EMS) will present information to the Board of Emergency Medical Services at their regularly scheduled board meeting on August 2, 2023, for them to consider corresponding action on the existing immunization requirements detailed in Chapter 21 of the Maine EMS Rules. The information presented to the Board will include updates from the scientific literature about the efficacy of the immunization requirements based on the current COVID-19 variant as well as data from the Maine EMS electronic patient care reporting system on EMS clinician exposures. The Board has the authority to make its own determination about the EMS vaccination requirement.

The U.S. Centers for Disease Control and Prevention (CDC) continues to recommend that everyone 6 months and older, including health care workers, remain up to date on COVID-19 vaccination.

As such, the Department announced today that it will partner with Maine health care providers to encourage voluntary vaccination of health care workers and residents. In the fall of 2021, the Department partnered with the Maine Long-Term Care Ombudsman Program to launch the Power of Care campaign to educate staff about the benefits of vaccination. The Department will invest an additional $250,000 to extend the campaign through April 2024 and broaden its reach to include long-term care residents. Additionally, it will work with Maine hospitals on their efforts to educate and vaccinate their workers.

"Since the beginning of the COVID-19 pandemic, Maine has followed the science in developing policies to limit the spread of the virus," **said Health and Human Services Commissioner Jeanne Lambrew.** "Today, a robust body of evolving evidence tells us that this requirement achieved its goals of saving lives and protecting health at a crucial time. We continue to encourage all Maine people, including dedicated health care workers tending to Maine's most vulnerable residents, to stay up to date on COVID-19 vaccination."

"Maine's hospitals and health systems remain grateful for the Mills Administration's leadership on this issue," **said Steven Michaud, President of the Maine Hospital Association.** "This requirement protected our patients, caregivers and hospitals during the height of the pandemic. We support this science-based update to the rule and will continue to be guided by patient safety in our efforts to limit the spread of the virus and promote vaccination as a valuable tool to protect public health."

"Maine Health Care Association (MHCA) commends the Mills Administration for continuing to respond to the latest data and updating COVID vaccine requirements accordingly," **said Angela Westhoff, President and CEO of MHCA.** "The requirement achieved its intended goals and we fully support this change. Infections remain low and Maine has some of the highest vaccination rates for long-term care staff and residents. As the science evolves, we will continue to follow best practices for infection prevention and control and will promote ongoing efforts to educate our community about the many benefits of vaccines."

"The Maine Medical Association (MMA) supports the Governor's announcement today to end the requirement that health care workers be vaccinated against COVID 19," **said Erik Steele, D.O., President of MMA.** "The MMA sees this as a difficult but timely decision firmly based in a complete scientific understanding of the status of the epidemic, ready access for all health care workers to personal protective equipment, the ability of the health care industry to rapidly step up protective measures in the future if needed, and plenty of the anti-COVID medication Paxlovid available for higher risk patients. It is the constellation of these things that makes today's decision possible."

DHHS expects the rule to be published next Wednesday and to adopt the rule following public comment by the end of 2023. DHHS will exercise enforcement discretion regarding COVID-19 vaccination of health care

workers during the rulemaking process. Health care providers remain free to implement COVID-19 vaccination requirements for their employees.

The State of Maine has long required the immunization of employees of designated health care facilities to reduce the risk of exposure to and transmission of vaccine-preventable diseases. Health care workers are defined as including any individual employed by a hospital, multi-level health care facility, home health agency, nursing facility, residential care facility, and intermediate care facility for individuals with intellectual disabilities that is licensed by the State of Maine.

For information on getting a COVID-19 vaccine, please visit Maine.gov/covid19/vaccines or speak to your health care provider or pharmacist.

###

**PROPOSAL INFORMATION RECORD**

| 7-11-2023 | **2023-P143** | Department of Health and Human Services, **Maine Center for Disease Control and Prevention** 10-144 | Ch. 264, Immunization Requirements for Healthcare Workers |
|---|---|---|---|

ADOPTED RULE NUMBER: _____

1st PROPOSAL PUBLICATION: ___July 19, 2023

2ND PROPOSAL PUBLICATION (IF APPLICABLE):

PROVISIONAL ADOPTION (IF APPLICABLE) - LOG NUMBER: _____ RECEIVED:_____

ADOPTION or FINAL ADOPTION PUBLICATION:

**EXHIBIT 1**

MAPA-3 revised 8-2019

# Notice of Agency Rulemaking Proposal

*16-144-*

AGENCY: Dept of Health and Human Services - Maine Center for Disease Control and Prevention

CHAPTER NUMBER AND TITLE: Ch. 264 – Immunization Requirements for Healthcare Workers

TYPE OF RULE *(check one)*:  ☒ Routine Technical  ☐ Major Substantive

PROPOSED RULE NUMBER **2023-P143**

BRIEF SUMMARY: The Department is proposing routine technical rule changes to amend Chapter 264, *Immunization Requirements for Healthcare Workers,* that include removing COVID-19 from the list of vaccine preventable diseases for which Designated Healthcare Facility employees must show proof of immunization or provide appropriate exemption documentation.

This Department's proposed change is based on available clinical and epidemiological data about COVID-19, increased population immunity resulting from vaccination and prior infections, decreasing disease severity, improved treatments, and declining infection and death rates. In addition, the U.S. Centers for Medicare and Medicaid Services (CMS) in June 2023 withdrew COVID-19 vaccine requirements for healthcare employees, following the May 11, 2023 end of the federal Public Health Emergency for COVID-19.

**Date, time and location** of PUBLIC HEARING:
Date: August 7, 2023
Time: 9am-1pm
Location: State Office Building, Conference Rooms A and B
109 Capitol Street, Augusta, ME

*The Department requests that any individual requiring special arrangements to attend the hearing in person contact the agency person listed below 5 days in advance of the hearing.*

In addition to the public hearing, the Department will accept written comments submitted on or before August 17, 2023.

COMMENT DEADLINE: August 17, 2023

CONTACT PERSON FOR THIS FILING *(include name, mailing address, telephone, fax, TTY, email)*: Bridget Bagley; 286 Water Street - 11 State House Station, Augusta, ME, 04333-0011; Tel: 287-9394 or 711 (TTY); Fax: 287-2887; Email to submit comments: stakeholders.MECDC@maine.gov

CONTACT PERSON FOR SMALL BUSINESS IMPACT STATEMENT *(if different)*:

FINANCIAL IMPACT ON MUNICIPALITIES OR COUNTIES *(if any)*: None anticipated.

STATUTORY AUTHORITY FOR THIS RULE: 22 MRS § 802(3)

SUBSTANTIVE STATE OR FEDERAL LAW BEING IMPLEMENTED *(if different)*:

AGENCY WEBSITE: https://www.maine.gov/dhhs/about/rulemaking

EMAIL FOR OVERALL AGENCY RULEMAKING LIAISON: tera.pare@maine.gov
*The summary provided above is for publication in both the newspaper and website notices.*
Please approve bottom portion of this form and assign appropriate AdvantageME number.

RECEIVED JUL 11 2023
OFFICE OF THE SECRETARY OF S1
AUGUSTA MAINE

APPROVED FOR PAYMENT _____ DATE: 7·11·23
*(authorized signature)*

Z:

| FUND | AGENCY | ORG | APP | OBJ | PROGRAM | FUNDING Profile JVC | FUND Pri JVC | FUND Line JVC |
|------|--------|------|-----|------|---------|---------------------|--------------|---------------|
| 014 | 10A | 2064 | | 4946 | | | | |

**EXHIBIT 1**

Blank

# STATE OF MAINE

# IMMUNIZATION REQUIREMENTS FOR HEALTHCARE WORKERS

## 10-144 CODE OF MAINE RULES
## CHAPTER 264



Maine Department of Health and Human Services
Maine Center for Disease Control and Prevention
11 State House Station
Augusta, Maine 04333-0011

Date Amended: November 10, 2021

**10-144**     **DEPARTMENT OF HEALTH AND HUMAN SERVICES**
             **MAINE CENTER FOR DISEASE CONTROL AND PREVENTION**

**Chapter 264:**   **IMMUNIZATION REQUIREMENTS FOR HEALTHCARE WORKERS**

**Purpose**: This rule is issued pursuant to the statutory authority of the Department of Health and Human Services to establish procedures for the control and prevention of communicable diseases and to require immunization of the employees of Designated Healthcare Facilities as set forth in 22 MRS §802. The purpose of the immunization requirements set forth in this rule is to reduce the risk of exposure to and transmission of vaccine-preventable diseases among healthcare workers, patients, and other members of the public in Designated Healthcare Facilities. Limiting transmission of vaccine-preventable diseases in Designated Healthcare Facilities also serves to reduce the risk of these diseases spreading throughout the general population. This rule prescribes the dosage for required immunizations; specifies the employees and certain contractors Designated Healthcare Facilities must exclude if the specified immunization requirements are not met; describes conditions under which unimmunized employees and certain contractors may be excluded by order of a Public Health Official and defines recordkeeping responsibilities and reporting requirements for Designated Healthcare Facilities and their Chief Administrative Officers.

## SECTION 1. DEFINTIONS

A.   **Certificate of Immunization** means a written statement from a physician, nurse, physician assistant or health official who has administered an immunization to an employee, specifying the vaccine administered and the date it was administered. Secondary school or collegiate health records, having been compiled and maintained as an official document based on certificates of immunization, which provide at a minimum the month and year that the immunization was administered and/or which contain copies of laboratory evidence of immunity, may also be accepted as proof of immunization.

B.   **Chief Administrative Officer** means the person designated as the president, chief executive officer, administrator, director or otherwise the senior official of a Designated Healthcare Facility.

C.   **Declination** means a formal process where an individual makes an informed choice declining Hepatitis B vaccination, following standards and procedures established by the federal Occupational Safety and Health Administration (OSHA) regulations (29 CFR §1910.1030(f)(2)(iv) (effective July 6, 1992).

D.   **Department** means the Department of Health and Human Services.

E.   **Designated Healthcare Facility** means a licensed nursing facility, residential care facility, Intermediate Care Facility for Individuals with Intellectual Disabilities (ICF/IID), multi-level healthcare facility, hospital, or home health agency subject to licensure by the State of Maine, Department of Health and Human Services Division of Licensing and Certification.

## Appendix - 095

2

F.    **Disease** means the following conditions which may be preventable by immunization:

    1.    Rubeola (measles);

    2.    Mumps;

    3.    Rubella (German measles);

    4.    Varicella (chicken pox);

    5.    Hepatitis B.; and

    6.    Influenza.; and

    7.    COVID-19.

G.    **Employee** means, for purposes of this rule, any person who performs any service for wages or other remuneration for a Designated Healthcare Facility, including independent contractors. Persons who provide ad hoc, non-health care services for a Designated Healthcare Facility and have no potential for direct contact (clinical, hands-on, or face-to-face interaction) with staff, patients, or visitors of a Designated Healthcare Facility are not included in this definition of employee. For illustrative purposes only, these may include, but are not limited to, landscapers, snowplow operators, and delivery persons.

H.    **Exclusively work remotely** means to provide services while outside the physical premises of a Designated Healthcare Facility and have no direct contact (clinical, hands-on, or face-to-face interaction) with patients, visitors, and other employees.

I.    **Exemption** means a formal procedure to procure discharge from requirement to vaccinate.

J.    **Health Official** means, for the purposes of this rule, any person who is authorized to administer immunizations.

K.    **Immunization** means a vaccine, antitoxin, or other substance used to increase an individual's immunity to disease.

L.    **Public Health Official** means a local health officer, the Director of the Maine Center for Disease Control and Prevention (Maine CDC), or a designated employee or agent of the Maine Department of Health and Human Services (Department).

M.    **Public Health Threat** means a condition or behavior that can reasonably be expected to place others at significant risk of exposure to a toxic agent or environmental hazard or infection with a notifiable disease or condition, as defined in 22 MRS §801.

EXHIBIT 1

## SECTION 2.  IMMUNIZATIONS REQUIRED

A.  Except as otherwise provided by law, each Designated Healthcare Facility in the State of
   Maine must require for all employees who do not exclusively work remotely a Certificate
   of Immunization, or Proof of Immunity, subject to Section 4(B) of this rule, against:

   1.  Rubeola (measles);

   2.  Mumps;

   3.  Rubella (German measles);

   4.  Varicella (chicken pox);

   5.  Hepatitis B;

   6.  Influenza.;

   7.  COVID-19.

B.  In accordance with 29 CFR §1910.1030(f)(1)(i) (effective July 6, 1992) of the
   Occupational Safety and Health Administration (OSHA) regulations, Designated
   Healthcare Facilities must make available the Hepatitis B vaccine to all healthcare
   workers with a risk of occupational exposure, provided at no cost to the employee and at
   a reasonable time and place.

C.  No Chief Administrative Officer may permit any employee who does not exclusively
   work remotely to be in attendance at work without a Certificate of Immunization for each
   disease or Proof of Immunity, as described in Section 4(B) of this rule, or documentation
   of an authorized exemption or declination in accordance with 22 MRS § 802(4-B).

## SECTION 3.  EXEMPTIONS

An employee who does not provide a Certificate of Immunization or Proof of Immunity, as
described in Section 4(B) for a vaccine required under this rule may be permitted to attend work
if that employee is exempt in accordance with 22 MRS § 802 (4-B), unless otherwise provided by
law. Documentation for an employee's immunization exemption must be maintained in the
permanent health record for that employee for a minimum of six years after termination.

## SECTION 4.  CERTIFICATE of IMMUNIZATION and PROOF OF IMMUNITY

A.  **Certificate of Immunization**

   To demonstrate proper immunization against each disease, an employee must present the
   Designated Healthcare Facility with a Certificate of Immunization from a physician,
   nurse or health official who has administered the immunization(s) to the employee.
   Physicians within their own practice may authorize their own employees to issue a
   certificate of immunization on behalf of the physician. The certificate must specify the
   immunization(s), and the date(s), including month and year, on which it was

4

administered. Physicians, having reviewed official patient records created by another practitioner which indicate that a particular patient has received an immunization on a specified date, demonstrating at a minimum the month and year the immunization was given, may certify that the immunization was given. Adequately prepared secondary and/or collegiate school health records will also be considered acceptable for the purpose of meeting this requirement.

B.   **Proof of Immunity**

To demonstrate that an employee is immune to any of the diseases listed in Section 5(A)(1)-(5), the employee may present the hospital/facility Designated Healthcare Facility with laboratory evidence demonstrating immunity, or other acceptable evidence of immunity. (See Section 7(-B) Individual Health Records.) No Proof of Immunity is available for ~~COVID-19 or~~ Influenza.

### SECTION 5.   IMMUNIZATION DOSAGE

A.   The following schedule contains the minimally required number of doses for the immunization(s) listed in Section 2(A) of this rule:

   1.   **Rubeola (Measles)**: Two doses of live measles vaccine given after the first birthday, with a minimum of four weeks separating the two doses.

   2.   **Mumps**: Two doses of live mumps vaccine given after the first birthday.

   3.   **Rubella (German Measles)**: Two doses of live rubella vaccine given after the first birthday.

   4.   **Varicella (Chickenpox)**: Two doses of live varicella vaccine given after the first birthday, with a minimum of four weeks separating the two doses.

   5.   **Hepatitis B**: Fully completed series of either two or three doses of hepatitis B vaccine. If a two-dose series, then the second dose must be given one month after the first dose. If a three-dose series, the second dose must be given one month after the first dose and five months must separate the second and third doses.

   6.   **Influenza**: Annual dose of inactivated influenza vaccine or live attenuated influenza vaccine.

   ~~7.~~   ~~**COVID-19**: The number of recommended doses must be in accordance with the COVID-19 immunization manufacturer's Emergency Use Authorization or labeling.~~

B.   Any such immunization must meet the standards for biological products which are approved by the United States Public Health Service.

## SECTION 6.  EXCLUSIONS FROM THE HEALTHCARE SETTING

A.  **Exclusion by order of Public Health Official**

A Public Health Official may order a Chief Administrative Officer to exclude from the worksite an employee who has not been immunized when the employee's continued presence poses a clear danger to the health of others. The documented occurrence of a single case of rubeola (measles), mumps, rubella (German measles), or varicella (chickenpox), or COVID-19 in a Designated Healthcare Facility or amongst its employees may be interpreted as a clear danger to the health of others.

The Chief Administrative Officer must exclude that employee during the period of danger, unless otherwise ordered by the Public Health Official.

B.  The following periods are defined as the minimum "period of danger:" for each disease listed below:

  1  **Measles**: 15 days from the onset of symptoms from the last identified case

  2.  **Mumps**: 18 days from the onset of symptoms from the last identified case

  3.  **Rubella**: 23 days from the onset of symptoms from the last identified case

  4.  **Varicella**: 16 days from the onset of symptoms from the last identified case.

C.  There is no defined minimum period of danger for influenza or, Hepatitis B, or COVID-19.

## SECTION 7.  RECORD KEEPING, REPORTING, AND ENFORCEMENT

A.  **Designated Record Keeping**

The Chief Administrative Officer in each Designated Healthcare Facility must be responsible for the maintenance of employee immunization records. The Chief Administrative Officer may designate a person to be responsible for record keeping.

B.  **Individual Health Records**

Each Designated Healthcare Facility must adopt a uniform, health record for maintaining information regarding the health status of each employee. The immunization status of each employee with regard to each disease must be noted on the employee's health record. The health record of each employee must include, at a minimum, the month and year that each immunization was administered. Health records are to be retained a minimum of six years after the date the employee provided services.

Where an exemption has been granted for a reason authorized by law, the documentation supporting the exemption (including any information regarding the anticipated duration of the exemption) must be on file with the employee health record. Where Proof of Immunity has been accepted, a copy of the documentation must also be on file.

C. **List of Non-Immunized Employees**

The Chief Administrative Officer or his/her designee in each Designated Healthcare Facility must keep a listing for each disease of the employees who are not currently immunized and have not provided Proof of Immunity. This list must include the names of all employees with authorized exemptions from immunization as well as any who are otherwise not known to be immune and must state the reason that the employee is not immune. The purpose of the list is to provide an efficient means to rapidly contact non-immunized employees in the event of disease outbreaks and exclude them from the workplace as necessary.

D. **Required Reports**

The Chief Administrative Officer of each Designated Healthcare Facility is responsible for completing the Maine CDC's annual survey regarding the immunization status of all employees by December 15 of each calendar year. The survey will include the following information at a minimum:

1. Specific contact information identifying the facility;
2. The name of the Chief Administrative Officer;
3. The total number of employees; and
4. The number of employees identified by vaccine type as either being immunized, having demonstrated serological proof of immunity, having an exemption in accordance with law, having declined hepatitis B vaccine, or being out of compliance.

The survey results may be constructed so as to reflect meaningful data by groupings within the facility (e.g., pediatric unit). Each report must be signed by the Chief Administrative Officer as a certification that the information is accurate.

E. **Record Sampling and Review**

The Department will conduct periodic reviews of annual survey results by selecting samples of employee health records to compare against information reported by the Designated Healthcare Facility and to assess for compliance with this rule. The Department will share the results of this review with the Chief Administrative Officer of the Designated Healthcare Facility and/or their designees(s) for the purpose of identifying problems with recordkeeping or other compliance issues.

F. **Compliance Rates**

Compliance rates may also be made available to the public at the Department's discretion in accordance with 22 MRS §824.

G. **Enforcement**

If a Designated Healthcare Facility fails to correct violations identified by the Department or otherwise fails to comply with the requirements of this rule, the Department may take enforcement action pursuant to 22 MRS §804 or as otherwise provided by law.

STATUTORY AUTHORITY:
    22 MRS §802

EFFECTIVE DATE:
    April 16, 2002 – filing 2002-115 *(New)*

NON-SUBSTANTIVE CORRECTIONS:
    May 13, 2002 - corrected the spelling of DEPARTMENT in header, page 1
    May 10, 2004 - spacing, capitalization and punctuation only

EFFECTIVE DATE:
    October 6, 2009 to January 4, 2010 - filing 2009-531 (EMERGENCY)
    December 8, 2009 – filing 2009-644
    April 14, 2021 – filing 2021-198 (ROUTINE TECHNICAL)
    August 12, 2021 – filing 2021-166 (EMERGENCY ROUTINE TECHNICAL)
    November 10, 2021 – filing 2021-226 (ROUTINE TECHNICAL)

Blank

## Wismer, Don

| From: | Bagley, Bridget |
|---|---|
| Sent: | Tuesday, July 11, 2023 10:38 AM |
| To: | Wismer, Don |
| Cc: | Beardsley, Nancy; Pare, Tera; Farmer, Ann |
| Subject: | electronic filing of approved rule change proposal for Chapter 264 HCW Immunization Rule |
| Attachments: | MAPA-3 HCW Immun Proposal Ch 264 approved7-10-2023.docx; Fact Sheet c.264 HCW Immun Proposal approved7-10-2023.docx; HCW Rule - Marked Proposed 7-10-2023.docx; 20230711101523155.pdf |

Attached, please find the electronic copies of the CO approved rulemaking documents in Word to propose amending Chapter 264. Also attached is the signed MAPA-3 approving cost for publishing next week with info about the in-person public hearing and the comment deadline that is 8/17. Please let me know if you have any questions or concerns, or if any additional info or correction is needed.

**Bridget Bagley**
Policy Analyst/Agency Legislative Coordinator

**Department of Health and Human Services**
*Maine Center for Disease Control and Prevention – Preserve ~ Promote ~ Protect*
**Division of Public Health Operations**
**Policy and Compliance**

286 Water Street, 8th Floor
11 State House Station
Augusta, ME 04333-0011

Tel: (207) 287-9394
Fax: (207) 287-2887
TTY: Call 711 (Maine Relay)



Confidentiality Notice: This e-mail message, including any attachments, is solely for the use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient or an authorized agent of the intended recipient, please immediately contact the sender by reply e-mail and destroy/delete all copies of the original message. Any review, use, copying, forwarding, disclosure, or distribution of this e-mail message by other than the intended recipient or authorized agent is strictly prohibited.

revised 8-2019

# Rulemaking Fact Sheet
*(5 MRSA §8057-A)*

AGENCY: DHHS Maine Center for Disease Control and Prevention

NAME, ADDRESS, PHONE NUMBER, EMAIL OF AGENCY CONTACT PERSON: Bridget Bagley, 11 SHS, 286 Water St., Augusta, ME 04330, 207-287-9394; bridget.bagley@maine.gov

CHAPTER NUMBER AND RULE TITLE: Chapter 264 - Immunization Requirements For Healthcare Workers

TYPE OF RULE *(check one)*: ☒ Routine Technical ☐ Major Substantive

STATUTORY AUTHORITY: 22 MRS §§802(1), (3)

DATE, TIME AND PLACE OF PUBLIC HEARING: Date: August 7, 2023
Time: 9am-1pm
Location: State Office Building, Conference Rooms A and B
109 Capitol Street, Augusta, ME

*The Department requests that any individual requiring special arrangements to attend the hearing in person contact the agency person listed below 5 days in advance of the hearing.*

In addition to the public hearing, the Department will accept written comments submitted on or before August 17, 2023.

COMMENT DEADLINE: Thursday, August 17, 2023

PRINCIPAL REASON(S) OR PURPOSE FOR PROPOSING THIS RULE: [see §8057-A(1)(A) & (C)]
The Department is proposing to amend *Immunization Requirements For Healthcare Workers*, to remove COVID-19 from the list of vaccine-preventable diseases for which Designated Healthcare Facilities must require all employees to provide proof of immunization or documentation of an authorized medical exemption. This proposed change is based on available clinical and epidemiological data about COVID-19, increased population immunity resulting from vaccination and prior infections, decreasing disease severity, improved treatments, and declining infection and death rates. In addition, the U.S. Centers for Medicare and Medicaid Services (CMS) in June 2023 withdrew the COVID-19 vaccine requirement for healthcare employees, following the May 11, 2023 end of the federal Public Health Emergency for COVID-19. CMS will continue to encourage healthcare worker COVID-19 vaccination through other mechanisms, including quality reporting and value-based incentive programs.

IS MATERIAL INCORPORATED BY REFERENCE IN THE RULE? ___YES _X_ NO [§8056(1)(B)]

ANALYSIS AND EXPECTED OPERATION OF THE RULE: [*see* §8057-A(1)(B)&(D)]
If these proposed changes are adopted, then this rule would allow employees of Maine designated healthcare facilities who are unvaccinated against COVID-19 to work at the facility, if such presence aligns with facility policies and CMS requirements. The Department will continue to support Designated Healthcare Facilities' efforts to promote COVID-19 vaccination, due to strong scientific data that such vaccination prevents severe illness, hospitalization, and death by helping to reduce the spread of the virus in communities.

BRIEF SUMMARY OF RELEVANT INFORMATION CONSIDERED DURING DEVELOPMENT OF THE RULE (including up to 3 primary sources relied upon) [*see* §§8057-A(1)(E) & 8063-B]
- CMS Regulations (42 CFR Parts 416, 418, 441, 460, 482-486, 491, 494)
- Clinical and epidemiological data
- End of federal Public Health Emergency on May 11, 2023

**Appendix - 104**



**AARON M. FREY**
**ATTORNEY GENERAL**

REGIONAL OFFICES
84 HARLOW ST. 2ND FLOOR
BANGOR, MAINE 04401
TEL: (207) 941-3070
FAX: (207) 941-3075

415 CONGRESS ST., STE. 301
PORTLAND, MAINE 04101
TEL: (207) 822-0260
FAX: (207) 822-0259

14 ACCESS HIGHWAY, STE. 1
CARIBOU, MAINE 04736
TEL: (207) 496-3792
FAX: (207) 496-3291

**STATE OF MAINE**
**OFFICE OF THE ATTORNEY GENERAL**
**6 STATE HOUSE STATION**
**AUGUSTA, MAINE 04333-0006**

TEL: (207) 626-8800
TTY USERS CALL MAINE RELAY 711

September 1, 2023

Via CM/ECF

Hon. Jon D. Levy, Chief Judge
United States District Court, District of Maine
Edward T. Gignoux U.S. Courthouse
156 Federal Street
Portland, ME 04101

 Re: *Lowe et al. v. Mills et al.*, Civil Action No. 1:21-cv-00242-JDL

Dear Judge Levy,

 Counsel for State Defendants in this matter writes to inform the Court that the Maine Department of Health and Human Services and the Maine Center for Disease Control and Prevention have amended the healthcare worker vaccination rule, Immunization Requirements for Healthcare Workers, 10-144 Me. Code R. ch. 264, and repealed the requirement mandating that designated healthcare facilities ensure their employees are vaccinated against COVID-19. *See* ECF No. 181 at 5.

 The amended rule was filed with the Maine Secretary of State yesterday, August 31, 2023, and will be effective September 5, 2023. *See* 5 M.R.S.A. § 8052(6) (Supp. 2023).

    Sincerely,

    /s/ Kimberly L. Patwardhan
    Kimberly L. Patwardhan
    Counsel for State Defendants

cc: Counsel of Record via CM/ECF system

# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

---

ALICIA LOWE, et al.,

          Plaintiffs,

    v.

JANET T. MILLS, Governor of the State of
Maine, et al.,

          Defendants.

Civil Action No. 1:21-cv-00242-JDL

---

## STATE DEFENDANTS' MOTION TO DISMISS REMAINING CLAIMS AS MOOT, WITH INCORPORATED MEMORANDUM OF LAW

In August 2021, Plaintiffs sued to prevent the enforcement of a state regulation, Immunization Requirements for Healthcare Workers, 10-144 Me. Code R. ch. 264 (Rule), which required that designated healthcare facilities (DHCFs) ensure their employees are vaccinated against COVID-19. State Defendants vigorously defended that rule in this Court and in state court litigation. *See Coalition for Healthcare Workers Against Medical Mandates v. Lambrew*, 2021 WL 9037755 (Me. Super. Ct. Oct. 22, 2021) (denying preliminary injunction directing State to stop enforcing Rule). But nearly two years later, the Maine Department of Health and Human Services (Department), and the Maine Center for Disease Control and Prevention (Maine CDC), determined that requiring employees of DHCFs to be vaccinated against COVID-19 was no longer warranted by present public-health conditions. Effective July 11, 2023, the Department and Maine CDC stopped enforcing the COVID-19 vaccination requirement. The Department and Maine CDC also engaged in rulemaking to repeal the same. That rulemaking was complete on August 31, 2023, and the repeal of the COVID-19 vaccination requirement became effective September 5,

2023.  As a result, no Plaintiff presently requires judicial relief from the Rule's prior COVID-19 vaccination requirement.  In short, this case is moot.

Any resistance to this conclusion is to no avail.  Plaintiffs cannot contend that they now face termination or loss of any rights based on their COVID-19 vaccination status.  Further, the exceptions to mootness based on voluntary cessation or issues capable of repetition are inapplicable here.  State Defendants repealed the COVID-19 rule based on changed public-health conditions.  Mere speculation about the possibility of new vaccination requirements in the future cannot sustain the Court's jurisdiction in this case.

For all these reasons, the Court should grant State Defendants' motion and dismiss the remaining counts of Plaintiffs' Amended Complaint ("Amd. Compl."), ECF No. 152.[1]

## REPEAL OF THE COVID-19 VACCINATION REQUIREMENT

In early 2020, the deadly viral disease now known as COVID-19 emerged and fundamentally altered American life.  COVID-19 is an airborne viral disease that most commonly spreads between people who are in close contact with one another.  Amd. Compl. ¶ 68.  It spreads through respiratory droplets or small particles, such as those in aerosols, produced when an infected person coughs, sneezes, sings, talks, or breathes.  Amd. Compl. ¶ 68.  A prolonged global pandemic unfolded over the ensuing years, causing millions of infections, hospitalizations, and deaths in the United States, and substantially disrupting public and private business operations.  The Department declared a health emergency in July 2021.  Declaration of Nancy Beardsley [hereinafter, "Beardsley Decl."] ¶ 3, attached hereto.[2]

---

[1] Under the Court's order, "State Defendants shall answer or otherwise respond to the Amended Complaint by September 8, 2023."  ECF No. 183.  Although a motion to dismiss for lack of subject matter jurisdiction can be raised at any time, "[a] motion asserting any of the[ 12(b)] defenses must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).

[2] The Declaration of Nancy Beardsley is filed in support of this motion to dismiss.  The Court is well aware of the history of this proceeding, and State Defendants include only the highlights in this factual recitation.

2

In August 2021, Maine was experiencing a rapid increase in the number of COVID-19 infections as a result of the Delta variant, a highly transmissible variant of SARS-CoV-2, the virus that causes COVID-19. ECF No. 49-4, ¶¶ 20-16, 48-50. On August 12, 2021, the Department and Maine CDC revised the healthcare worker vaccination rule on an emergency basis to add COVID-19 to the list of vaccinations that DHCFs must require for their employees. ECF No. 49-8, § 2(A)(7). *See also* Amd. Compl. ¶¶ 36-39. Because the emergency amendment was statutorily limited to 90 days, the Department and Maine CDC proposed and then adopted a permanent amendment requiring vaccination against COVID-19 effective November 10, 2021, thereby superseding the emergency amendment. ECF No. 109-2 at 12-18. The Department considered relevant COVID-19 vaccination rates, data on COVID-19 outbreaks in DHCFs, and Maine-specific data on infection and hospitalization rates from COVID-19. *Id.* at 22-23. Based on this and other information, the Department determined that requiring COVID-19 vaccinations for healthcare workers in DHCFs was necessary to protect public health for the protection of individual patients; protection of individual workers; protection of the State's healthcare infrastructure, including its workforce; and reducing the likelihood of outbreaks of COVID-19 in covered facilities. *Id.* at 23-24; *see id.* at 21-24 (explaining complete bases for the Rule).

On November 5, 2021, CMS published an Interim Final Rule with Comment Period (IFC or "CMS Rule") entitled "Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination." 86 Fed. Reg. 61,555 (proposed Nov. 5, 2021) (codified at 42 C.F.R. pts. 416, 418, 441, 460, 482-86, 491 & 494). The CMS Rule covered many of the same healthcare entities as Maine's Rule and required that those entities ensure that a broad swath of personnel within those facilities be vaccinated against COVID-19. *See, e.g.*, *id.* at 61,619-21 (covering hospitals

---

Nevertheless, State Defendants are relying the following portions of the record to support their motion: ECF No. 109-2 at 12-38; ECF No. 109-3 ¶¶ 1-11, 17; ECF No. 49-5; ECF No. 49-4.

and long-term care facilities).  While in effect, the CMS Rule preempted any inconsistent state and local laws, including the scope of any applicable COVID-19 vaccine exemption.  *Id.* at 61,613 ("[T]his IFC preempts the applicability of any State or local law providing for exemptions [to COVID-19 vaccination requirements] to the extent such law provides broader grounds for exemptions than provided for by Federal law and are inconsistent with this IFC.").  While the CMS rule was in effect, the Division of Licensing and Certification (Maine DLC) within the Department was the regulatory authority responsible for ensuring covered facilities were complying with the CMS Rule.  Beardsley Decl. ¶ 14.  Maine DLC was also responsible for investigating DHCFs' compliance with Maine's Rule.  Beardsley Decl. ¶ 14.

Maine's Rule and the CMS Rule were effective in increasing the overall rate of vaccination of healthcare workers in Maine.  For the monthly reporting period ending July 31, 2021, the rate of COVID-19 vaccination among healthcare workers in certain DHCFs was as follows:

- Ambulatory Surgical Centers: 85.9%
- Assisted Housing Facilities: 74.7%
- Hospitals: 80.3%
- Intermediate Care Facilities for Individuals with Intellectual Disabilities: 68.2%
- Nursing Homes: 73.0%

ECF No. 49-4 ¶ 53.  But by the end of October 2021, COVID-19 vaccination rates among healthcare workers in certain DHCFs were as follows, indicating the effectiveness of the amendment:

- Ambulatory Surgical Centers: 92.6%;
- Assisted Housing Facilities: 96.8%;
- Hospitals: 98.1%;
- Intermediate Care Facilities for Individuals with Intellectual Disabilities: 95.6%; and
- Nursing Homes: 96.8%.

Beardsley Decl. ¶ 32. Between May 28, 2023, and June 30, 2023, 93.3% of essential healthcare workers in Maine have completed the primary series of COVID-19 vaccinations, 99.8% had

received at least one dose of a COVID-19 vaccine, and 36.4% had received a dose of the updated bivalent COVID-19 vaccine.  Beardsley Decl. ¶ 33.

Both the federal public health emergency and the state health emergency ended effective May 11, 2023.  Beardsley Decl. ¶¶ 3, 10-11; *see also id.* ¶ 9 (noting CMS announced on May 1, 2023, that it would soon end the requirement that covered providers establish policies requiring staff vaccination against COVID-19).  In the months leading up to the end of those declared emergencies, the Department, including offices and divisions within the Department, began planning for the end of the Department-declared health emergency and the federal health emergency.  Beardsley Decl. ¶ 8.  This included identifying program and services that would be ending or transitioning back to pre-COVID standards as a result of the termination of the health emergencies and working to ensure a smooth transition to those standards.  Beardsley Decl. ¶ 8. On June 5, 2023, CMS withdrew the COVID-19 health care staff vaccination requirements issued in the CMS Rule.[3]  Beardsley Decl. ¶ 12.

Since November of 2021, and throughout the COVID-19 pandemic, the Department and Maine CDC have continued to monitor available clinical and epidemiological data regarding COVID-19.  Beardsley Decl. ¶ 15.  Around the end of May 2023 and beginning of June 2023, the Department and Maine CDC reviewed the available science and research on the then current risks of COVID-19 in healthcare settings to ensure the State's rules and policies were consistent with that science and research.  Beardsley Decl. ¶ 16.  This review was triggered by the end of the federal public health emergency, the announcement that CMS would be rescinding its COVID-19 vaccine requirement, and changed circumstances regarding COVID-19 variants, vaccinations

---

[3]  At the same time, CMS kept in place regulations that require health care facilities to document that they have offered vaccination against COVID-19 to all healthcare workers, explained the benefits of vaccination, and kept records for any healthcare workers who have declined vaccination against COVID-19.  Beardsley Decl. ¶ 13.

rates, and disease prevalence. Beardsley Decl. ¶ 17. That work included reviewing the evidence base for the Rule. Beardsley Decl. ¶ 18.

The variants of SARS-CoV-2 that currently are circulating in the United States, including Maine, are all lineages of what is commonly referred to as the Omicron variant. Beardsley Decl. ¶ 19. Omicron variants spread more quickly than the Delta variants, but the Omicron variants of SARS-CoV-2 cause fewer deaths and hospitalizations per year on a population level than the Delta variants. Beardsley Decl. ¶ 21. Generally accepted indicators of disease severity are the numbers of hospitalizations and deaths caused by that disease. Beardsley Decl. ¶ 43. The rates of hospitalizations and deaths from COVID-19 declined significantly between January 2022 and August 2023. Beardsley Decl. ¶¶ 34-35, 44-48; Beardsley Decl. Exs. 1-2. At the same time, the rate of vaccination in the State of Maine has climbed over time. As of July 31, 2023, 91.9% of adults in Maine had completed a primary series of COVID-19 vaccinations and 31.2% had received at least one additional dose of a bivalent vaccine. Beardsley Decl. ¶ 31. New treatments for COVID-19, such as Paxlovid and Lagrevio, have become widely available. Beardsley Decl. ¶ 22. These treatments, when taken as indicated, are effective at reducing the severity of symptoms resulting from COVID-19 infections and have contributed to declining hospitalization and death rates from 2022 and into 2023. Beardsley Decl. ¶¶ 22, 50.

As a result of the Department's consideration of the available information, the Department concluded that it would no longer be necessary to require that DHCFs ensure their employees are vaccinated against COVID-19. Beardsley Decl. ¶ 36. Vaccination against COVID-19 remains an important tool to protect public health, but the Rule's COVID-19 vaccination requirement is no longer necessary to protect individual patients; protect individual workers; protect the State's healthcare infrastructure, including the workforce; and reduce the likelihood of facility outbreaks of COVID-19. Beardsley Decl. ¶ 37; *see also id.* ¶ 52 (noting the Department and Maine CDC

will continue to encourage voluntary vaccination of health care workers and residents).

On July 11, 2023, the Department announced that it was proposing to end the requirement that DHCFs require their employees to be vaccinated against COVID-19.  Beardsley Decl. ¶ 38. The Department also announced it would not be enforcing that requirement effective July 11, 2023, and during the pendency of the rulemaking.  ECF No. 167.  The Rule amendment was completed August 31, 2023, and the repeal of requirement that DHCFs ensure their employees are vaccinated against COVID-19 became effective September 5, 2023.[4]  Beardsley Decl. ¶ 40.

The Department has no plans to include COVID-19 again among the diseases against which DHCFs must ensure their employees are vaccinated against in the healthcare worker vaccination rule.  Beardsley Decl. ¶ 41.  This is due to the reduction in outbreaks of COVID-19 in healthcare facilities, the decreased disease severity from the Omicron variants now circulating, and the decline in hospitalizations and deaths from COVID-19 over the last 10 months.  Beardsley Decl. ¶¶ 42-48, 50.  Moreover, available US CDC data indicates that approximately 96% of the population of the United States now has some immunity against COVID-19 from vaccination, prior COVID-19 infection, or both.  Beardsley Decl. ¶ 49.

In sum, based on the available clinical and epidemiological data about COVID-19, increased population immunity resulting from vaccination and prior infections, decreasing disease severity, improved treatments, and declining hospitalization and death rates, it is highly unlikely that the Department will seek to impose COVID-19 vaccination requirements on DHCFs in the future.  Beardsley Decl. ¶ 51.

---

[4]  Notice of the adoption of the rule has yet to be published on the Maine Secretary of State's website, but is available on the Department's website: https://www.maine.gov/dhhs/sites/maine.gov.dhhs/files/rule-2023-09/Ch%20264%20HCW%20Immunizations_Adopted%20rule%20eff%209.6.2023_0.pdf.

## ALLEGATIONS IN COMPLAINT

Plaintiffs are seven healthcare workers who alleged that their "sincerely held religious beliefs compel them to abstain from obtaining or injecting any of [the three available COVID-19 vaccines] into their bod[ies], regardless of perceived benefit or rationale." Amd. Compl. ¶ 58. Because they refused to be vaccinated against COVID-19, Plaintiffs' employment with the Provider Defendants ended. Amd. Compl. ¶¶ 10-16. In the remaining counts of the Amended Complaint, Plaintiffs seek declaratory and injunctive relief against State Defendants only with respect to the COVID-19 vaccine, claiming the lack of a religious exemption to that vaccination requirement violated their First Amendment and Equal Protection rights. Amd. Compl. *passim*.

## STANDARD OF REVIEW

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "'differs little from that used to review motions to dismiss' under Rule 12(b)(6)." *Pollack v. Reg'l Sch. Unit 75*, 12 F. Supp. 3d 173, 184 (D. Me. 2014) (quoting *Benjamin v. Aroostook Med. Ctr.*, 57 F.3d 101, 104 (1st Cir. 1995)). However, a "district court may resolve factual disputes between the parties in order to determine its own jurisdiction." *Me. Mar. Acad. v. Fitch*, 425 F. Supp. 3d 24, 28 (D. Me. 2019) (cleaned up); *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363-64 (1st Cir. 2001) (highlighting materials, evidence, and methods federal courts may use to evaluate jurisdictional claims).

## ARGUMENT

### I. All of Plaintiffs' claims for injunctive and declaratory relief are moot.

Article III of the United States Constitution confines the jurisdiction of federal courts "to those claims that involve actual 'cases' or 'controversies.'" *Redfern v. Napolitano*, 727 F.3d 77, 83 (1st Cir. 2013) (quoting U.S. Const. art. III, § 2, cl. 1). "The Supreme Court has admonished that federal courts 'are not in the business of pronouncing that past actions which have no

8

demonstrable continuing effect were right or wrong.'" *ACLU of Mass. v. U.S. Conference of Cath. Bishops*, 705 F.3d 44, 53 (1st Cir. 2013) (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998)); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("[i]n our system of government, courts have no business deciding legal disputes or expounding on law in the absence of such a case or controversy" (quotations omitted)). Therefore, "to qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (cleaned up). "If events have transpired to render a court opinion advisory, Article III considerations require dismissal of the case." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003). Thus, a case is considered "moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. Another way of putting this is that a case is moot when the court cannot give any effectual relief to the potentially prevailing party." *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 157 (1st Cir. 2021) (quotation marks omitted). State Defendants have the burden to show mootness. *Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 47 (1st Cir. 2022).

A straightforward application of these principles demonstrates that Plaintiffs' challenge to the repealed COVID-19 vaccination requirement is moot. Plaintiffs brought suit two years ago claiming they faced termination from their jobs and would suffer a loss of their constitutionally protected rights based on their refusal to vaccinated against COVID-19 due to their sincerely held religious beliefs. Amd. Compl. *passim*. They sought a permanent injunction "restraining [State] Defendants . . . from enforcing threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Governor's COVID-19 Vaccine Mandate" and requiring Defendants to "grant Plaintiffs' requests for religious exemption an accommodation from the Governor's COVID-19 Vaccine Mandate." Amd. Compl. at 43-44. Plaintiffs also sought "a declaratory judgment that the Governor's COVID-19 Vaccine Mandate, both on its face and as applied by Defendants is

9

illegal and unlawful" by "imposing a mandatory COVID-19 vaccine without any provision for exemption or accommodation for sincerely held religious beliefs" that violates the First Amendment and the Equal Protection Clause.  Amd. Compl. at 44-45.

But now, the requirement that DHCFs ensure their employees are vaccinated against COVID-19 has been repealed.  There is no longer any state (or federal) law that requires any of the Plaintiffs to be vaccinated against COVID-19.  Because of this, the Court cannot "grant any effectual relief whatever" to Plaintiffs.  *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).  "No matter how vehemently [Plaintiffs] continue to dispute the lawfulness of the conduct that precipitated the lawsuit," their case "is no longer embedded in any actual controversy about [their] legal rights." *Already, LLC*, 568 U.S. at 91.

Because there is "no ongoing conduct to enjoin," Plaintiffs' "injunctive-relief claims" are moot.  *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021) (cleaned up).  The same is true for Plaintiffs' declaratory relief claims.  This Court cannot issue the declarations that they seek because COVID-19 vaccination requirement is "no longer in controversy" and "the dispute is at this point neither immediate nor real."  *Id.* (cleaned up).  In sum, there is "nothing harming" Plaintiffs "and nothing left for [the Court] to do that would make a difference to [their] legal interests."  *Id.*  It follows that Plaintiffs' claims are now moot and that the Court lacks jurisdiction over the case.

Consistent with these principles, numerous courts have concluded that cases challenging government mandated COVID-19 vaccination requirements became moot when the challenged authority and associated requirements were rescinded.  *See, e.g.*, *Marciano v. Adams*, No. 22-570-CV, 2023 WL 3477119, at *1 (2d Cir. May 16, 2023) ("But the Defendants have repealed th[e COVID-19 vaccine] mandate, and we 'cannot enjoin what no longer exists.'" (quoting *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 393 (2d Cir. 2022)); *Navy SEAL 1 v. Austin*, No. 22-5114,

2023 WL 2482927 (D.C. Cir. Mar. 10, 2023), *rehr'g en banc denied*, 2023 WL 2795667 (D.C.

Cir. Apr. 4, 2023) (dismissing as moot an appeal challenging military COVID-19 vaccination

requirement following rescission of that mandate); *Regalado v. Dir., Ctr. for Disease Control*, No.

22-12265, 2023 WL 239989 (11th Cir. Jan. 18, 2023) (upholding dismissal for mootness where

the challenged COVID-19 vaccination mandate-applicable to private employers with at least 100

employees-"was withdrawn and [the plaintiff s] claims stemmed from th[at] mandate"); *Bazzrea*

*v. Mayorkas*, __ F. Supp. 3d __, 2023 WL 3958912, at *4 (S.D. Tex. June 12, 2023) ("The mandate

recissions have eliminated the actual controversy-the court cannot provide effectual relief and thus

the plaintiffs' claims are moot.").

      To the extent Plaintiffs contend that their claims are not moot because they are actually

challenging the state statute that identifies the available exemptions, 22 M.R.S.A. § 802(4-A)

(Supp. 2023), the Amended Complaint only challenges the unavailability of a non-medical

exemption <u>to the COVID-19 vaccine</u>.  As this Court has recognized, section 802(4-A) and chapter

264 "operate in in tandem."  ECF No. 156 at 9.  Put another way, the Amended Complaint does

not seek any relief from State Defendants with respect to anything other than COVID-19, include

objections to any other vaccine, or allege any adverse consequences to them from anything other

than their refusal to be vaccinated against COVID-19.  *See* Amd. Compl. ¶¶ 1, 3, 5, 7-8, 10-16,

31-35, 40, 50-51, 55, 58, 64, 72-86, 95-104.  The link between (A) the conduct challenged in

Plaintiffs' Amended Complaint and their claims for relief and (B) the facts that gave rise to those

claims has been severed by the repeal of the COVID-19 vaccine requirement.

## II.    No exception to mootness applies.

      There are two relevant exceptions to the mootness doctrine that may protect an otherwise

moot claim from dismissal.  Specifically, a claim may not be moot if (1) a defendant, in an attempt

to avoid judicial review, voluntarily ceases the conduct at-issue (i.e., the "voluntary cessation"

exception) or (2) a claim is capable of repetition yet evades review because the nature of the challenged action occurs too quickly to be fully litigated (the "capable of repetition yet evading review" exception).  Neither exception applies here.

### A.    Voluntary cessation.

The first exception—the "voluntary cessation" exception—is intended to prevent a "manipulative litigant" from "immunizing itself from suit indefinitely, [by] altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *ACLU of Mass.*, 705 F.3d at 54-55. "Under [First C]ircuit precedent, the voluntary cessation exception can be triggered only when there is a reasonable expectation that the challenged conduct will be repeated following dismissal of the case." *Id.* at 56; *cf. City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 & n.11 (1982).  Moreover, consistent with the limited purpose of this exception, the First Circuit has made clear that "[t]he voluntary cessation doctrine <u>does not apply</u> when the voluntary cessation of the challenged activity <u>occurs because of reasons unrelated to the litigation</u>." *ACLU of Mass.*, 705 F.3d at 55 (emphasis added) (quoting M. Redish, *Moore's Fed. Practice,* § 101.99).  State Defendants have the burden to show that the voluntary cessation exception does <u>not</u> apply. *Calvary Chapel*, 52 F.4th at 47.

The evidence before the Court demonstrates that the State Defendants repealed the COVID-19 vaccination requirement based on changed circumstances of the COVID-19 pandemic, not on this litigation.  As demonstrated in the declaration of Nancy Beardsley, Deputy Director of the Maine CDC, the Department and Maine CDC began reviewing all of its policies in early 2023 in preparation for the end of the federal public health emergency and the state health emergency. Beardsley Decl. ¶ 8.  The end of the federal public health emergency and CMS's announcement that it would be ending its COVID-19 vaccination requirements triggered a review by the Department and Maine CDC of the available science and research on the then current risks of

COVID-19 in healthcare settings to ensure the State's rules and policies were consistent with that science and research. Beardsley Decl. ¶¶ 16-17. That review included the evidentiary underpinnings of Maine's COVID-19 vaccination requirement for healthcare workers. Beardsley Decl. ¶ 18. The review of that evidence, which included available clinical and epidemiological data about COVID-19, increased population immunity resulting from vaccination and prior infections, decreasing disease severity, improved treatments, and declining hospitalization and death rates, resulted in the repeal of the COVID-19 vaccination requirement for healthcare workers. Beardsley Decl. ¶¶ 19-36, 44-50.

This approach is consistent with Maine's evolving response to the COVID-19 pandemic over time. *See, e.g.*, *Calvary Chapel*, 52 F.4th at 48 (explaining changes in Maine's COVID-19 related gather restrictions premised upon "expert advice" on the "best available science"); *Bayley's Campground*, 985 F.3d at 157, 162 (noting changed circumstances accounted for the rescission of a self-quarantine executive order issued by Governor Mills); *Gray v. Mills*, No. 1:21-CV-00071-LEW, 2021 WL 5166157, at *5 (D. Me. Nov. 5, 2021) ("the evidence suggests that Defendants' abandonment of the challenged measures constituted a series of good-faith policy changes in response to an evolving public health crisis, rather than an attempt to evade litigation"). Here, the declining COVID-19-related hospitalization and death rates in the first half of 2023 and the increased population-level immunity to COVID-19 from vaccination or infection, among other factors, led to the repeal of the COVID vaccination requirement for healthcare workers. Beardsley Decl. ¶¶ 43-49.

Thus, circumstances wholly unrelated to this litigation led to the repeal of the regulation challenged by Plaintiffs, and the voluntary cessation exception to mootness does not apply. *Calvary Chapel*, 52 F.4th at 47; *Bos. Bit Labs*, 11 F.4th at 10; *cf. Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (voluntary cessation "can apply when a defendant

voluntar[ily] ceases the challenged practice <u>in order to moot</u> the plaintiff's case" (emphasis added) (quotation marks omitted)).  To the extent Plaintiffs try to claim otherwise based on the decision from the First Circuit in May 2023, State Defendants also have shown that there is no "<u>reasonable</u> expectation that the challenged conduct will be <u>repeated</u> following dismissal of the case." *ACLU of Mass.*, 705 F.3d at 56 (emphasis added).

State Defendants stopped enforcement of the COVID-19 vaccination requirement nearly two months ago, formally repealed the requirement, and has not sought to reinstate it.  Beardsley Decl. ¶¶ 38-41.  Neither the Department nor Maine CDC have any plans to include COVID-19 again among the diseases against which DHCFs must ensure their employees are vaccinated against in the Rule, Beardsley Decl. ¶ 41, and it is highly unlikely that the Department will seek to impose COVID-19 vaccination requirements on DHCFs in the future, Beardsley Decl. ¶ 51. Any suggestion to the contrary by the Plaintiffs rests solely on speculation.  *See Bos. Bit Labs*, 11 F.4th at 11.

That the Department and Maine CDC still have statutory authority to amend the Rule in the future does not affect the analysis.  As the First Circuit explained in *Boston Bit Labs*: "That the [government] has the power to issue [regulations cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot."  *Bos. Bit Labs*, 11 F.4th at 10.  "[T]he mere power to [reinstitute] a challenged law is not a sufficient basis on which a court can conclude that a challenge remains live."[5]  *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 661 (D.C. Cir. 2019) (quotation marks omitted) (cited in *Bos. Bit Labs*, 11 F.4th at 11).  It is

---

[5]  Further, State Defendants do not have to concede any unlawful conduct in order for a case to be moot after the end of that challenged conduct.  *Cf. Alvarez v. Smith*, 558 U.S. 87, 93 (2009) ("The parties, of course, continue to dispute the lawfulness of the State's hearing procedures.  But that dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights . . . [a]nd a dispute solely about the meaning of a law, abstracted from any concrete actual or threatened harm, falls outside the scope of the constitutional words 'Cases' and 'Controversies.'").

therefore "absolutely clear" that "the allegedly wrongful behavior can not reasonably be expected to recur." *Bayley's Campground*, 985 F.3d at 157-58 (quotation marks omitted).

### B. Capable of repetition yet evading review.

The second exception to mootness—the "capable of repetition yet evading review" exception—is "limited to the situation" where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a <u>reasonable</u> expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (emphasis added); *see also Gulf of Me. Fishermen's Alliance v. Daley*, 292 F.3d 84, 89 (1st Cir. 2002). Therefore, for this exception to apply, there must be a reasonable expectation or demonstrated probability that Plaintiffs will be subject to same action in the future. *See ACLU of Mass.*, 705 F.3d at 57. The Supreme Court has cautioned that this exception applies only in "exceptional situations." *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Plaintiffs bear the burden of making a "reasonable showing" that it will again be subject to the challenged restrictions. *Id.*

First, the requirement challenged by Plaintiffs was in effect for nearly two years. A law or regulation in place for that length of time is not so short as to foreclose complete judicial review prior to its cessation or expiration.

Second, and regardless, Plaintiffs cannot show that they will be subject to a state-imposed COVID-19 vaccination requirement on healthcare workers in the future. As shown above, Nancy Beardsley, Deputy Director of the Maine CDC, has explained under oath that because of the changed circumstances of the COVID-19 pandemic, "it is highly unlikely that the Department will seek to impose COVID-19 vaccination requirements on DHCFs in the future." Beardsley Decl. ¶ 51. Because there is no reasonable expectation or demonstrated probability that Plaintiffs will

be subject to the same action in the future, this exception does not and cannot apply. *See ACLU of Mass.*, 705 F.3d at 57; *accord Bayley's Campground*, 985 F.3d at 157-58.

## CONCLUSION

No Plaintiff presently requires judicial relief from the Rule's prior COVID-19 vaccination requirement, and this case is moot. No exception to mootness applies, and so the Court no longer has jurisdiction over the remaining claims against State Defendants. For the reasons set forth above, State Defendants request that the remaining claims against them in Plaintiffs' Amended Complaint be dismissed as moot.

DATED: September 8, 2023   Respectfully submitted,

AARON M. FREY
Attorney General

THOMAS A. KNOWLTON
Deputy Attorney General
Chief, Litigation Division
thomas.a.knowlton@maine.gov

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
kimberly.patwardhan@maine.gov

Office of the Attorney General
6 State House Station
Augusta ME 04333-0006
Tel. (207) 626-8800
Fax (207) 287-3145

Attorneys for State Defendants

## CERTIFICATE OF SERVICE

      I hereby certify that on September 8, 2023, I electronically filed this document and its attachments with the Clerk of the Court using the CM/ECF system and that the same will be sent electronically to registered participants as identified in the CM/ECF electronic filing system for this matter.

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta ME 04333-0006
Tel. (207) 626-8570
Fax (207) 287-3145
kimberly.patwardhan@maine.gov

Attorney for State Defendants

# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

|  |  |
|---|---|
| ALICIA LOWE, JENNIFER BARBALIAS, DEBRA CHALMERS, NICOLE GIROUX, NATALIE SALAVARIA, ADAM JONES, and GARTH BERENYI, <br><br>      Plaintiffs, <br><br> v. <br><br> JANET T. MILLS, Governor of the State of Maine, JEANNE M. LAMBREW, Commissioner of the Maine Department of Health and Human Services, PUTHIERY VA, Director of the Maine Center for Disease Control and Prevention, MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE, LLC, NORTHERN LIGHT FOUNDATION, and MAINEGENERAL HEALTH, <br><br>      Defendants. | Civil Action No. 1:21-cv-00242-JDL |

## DECLARATION OF NANCY BEARDSLEY

I, Nancy Beardsley, hereby declare as follows:

1.     I am Nancy Beardsley, and I am currently the Deputy Director of the Maine Center for Disease Control and Prevention (Maine CDC), an office within the Maine Department of Health and Human Services (Department). I have held this title at Maine CDC since May 2020. I have been employed at Maine CDC since 2000. Since March 2020, I have been involved in many aspects of the Department and Maine CDC's COVID-19 response.

2.     The following declaration is based upon my personal knowledge and information and documents that are available to me.

1

**Appendix - 123**

3.  Effective July 1, 2021, the Department declared a health emergency under state law based on the COVID-19 pandemic. The health emergency declared by the Department was to remain in effect through the duration of the COVID-19 public health emergency declared by the federal government.

4.  On November 5, 2021, the United States Centers for Medicare and Medicaid Services (CMS) published an Interim Final Rule with Comment Period (IFC or "CMS Rule") entitled "Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination." 86 Fed. Reg. 61,555 (proposed Nov. 5, 2021) (codified at 42 C.F.R. pts. 416, 418, 441, 460, 482-86, 491 & 494).

5.  The CMS Rule applied to many DHCFs, including hospitals and long-term care facilities, and required that those entities ensure that a broad swath of personnel within those facilities be vaccinated against COVID-19. *See, e.g.*, 42 C.F.R. §§ 482.42(g), 483.80(i) (2022) (mandating hospitals and long-term care facilities ensure staff, including employees, licensed practitioners, volunteers, and students, are vaccinated against COVID-19).

6.  The CMS Rule also preempted any inconsistent state and local laws, including the scope of any applicable COVID-19 vaccine exemption. 86 Fed. Reg. at 61,613 ("[T]his IFC preempts the applicability of any State or local law providing for exemptions [to COVID-19 vaccination requirements] to the extent such law provides broader grounds for exemptions than provided for by Federal law and are inconsistent with this IFC.").

7.  On January 30, 2023, the Biden Administration announced its intent to extend the COVID-19 public health emergency until May 11, 2023, and then end the emergency on that date.

8.  Beginning in early 2023, the Department, including offices and divisions within the Department, began planning for the end of the Department-declared health emergency.

2

This included identifying program and services that would be ending or transitioning back to pre-COVID standards as a result of the termination of the health emergency and working to ensure a smooth transition to those standards.

9.     On May 1, 2023, in light of the impending end of the public health emergency on May 11, 2023, CMS announced it would soon end the requirement that covered providers establish policies requiring staff vaccination against COVID-19.

10.     On May 11, 2023, the federal public health emergency for COVID-19 ended.

11.     On May 11, 2023, the health emergency declared under state law also ended.

12.     On June 5, 2023, CMS withdrew the COVID-19 health care staff vaccination requirements issued in the CMS Rule.

13.     At the same time, CMS kept in place regulations that require health care facilities to document that they have offered vaccination against COVID-19 to all healthcare workers, explained the benefits of vaccination, and kept records for any healthcare workers who have declined vaccination against COVID-19.

14.     While the CMS rule was in effect, the Division of Licensing and Certification (Maine DLC) within the Department was the regulatory authority responsible for ensuring covered facilities were complying with the CMS rule. Maine DLC is the CMS-designated state agency for CMS survey and certification oversight in Maine. Maine DLC evaluated heath care facilities and health care agencies' compliance with the CMS Rule at every federal complaint and recertification survey conducted during the PHE consistent with CMS-issued requirements and guidance. Maine DLC was also responsible for investigating DHCFs' compliance with the Maine rule.

15. Since November of 2021, the Department and Maine CDC have continued to monitor COVID-19 variants, treatments, testing capacity, and available vaccines, along with vaccination rates, cases, outbreaks, hospitalizations, and deaths across the State.

16. Around the end of May 2023 and beginning of June 2023, the Department and Maine CDC reviewed the available science and research on the then current risks of COVID-19 in healthcare settings to ensure the State's rules and policies were consistent with that science and research.

17. This review was triggered by the end of the federal public health emergency, the announcement that CMS would be rescinding its COVID-19 vaccine requirement, and changed circumstances regarding COVID-19 variants, vaccinations rates, and disease prevalence.

18. That work included reviewing the evidence base for the rule requiring COVID-19 vaccination for health care workers.

19. The variants of SARS-CoV-2 that currently are circulating in the United States, including Maine, are all lineages of what is commonly referred to as the Omicron variant.

20. Omicron has been the predominant variant in the United States since December of 2021.

21. Omicron variants spread more quickly than the Delta variants, but the Omicron variants of SARS-CoV-2 cause fewer deaths and hospitalizations per year on a population level than the Delta variants and variants circulating in the United States in 2020.

22. Several antiviral treatments for COVID-19 are now available.

   a. Remdesivir. Remdesivir is an intravenous medication that has been authorized or approved for use against COVID-19 since October 20, 2020. Remdesivir is used to treat hospitalized patients with COVID-19. Since late 2022, it has also been used

for patients who are not hospitalized but are at high risk for being hospitalized. In practice, however, outpatient administration is rarely available because it can only be administered through intravenous transfusion and must be given once a day for three days.

b. Paxlovid (nirmatrelvir/ritonavir). Paxlovid is a prescription oral treatment consisting of two separate medications: nirmatrelvir and ritonavir. Paxlovid has been authorized or approved for use against COVID-19 since December 2021. The three Paxlovid pills are taken twice daily for five days (for a total of 30 pills). The cost of the medication currently is covered by the federal government. Paxlovid should be taken starting within 5 days of the onset of COVID-19 symptoms. Paxlovid is extremely effective at preventing both hospitalizations and death in vaccinated and unvaccinated patients.

c. Lagrevio (molnupiravir). Lagrevio is a prescription oral treatment that blocks the ability of the SARS-CoV-2 virus to replicate itself. One capsule of molnupiravir is taken twice daily for five days. Lagrevio has been authorized for use against COVID-19 since December 2022. Lagrevio should be taken starting within 5 days of the onset of COVID-19 symptoms. Lagrevio is less effective at preventing severe disease and death than Paxlovid, but it has very few drug interactions. It is primarily prescribed to patients who cannot take Paxlovid.

23. For patients who are admitted to the hospital due to moderate or severe COVID-19 disease, several medications and therapies, including supplemental oxygen or other respiratory support measures, are commonly used, alone or in combination, to treat COVID-19 and reduce the risk of death. These treatments include remdesivir (an intravenous antiviral

medication), dexamethasone (an intravenous steroid medication), baricitinib or tocilizumab (monoclonal antibody medications, one oral and one intravenous, respectively). Patients may also receive heparin (an intravenous anticoagulant medication), as well as other medications to treat effects of COVID-19 or secondary infections.

24. Since November of 2021, COVID-19 antigen tests have become widely available.

    a.    The United States and Maine experienced shortages of rapid antigen tests in the fall of 2021 as the Delta variant took hold.

    b.    During 2022 and 2023, however, the federal government made free COVID-19 rapid tests available to all Americans through several mechanisms. Individuals could order packages of tests directly from the federal government (delivered by the United States Postal Service). Maine obtained large numbers of COVID-19 rapid tests and made these available via mail in a manner similar to that of the tests from federal government. In 2022, the federal government began requiring insurance companies and group health plans to cover the cost of over-the-counter, at-home COVID-19 tests. These programs ended by May 2023.

    c.    US CDC continues to support no-cost testing for people with symptoms related to COVID-19 or who were exposed to someone with COVID-19.

25. In November of 2021, there were three COVID-19 vaccines generally available to the public:

    a.    On December 11, 2020, the Food and Drug Administration (FDA) issued an Emergency Use Authorization (EUA) for the use of the Pfizer-BioNTech COVID-19 Vaccine ("Pfizer vaccine"). The Pfizer vaccine EUA authorized the

**Appendix - 128**

administration of two doses of the Pfizer vaccine, spaced three weeks apart. On August 23, 2021, the FDA gave full approval to the Pfizer vaccine for individuals 16 and older.

b.     On December 18, 2020, the FDA issued an EUA for the use of the Moderna COVID-19 Vaccine ("Moderna vaccine"). The Moderna vaccine EUA authorized the administration of two doses of the Moderna vaccine, spaced four weeks apart.

c.     On February 27, 2021, the FDA issued an EUA for the use of the Janssen COVID-19 Vaccine ("J&J vaccine"). The J&J vaccine EUA authorized administration of a single dose of the J&J vaccine to persons 18 and older.

26.     The Pfizer, Moderna, and J&J vaccines were all monovalent vaccines and designed to counteract the variants of SARS-CoV-2 that were circulating in 2020.

27.     There have been significant developments in available vaccines, the recommended number of dosages, and populations served.

a.     On September 22, 2021, the FDA authorized booster doses of the Pfizer vaccine for certain populations, including adults with occupational exposure to SARS-CoV-2.

b.     On October 22, 2021, the FDA amended the EUAs of all COVID-19 vaccines to allow for booster doses and mix and match doses.

c.     On October 29, 2021, the FDA expanded the Pfizer vaccine EUA to children ages 5 to 11 years.

d.     On November 29, 2021, the FDA recommended that all persons 18 and older get a COVID-19 booster, and, on December 19, 2021, the FDA recommended that persons aged 16 and 17 years get a Pfizer vaccine booster.

    e.    On January 31, 2022, the FDA approved the Moderna vaccine for individuals 18 and older.

    f.    On June 17, 2022, the FDA amended the EUA of the Moderna vaccine to allow for use of the vaccine in individuals aged 6 months through 17 years and the EUA of the Pfizer vaccine to allow for use of the vaccine in individuals aged 6 months through 4 years.

    g.    On August 5, 2022, the FDA issued an EUA for the use of the Novavax COVID-19 vaccine ("Novavax vaccine"). The Novavax vaccine EUA authorized administration of two doses of the Novavax vaccine, spaced three weeks apart, for persons aged 18 and older.

28.    In August 2022, the FDA amended the Pfizer and Moderna COVID-19 EUAs to allow for bivalent formulations of those vaccines. The bivalent vaccines were designed to protect against a wider range of COVID-19 variants by incorporating antigen patterns from the early variants of SARS-CoV-2 and the BA.4/BA.5 Omicron variant. On August 31, 2022, the FDA amended the EUAs for the Moderna and Pfizer vaccines to authorize bivalent formulations for use as a single booster dose at least two months following primary or booster vaccination. The bivalent formulations of these vaccines targeted the variants of SARS-CoV-2 that circulated early in the pandemic and also the Omicron variant.

29.    Since April 28, 2023, the only vaccines authorized to be administered are bivalent vaccines, unless the unvaccinated person is unable or unwilling to receive an mRNA vaccine. That unvaccinated person may be vaccinated with a 2-dose Novavax primary series.

30.    US CDC now recommends that all Americans age 6 months and older get vaccinated with the updated (bivalent) COVID-19 vaccine, regardless of whether they received any doses

of monovalent vaccines or had a previous or recent COVID-19 infection. A second dose of the bivalent COVID-19 vaccine is available for certain populations, including persons 65 years or older, and additional doses may be given more frequently for persons who are immunocompromised.

31. At the same time, the rate of vaccination in the State of Maine has climbed over time. According to date from US CDC, as of July 31, 2023, 91.9% of adults in Maine had completed a primary series of COVID-19 vaccinations and 31.2% had received at least one additional dose of a bivalent vaccine.

32. For the monthly reporting period ending October 31, 2021, the rate of COVID-19 vaccines among healthcare workers in Maine as reported to Maine CDC was as follows:

    a.     Ambulatory Surgical Centers: 92.6%

    b.     Assisted Housing Facilities: 96.8%

    c.     Hospitals: 98.1%

    d.     Intermediate Care Facilities for Individuals with Intellectual Disabilities: 95.6%

    e.     Nursing Homes: 96.8%

33. According to data from US CDC, between May 28, 2023, and June 30, 2023, 93.3% of essential healthcare workers in Maine have completed the primary series of COVID-19 vaccinations, 99.8% had received at least one dose of a COVID-19 vaccine, and 36.4% had received a dose of the updated bivalent COVID-19 vaccine.[1]

34. The number of COVID-19 hospitalizations in Maine has declined significantly over the past 20 months. Attached hereto as Exhibit 1 is a graphical representation of data collected by Maine CDC on the number of hospitalized COVID-19 patients, COVID-19 patients in

---

[1] https://www.cdc.gov/vaccines/imz-managers/coverage/covidvaxview/interactive/adults.html

critical care, and COVID-19 patients on ventilators in the State of Maine between January 1, 2022, and August 31, 2023.

35. The number of COVID-19 deaths in Maine likewise has declined over the past 20 months. Attached hereto as Exhibit 2 is a graphical representation of data collected by Maine CDC on the number of Mainers who have died of COVID-19 in the State of Maine between January 1, 2022, and August 31, 2023.

36. As a result of the Department's consideration of the available information, the Department concluded that it would no longer be necessary to require that DHCFs ensure their employees are vaccinated against COVID-19.

37. Vaccination against COVID-19 remains an important tool to protect public health, but the Rule's COVID-19 vaccination requirement is no longer necessary to protect individual patients; protect individual workers; protect the State's healthcare infrastructure, including the workforce; and reduce the likelihood of facility outbreaks of COVID-19.

38. On July 11, 2023, the Department announced that it was proposing to end the requirement that DHCFs require their employees to be vaccinated against COVID-19. The Department also announced it would not be enforcing that requirement effective July 12, 2023, and during the pendency of the rulemaking.

39. On July 19, 2023, notice of the proposed amendment to the rule was published by the Maine Secretary of State. An in person public hearing on the proposed rule amendment occurred on August 7, 2023, and written comment on the proposed rule amendment were accepted until August 17, 2023. No changes to the proposed amendment were made as a result of the public comments.

40.   On August 31, 2023, the Department filed the finalized rule amendment with the Maine Secretary of State, and the repeal of the COVID-19 vaccination requirement was effective September 5, 2023.

41.   The Department has no plans to include COVID-19 again among the diseases against which DHCFs must ensure their employees are vaccinated against in the healthcare worker vaccination rule.

42.   This is in part due to the reduction in the number of outbreaks of COVID-19 that Maine CDC has tracked in healthcare facilities.  The number of outbreaks and resulting cases and deaths has decreased in the last 20 months.

   a.   In 2022, Maine CDC tracked 341 outbreaks of COVID-19 in nursing homes, resulting in 5,176 resident cases, 3,168 staff cases, and 106 deaths of or from COVID-19.

   b.   To date in 2023, Maine CDC has tracked just 101 outbreaks in nursing homes, resulting in 2582 resident cases, 1253 staff cases, and 35 deaths of or from COVID-19.

   c.   In 2022, Maine CDC tracked 37 outbreaks of COVID-19 in hospitals, resulting in 395 patient cases, 446 staff cases, and 6 deaths of or from COVID-19.

   d.   To date in 2023, Maine CDC has tracked 16 outbreaks of COVID-19 in hospitals, resulting in 161 patient cases, 130 staff cases, and 1 death of or from COVID-19.

43.   Moreover, the variants of COVID-19 currently circulating in the United States generally cause less severe illness and fewer deaths than earlier strains of COVID-19.  Generally accepted indicators of disease severity are the numbers of hospitalizations and deaths caused by that disease.  Case numbers are increasingly unreliable as an overall measure of

the number of COVID-19 infections because of multiple shifts in where people with COVID-19 symptoms are tested and many test results do not get reported to public health authorities. Accordingly, the number of hospitalizations and deaths from COVID-19 have more weight than raw case numbers in public health decisions regarding COVID-19.

44. As shown in the graphs attached, the number of COVID-19 hospitalizations and deaths in Maine from COVID-19 have declined significantly over the last 20 months.

45. In March of 2023, the average number of hospitalized COVID-19 patients per day in Maine was 156. In April of 2023, the average number of hospitalized COVID-19 patients per day in Maine was 88. In May of 2023, the average number of hospitalized COVID-19 patients per day in Maine was 58. In June of 2023, the average number of hospitalized COVID-19 patients per day in Maine was 37. In July of 2023, the average number of hospitalized COVID-19 patients per day was 31. In August of 2023, the average number of hospitalized COVID-19 patients per day was 44.

46. These figures reflect an overall decrease from the same six-month period last year. In March of 2022, the average number of hospitalized COVID-19 patients per day in Maine was 117. In April of 2022, the average number of hospitalized COVID-19 patients per day in Maine was 106. In May of 2022, the average number of hospitalized COVID-19 patients per day in Maine was 195. In June of 2022, the average number of hospitalized COVID-19 patients per day in Maine was 137. In July of 2022, the average number of hospitalized COVID-19 patients per day in Maine was 125. In August of 2022, the average number of hospitalized COVID-19 patients per day was 144.

47. In March of 2023, there were a total of 58 COVID-19 deaths in Maine. In April of 2023, there were a total of 31 COVID-19 deaths in Maine. In May of 2023, there were a total of

18 COVID-19 deaths in Maine.  In June of 2023, there were a total of 10 COVID-19 deaths in Maine.  In July of 2023, 3 Mainers died of COVID-19.  In August of 2023, there were a total of 8 COVID-19 deaths in Maine.  Thus far in 2023, a total of 251 Mainers have died from COVID-19.

48.     These figures reflect a decrease from the same six-month period last year.  In March of 2022, there were a total of 81 COVID-19 deaths in Maine.  In April of 2022, there were a total of 47 COVID-19 deaths in Maine.  In May of 2022, there were a total of 79 COVID-19 deaths in Maine.  In June of 2022, there were a total of 57 COVID-19 deaths in Maine.  In July of 2022, 33 Mainers had died of COVID-19.  In August of 2022, 62 Mainers died of COVID-19.  In 2022, at least 1,109 Mainer died from COVID-19.

49.     Moreover, available US CDC data indicates that approximately 96% of the population of the United States now has some immunity against COVID-19 from vaccination, prior COVID-19 infection, or both.

50.     The availability of new treatments for COVID-19, such as Paxlovid and Lagevrio, have also contributed to declining COVID-19 hospitalization and death rates from 2022 and into 2023.

51.     In sum, based on the available clinical and epidemiological data about COVID-19, increased population immunity resulting from vaccination and prior infections, decreasing disease severity, improved treatments, and declining hospitalization and death rates, it is highly unlikely that the Department will seek to impose COVID-19 vaccination requirements on DHCFs in the future.

52.     The Department and Maine CDC will continue to encourage voluntary vaccination of health care workers and residents.  In the fall of 2021, the Department partnered with the

Maine Long-Term Care Ombudsman Program to launch the Power of Care campaign to educate staff about the benefits of vaccination.  The Department will invest an additional $250,000 to extend a campaign to educate long-term care staff about the benefits of vaccination through April 2024 and broaden its reach to include long-term care residents.  Additionally, the Department and Maine CDC will work with Maine hospitals on their efforts to educate and vaccinate their workers.

I DECLARE, PURSUANT TO 28 U.S.C. § 1746, UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated:  September 8, 2023                    */s/ Nancy Beardsley*
                                             Nancy Beardsley, Deputy Director
                                             Maine Center for Disease Control and Prevention
                                             Maine Department of Health & Human Services

Case: 24-1283   Document: 00118178715   Page: 139   Date Filed: 08/15/2024   Entry ID: 6661491

# Daily COVID-19 Hospitalization Snapshots

**Updated daily at 10am**

Hospitalizations, patients in critical care, and patients on ventilators. These metrics come from daily reports submitted to Maine CDC from hospitals across the state. Gaps reflect days without updates from hospitals.

**Select Date Range**

1/1/2022 ——————————————————————————○———————————————— 9/8/2023

Hospitalized COVID-19 Patients



COVID-19 Patients in Critical Care



COVID-19 Patients on Ventilators



Case: 24-1283   Document: 00118178715   Page: 140   Date Filed: 08/15/2024   Entry ID: 6661491

## New daily COVID-19 deaths

Deaths are counted according to the date of death. On January 2, 2022, Maine CDC changed its definition of COVID-associated deaths to match new standards set by the Council of State and Territorial Epidemiologists (CSTE) and US CDC. Maine CDC will apply this new definition for all COVID-associated deaths occurring on and after January 2, 2022. Under the new definition, a COVID-associated death is defined as a death in which: COVID-19 was determined to be the cause of death or contributed to the death OR a death in which COVID-19 was included on the death certificate OR a death due to natural causes that has occurred within 30 days of specimen collection or symptom onset.

Data as of: September 4, 2023 12:00 am
Dashboard updated: 9/5/2023

Select Date Range



January 1, 2022                                                         September 4, 2023

Date Range: January 1, 2022 to September 4, 2023



**EXHIBIT 2**

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

_____

ALICIA LOWE, et al.,                    CIVIL ACTION
                                        Docket No:  1:21-cv-00242-JDL
          Plaintiffs,

          -versus-

JANET T. MILLS, in her official
capacity as Governor of the
State of Maine, et al.

          Defendants.
_____

Transcript of Proceedings

Pursuant to notice, the above-entitled matter came on for **Oral Argument on Motion No. 188 (Motion to Dismiss),** held before **THE HONORABLE JON D. LEVY,** United States District Court Judge, in the United States District Court, Edward T. Gignoux Courthouse, 156 Federal Street, Portland, Maine, on the 4th day of December, 2023, at 2:04 p.m. as follows:

Appearances:

For the Plaintiffs:  Daniel Schmid, Esquire

For the Defendants:  Kimberly Patwardhan, Esquire
                     Assistant Attorney General

                     Thomas Knowlton, Esquire
                     Assistant Attorney General

                     James Erwin, Esquire

              Michelle R. Feliccitti, RPR
                 Official Court Reporter

         (Prepared from manual stenography and
            computer-aided transcription.)

Case: 23-2833  Document: 11  Page: 2  Filed: 01/04/24    Case 1:21-cv-00242-JDL  Document 122  Filed 01/04/24  Page 3 of 54  PageID #: 1986

2

 1                    (In open court.)

 2          THE COURT:  Good afternoon.  We are gathering in the

 3    case of Lowe, et al., versus Mills, et al.  Docket 21-cv-242.

 4        Counsel, please note your appearances for the record.

 5          MR. SCHMID:  Daniel Schmid, Your Honor.  Good

 6    afternoon.  It's good to see you in person.

 7          THE COURT:  Good afternoon.  Good to see you in person

 8    as well.

 9          MR. SCHMID:  Good afternoon, Your Honor.  Kimberly

10    Patwardhan for the State defendant.  And with me at counsel's

11    table is Thomas Knowlton.

12          THE COURT:  Good afternoon.  Thank you.

13        Attorney Erwin.

14          MR. ERWIN:  Yes.  James Erwin for the provider

15    defendants in this case.  Strictly to be responsive to the

16    Rule 54(b) motion.

17          THE COURT:  And I'd like to take that up first.  So

18    why don't you remain standing.

19        I've got your supplement to the motion.  Actually, I think

20    it might have been submitted by Attorney Dumais.  Do you have

21    anything further -- actually your name is on it as well.  Do

22    you want add anything to that?

23          MR. ERWIN:  Do I --

24          THE COURT:  Do you want to add anything on that point?

25          MR. ERWIN:  The only thing I would add, Your Honor, is

1    in thinking about this, I just went back and looked at the text

2    of Rule 54(b).

3              THE COURT:  Mm-hmm.

4              MR. ERWIN:  And it raises an additional concern from

5    our perspective.  We just want to be able to go away and not

6    have our clients have to expend resources monitoring the future

7    course of this litigation if the claims involving our clients

8    are, in fact, adjudicated.

9              And as I look at 54(b), the second sentence says, Any

10   order or other decision however designated that adjudicates

11   fewer than all the claims or rights and liabilities of fewer

12   than all the parties does not end the action as to any of the

13   claims, and parties and may be revised at any time before the

14   entry of judgment.

15        So as far as we're -- we're concerned, unless there's

16   something else that accomplishes what that would accomplish if

17   a 54(b) order were entered, we're concerned that -- who knows

18   what the future will hold in this case, but there's at least

19   the theoretical possibility that the -- the judgment as to

20   our -- in favor of our clients remains subject to potential

21   revision as long as the claims remain pending against the other

22   defendants.

23        And so we simply want a definitive out of the case.

24   That's what we're seeking.

25              THE COURT:  All right.  Thank you.

 1          Attorney Schmid, why is it that you're still resisting

 2     this?

 3          MR. SCHMID:  I don't know that I would be classified

 4     as resisting, Your Honor, so much as I think it's -- it's

 5     redundant at this point.  Your Honor dismissed the claims

 6     against the provider defendants.  We appealed that matter.  It

 7     was affirmed on appeal and then sought tursurory, which was

 8     denied.  From the plaintiffs' perspective, it's over.  They --

 9          THE COURT:  Well, this is -- this is the trial court.

10     And it seems to me that, in the end, no -- no action really

11     ends here without a final judgment.  And that's -- that's what

12     closes the book, so to speak.

13          Why aren't -- why aren't Mr. Erwin's clients entitled to

14     that at this point?

15          MR. SCHMID:  Well, I think it's already occurred is --

16     is plaintiffs' perspective, Your Honor.  I don't want to

17     consent to entry of a final judgment on behalf of my clients,

18     especially when it's already occurred.  I just don't know what

19     there would left to appeal as to -- it's almost claim

20     preclusion.  Like, it's been determined.

21          THE COURT:  They don't -- they don't have a docket

22     entry, I guess, is what I'm trying to get at.  Usually we tie

23     these things up with a docket entry of the -- of the trial

24     court, like granting final judgment.  That's become the

25     official record of the case.  I understand what you're saying.

**Appendix - 142**

```
 1   In effect, it's already occurred; but it hasn't occurred
 2   literally, has it?
 3         MR. SCHMID:  Well, I think it has.  I mean, I think
 4   the litigation as to the provider defendants, they've been
 5   dismissed.  They're gone.  The appeals have been taken.  All --
 6   all avenues for plaintiffs to pursue review of any claims
 7   against the provider defendants have come and gone.  So our
 8   perspective is it's just already occurred.
 9         THE COURT:  Is there some harm to your clients if I
10   direct the clerk's office to enter a final judgment?
11         MR. SCHMID:  I don't know that there's harm, per se,
12   because of the reasons I've already articulated.  I just --
13   from our perspective, it's just we're done.  It's already
14   occurred.
15         Even -- even after -- say this case goes to discovery
16   and trial on the merits and all of the rest of it, even at that
17   point if there was to be an appeal, from the plaintiffs
18   perspective there would be nothing left to appeal on the
19   provider defendants.  The First Circuit would say, we already
20   dismissed it.  It's done.  There was a -- there was a judgment.
21   There was a mandate.  They're -- they're out.  The Supreme
22   Court denies your review.  There's nothing left for us to
23   accomplish.
24       So even under a merger doctrine type rule that says all
25   orders merge with the final judgment, and if they were
```

**Appendix - 143**

```
 1    interlocutory they would merge into the final judgment and you
 2    could appeal them, they -- it would be over already at that
 3    point to begin with.  We couldn't rebrief the dismissal on the
 4    provider defendant.  And that's plaintiffs' perspective.
 5         THE COURT:  Thank you.  I'm going to take another look
 6    at the rules as it pertains to final judgment.  So I'm inclined
 7    to grant the request; but I'll act on that after -- after
 8    today's hearing.
 9       So let's turn to the matter that is before me.  The State
10    defendants' motion to dismiss the remaining claims is moot.  I
11    would note just for purposes of the record that in this case,
12    as the -- as the State provide -- as the State defendants,
13    rather, have asserted and it's not disputed by the plaintiffs,
14    it -- on May 11th both the federal public health emergency and
15    the state health emergency declarations related to COVID-19 --
16    the COVID-19 pandemic ended.  And it is also not disputed
17    between the parties, two weeks later the First Circuit Court of
18    Appeals issued its decision affirming, in part, and denying --
19    and vacating, in part, my decision which had ordered the
20    dismissal of the complaint, which, of course, leads us back
21    here today.
22         The motion to dismiss is based on mootness.  That was
23    filed in September.  So I want to turn to the various arguments
24    that are before me.  In -- in their response to the motions,
25    the plaintiffs argue that although the challenged rule has been
```

```
 1    repealed, the underlying statute Title 22, Section 8024(b) is
 2    not.  And the plaintiffs argue that it was a statute which
 3    authorized the deprivation of their constitutional rights.
 4         So Attorney Patwardhan or Knowlton, does the complaint
 5    state a claim against the continued existence and operation of
 6    the statute which precludes a finding of mootness?
 7              MS. PATWARDHAN:  No, Your Honor.  I think -- I think I
 8    understand the syntax there.  So the -- the -- the statute
 9    obviously has not been repealed or amended; but that also
10    doesn't preclude mootness.  The statute defines the available
11    exemptions for vaccination requirements for healthcare workers.
12    But the statute, itself, doesn't require any person to be
13    vaccinated.  Put another way, the statute is not
14    self-executing.
15              The diseases it applies to must be identified in rules
16    that are adopted by the Maine CDC.  That's how the rule and the
17    statute work in tandem.
18              So while plaintiffs might want to change the statute
19    on its own, they have to show how the statute is causing them
20    injury.  And it simply isn't now that the COVID-19 vaccine
21    requirement has been repealed.  The plaintiffs' amended
22    complaint speaks only to COVID-19, their objection to the
23    COVID-19 vaccination, their requests for an exemption from that
24    requirement from their former employers with respect to
25    COVID-19.  And they haven't presented any other evidence to the
```

```
 1   Court about an injury that they are presently experiencing now

 2   that the COVID-19 vaccination requirement has been repealed.

 3          THE COURT:  So the complaints -- to the extent that

 4   the complaint challenges the constitutionality of the statute,

 5   it's only in relation to the regulation, which is no longer in

 6   effect; therefore, you -- you argue mootness.  I understand

 7   that.

 8          MS. PATWARDHAN:  Mm-hmm.

 9          THE COURT:  If I construe the complaint as broadly as

10   perhaps the plaintiffs would like me to and say, Well, there's

11   enough there to put into play the constitutionality of the

12   statute, itself, would it then be necessary for me to judge --

13   and permit the case to go forward, would it be necessary for me

14   to then judge the constitutionality of the statute in relation

15   to every regulation that's currently in effect requiring

16   vaccines in Maine?  In other words, would this case go from

17   being a COVID-19 vaccination case to a case addressing the

18   constitutionality of the statute as it is applied to every

19   vaccine that's currently required by Maine law?

20          MS. PATWARDHAN:  I mean, I don't think their complaint

21   can be construed that broadly, Your Honor.  There is nothing

22   about -- in the complaint that identifies any information with

23   respect to any disease other than COVID-19 or what their

24   objections to any other vaccination requests or any other

25   vaccination requirement is except for COVID-19.  In fact,
```

**Appendix - 146**

```
 1    throughout the plaintiffs complaint, what they challenge is
 2    the Governor's COVID-19 vaccine mandate.  You will find that
 3    every -- three dozen times throughout their amended complaint.
 4    This is a very specific complaint that is challenging the
 5    COVID-19 vaccination requirement.
 6         They've had multiple opportunities to amend their
 7    complaint in order to add objections to other vaccination
 8    requirements.  Of course, if they were to do so, they would
 9    also have to demonstrate why -- why those particular plaintiffs
10    need a religious exemption to those vaccination requirements.
11    There's no information in the complaint that the Court can rely
12    on with respect to any other disease other than COVID-19.
13    Because it goes -- should go without saying, Your Honor, you
14    don't need a religious exemption for a disease against which
15    you have already been vaccinated.
16              THE COURT:  Thank you.
17              MS. PATWARDHAN:  So I disagree that the complaint can
18    be read that broadly.
19              THE COURT:  And just remind me, please, how many --
20    how many vaccines are currently mandated pursuant to this -- to
21    the statute?
22              MS. PATWARDHAN:  Measles, mumps, rubella, varicella,
23    hepatitis B, and influenza.  Although, I will note that the
24    hepatitis B requirement is a federal requirement.  And so there
25    are slightly different exemptions that apply in that context.
```

**Appendix - 147**

1   So for the ones that are solely required by State law, it is

2   influenza, varicella, rubella, mumps, and measles.

3           THE COURT:  Thank you.  Attorney Schmid, why don't you

4   respond, please.  And in -- I mean, there's a question that the

5   complaint here implicates the statute, but there's also a

6   question that your -- you've been targeting -- you targeted

7   COVID-19 vaccination requirement, itself, in your pleadings.

8   And it is the subject of this case after all; nothing else so

9   far.

10      It seems to me you're asking for a reading of the

11  complaint that just isn't supported by what's alleged.  That

12  is, that you are now -- this case you have viewed as one that

13  just goes after this statute.  If we only consider -- if we

14  consider the statute, we're going to have to look at every

15  vaccine, aren't we.

16          MR. SCHMID:  Well, I think they operate -- as Your

17  Honor has said, they operate in tandem.  And of course the

18  COVID-19 vaccination requirement was what crystalized their

19  injury under the statute because that was what gave rise to the

20  request for an accommodation that the State, under the statute

21  and then the rule applying the statute, said is not available.

22      So the State defendants say, well, even if we were to look

23  at it in other contexts -- so say the flu, for one -- they

24  would have to demonstrate a need for a religious accommodation

25  or that it was -- and the problem with that is, it's the same

1    thing that we have -- we experienced with the COVID-19 vaccine,

2    which is there are none.  The statute prohibits them in a

3    manner that's discriminatory of religious belief because it

4    permits a medical exemption, a nonreligious exemption, and

5    prohibits the religious.

6          THE COURT:  Do you know whether any of the existing

7    plaintiffs are in need of a medical exemption from any of the

8    other vaccines, or do you have to join new parties?

9          MR. SCHMID:  Well, I don't -- there -- I don't think

10    they're in need of -- not to my knowledge.  I don't know that

11    they need a medical exemption.  They didn't apply for one with

12    the COVID-19 vaccination, and I -- I'm not certain that they

13    require --

14          THE COURT:  Are any of your clients being

15    discriminated against on religious grounds in relation to the

16    other mandated vaccines?  Do you know?

17          MR. SCHMID:  They were discriminated against by virtue

18    of the COVID vaccine and then they were all terminated.  So

19    they can't be refired.  They were all fired because the statute

20    prohibited them from obtaining what the constitution requires

21    they be granted.

22          THE COURT:  I think you -- I think -- I hope you know

23    what I'm getting at.  Do your clients have standing to

24    challenge the statute in relation to any of the other vaccines?

25    Do you have reason to believe that any of them have --

```
 1          MR. SCHMID:  I think it's a reasonable possibility
 2   that some have religious objections to the flu vaccine, but...
 3   And I think some have -- I don't know if -- it's not in the
 4   complaint, so I -- I can't verify that there have been
 5   individuals who applied for it; but I could look and check with
 6   them and see.  But the -- the standing that they have to
 7   challenge the statute is by virtue of the COVID vaccine.
 8          THE COURT:  If --
 9          MR. SCHMID:  Yes, it's the rule is what --
10          THE COURT:  If the case -- if the case becomes a case
11   generally against the statute, first, it seems to me that the
12   statute would have to be judged in connection with the vaccines
13   that are currently mandated.  So I'm just going to get your
14   response to that in just a moment.  If you disagree, you'll
15   tell me.  If that's the case, then it seems to me that the
16   facts that are before -- that will be before me, the science
17   that is at issue, it's necessarily a much broader proposition.
18   We're talking about different illnesses, different viruses,
19   different vaccines which presumably have different chemical
20   makeups.  It's a much bigger, bigger case, isn't it?
21          MR. SCHMID:  Potentially.  But the -- that's because
22   of the way the statute works, which just blanketly prohibits
23   all religious accommodations, no matter what the disease.  No
24   matter what the particular vaccine, you can't have a religious
25   accommodation, but you can have a medical one.
```

**Appendix - 150**

| | |
|---|---|
| 1 | And here I think the -- because the statute and the rule |
| 2 | working together have been applied against the plaintiffs, they |
| 3 | have standing on an as-applied challenge.  They were fired. |
| 4 | The statute operated.  It was applied to them.  They lost their |
| 5 | jobs because they wouldn't give up their religious convictions. |
| 6 | THE COURT:  Well, assuming that -- assuming that their |
| 7 | claims aren't moot as it relates to COVID-19, but if I find |
| 8 | them moot, why would I otherwise permit this case to proceed |
| 9 | further?  Shouldn't you just file a new case if you want to |
| 10 | challenge the statute? |
| 11 | MR. SCHMID:  Well, I think the complaint, under a |
| 12 | Rule A reading, which is a -- just a notice pleading |
| 13 | requirement, if you look at paragraphs, is it, 31 through 39 |
| 14 | that discuss the vaccine mandate include, yes, the COVID-19 |
| 15 | rule, but also the statute, particularly 37 -- paragraph 37, |
| 16 | the only exemptions Maine now list as available to health care |
| 17 | works are in the statute and purports to only allow those as to |
| 18 | medically inadvisable, a written statement from the doctor, |
| 19 | while at the same time in next paragraph prohibiting religious |
| 20 | accommodations. |
| 21 | So I think the complaint does state that.  I -- I know |
| 22 | we'll get to the mootness point in a minute.  But the -- I |
| 23 | don't think Your Honor should find it moot.  But even a plain |
| 24 | reading of the complaint and a fair reading of the complaint |
| 25 | suggests that the challenge was to both because the challenge |

1   was to the system that created the individualized exemptions.

2   That's paragraph 114 and 120 of the complaint.

3       The system created by Maine under the rule and under the

4   statute, which prohibits religious accommodations, created the

5   system that has the First Amendment violation.  It's inherent

6   in the operation of both because it created a system of

7   individualized exemptions where certain are available; i.e.,

8   medical, nonreligious exemptions are available, while religious

9   aren't.  And under the First Amendment, Fulton County and

10  Tandon and Catholic Diocese and all the various cases that have

11  recently discussed the free exercise of treating religious

12  dissimilarly to nonreligious reasons is a First Amendment

13  violation.

14      THE COURT:  So do you have reason to believe that any

15  of your clients have religious objections to these other

16  vaccines?

17      MR. SCHMID:  I can't speak authoritatively on that.  I

18  would envision that probably some of them have objections to

19  the influenza vaccine.  But what I would say is because I know

20  most of them are, and the flu vaccine includes -- is included

21  in this, is that their objection is -- as it's stated in the

22  complaint and as it was to the COVID-19 vaccination, their

23  objection is to the use, testing, development, inclusion,

24  manufacture, all various aspects of a vaccine that are

25  connected to or linked with aborted fetal cells.  So their

**Appendix - 152**

1    objection would apply to any of those vaccinations that

2    included that component that they've stated.

3         THE COURT:  Do we know -- do you know whether any of

4    these vaccines do include --

5         MR. SCHMID:  I know the flu vaccine does.

6         THE COURT:  Flu vaccine.

7    And so if you were permitted to amend your complaint, if

8    we went that route, what would the amendment say?

9         MR. SCHMID:  I think it would look very similar to

10   what we have here, which is a -- you have a statute that

11   creates a system of individualized exemptions as it relates to

12   immunizations.  Leaving the mootness just aside for a moment --

13   and I don't think it is, but even in an amended complaint type

14   scenario, I think a direct challenge to the statute, itself,

15   which is inherent in the complaint we have before us is that

16   the statute, itself, which was applied through the rule, but

17   the statute, itself, contains the First Amendment violation and

18   then rule --

19        THE COURT:  So it would be a facial challenge to the

20   statute as a whole, which means that the Court wouldn't be

21   getting into the particular vaccines and the -- the necessity

22   for religious exemption or the necessity for not offering a

23   religious exemption as was asserted with respect to COVID-19,

24   wouldn't be at play, it would just be an across-the-board

25   challenge to the statute?

**Appendix - 153**

1          MR. SCHMID:  I don't think it would just be facial.

2     It -- it would be a facial component of it, which is what we

3     have here.  But it would also be an as-applied because it's

4     been applied to them.  The COVID-19 rule operating by virtue of

5     the statute to prohibit religious accommodation was applied to

6     them.  As-applied challenges are backward-looking necessarily

7     because you have to look at what was done.

8          THE COURT:  As far as the facial challenge goes, is it

9     your position that any -- this statute mandating vaccines did

10    not create -- allow for religious exemption is facially

11    unconstitutional, no matter what?

12         MR. SCHMID:  Not all of them.  I think that that's

13    where the claim under Fulton and Tandon and Catholic Diocese

14    and the other of the Supreme Court system, even Lukumi,

15    is -- it's not all of them.  But if they created an exemption,

16    a nonreligious exemption, then they cannot refuse blanketly to

17    provide a religious accommodation.  That -- that's the

18    individualized exemptions under religious jurament.  They have

19    created a system whereby nonreligious exemptions and

20    accommodations are available to the vaccination and not -- but

21    not religious ones.  That -- that's discriminatory treatment.

22    So if --

23         THE COURT:  Is it your view of the law that there's

24    never -- that there could never be an instance which would

25    constitutionally tolerate a public exemption without also

1    offering a religious-based exemption?

2        MR. SCHMID:  I think the First Amendment requires

3    that.  But it's not -- it's not that as soon as you offer a

4    medical exemption you must offer a religious exemption or the

5    whole thing is unconstitutional.  You have to run it through

6    the analysis.  What Fulton and Lukumi and all of the First

7    Amendment cases say is, when you have a system of

8    individualized exemption or when you treat religion less

9    favorably than nonreligious reasons, then it has to go through

10   strictly scrutiny.

11       So maybe the Government can come forward and put their

12   compelling interest on the table.  Maybe they can justify their

13   burden, but the burden would be on them to come forward and

14   show, here's our compelling Government interest as to why we

15   won't allow it.

16       THE COURT:  All right.

17       MR. SCHMID:  And that it's the least restrictive means

18   of doing so.

19       THE COURT:  And so if we were to have a trial in that

20   complaint, I would need to evaluate the statute in relation to

21   all exist -- each of the existing vaccinations, correct?

22       MR. SCHMID:  To the extent they are challenged in any

23   particular context.

24       Here, yes, the complaint was specific to the rule, in

25   part, because the COVID-19 vaccination was the requirement that

1    crystalized their injury, but the statute operated through the

2    rule to deprive them of their religious accommodation.  And so

3    the question was, did they have a compelling interest in doing

4    so.

5              THE COURT:  All right.

6              MR. SCHMID:  And if --

7              THE COURT:  And so the scope of evidence would

8    include -- presumably would include potentially scientific

9    evidence as to each vaccine that's currently administered in

10   Maine.

11             MR. SCHMID:  To those that are challenged, of course.

12             THE COURT:  Well, you're challenging the statute,

13   right?  I'd have to consider it in relation to each of the

14   vaccines, wouldn't I?

15             MR. SCHMID:  Well, I think that would -- it would --

16   it would -- potentially.  But it -- it's based on what the

17   objection would be from the plaintiffs.  Do they have an

18   objection to the MMR vaccine or to the --

19             THE COURT:  You're saying the statute is

20   unconstitutional.  So I've got to analyze the statute on a

21   facial basis, don't I?

22             MR. SCHMID:  Yes, Your Honor.

23             THE COURT:  And on -- and how about as-applied?

24             MR. SCHMID:  I think as-applied you -- this particular

25   instance the as-applied challenge you look at did they have a

**Appendix - 156**

```
 1   compelling interest in mandating the COVID vaccine, and did --
 2   was there compelling interest supported by the least
 3   restrictive means.
 4         THE COURT:  And to consider the facial
 5   constitutionality statute, putting aside for a moment
 6   as-applied, I would need to receive evidence about these
 7   vaccines, wouldn't I, each of them?
 8         MR. SCHMID:  I think so because the --
 9         THE COURT:  Okay.
10         MR. SCHMID:  The burden under that facial challenge
11   would be for the State to come forward and say, Well, here is
12   our evidence.  It's the State's burden to come forward to, We
13   have a compelling interest for the statute and we have no other
14   less restrictive means of obtaining our compelling interest.
15       I -- the plaintiffs -- they can't.  And the First
16   Amendment requires more.  And all of the plaintiffs were
17   terminated because they wouldn't accept a vaccine that violated
18   their religious beliefs, and so that's the as-applied
19   component.  And the facial component of it is you have created
20   the system, the system is inherent in the face of the statute
21   that medical are permitted, non -- or nonreligious are
22   permitted and religious are not.
23         THE COURT:  All right.  So let's just, sort of, make
24   sure I understand.
25       If I were to conclude that your as-applied challenge is
```

**Appendix - 157**

```
 1   moot, I think I hear you arguing that the case can go forward

 2   on a facial basis; is that correct?

 3           MR. SCHMID:  I think that's right, Your Honor.

 4           THE COURT:  All right.  Attorney Patwardhan, you want

 5   to respond?

 6           MS. PATWARDHAN:  Yes, Your Honor.

 7       So I -- so first I just want to point out that, you know,

 8   earlier in case the plaintiffs have already disclaimed to the

 9   First Circuit that they weren't challenging any other vaccine

10   requirement that --

11           THE COURT:  That they were or weren't?

12           MS. PATWARDHAN:  That they were -- they are not

13   challenging --

14           THE COURT:  Okay.

15           MS. PATWARDHAN:  -- any other vaccine requirement

16   other than COVID-19.

17       They stated that in oral argument in May.  I don't have a

18   citation.  It's not in our motion to dismiss briefing, but it

19   is under --

20           THE COURT:  Well, that was before you sought to

21   dismiss the case as moot, though, right?  I mean, circumstances

22   have changed a bit, right?

23           MS. PATWARDHAN:  The circumstances have certainly

24   changed in that the COVID-19 vaccination requirement has been

25   repealed.  But, again, you know, they've already said that they
```

**Appendix - 158**

```
 1    weren't -- in their amended complaint they weren't challenging
 2    anything other than the COVID-19 vaccine requirement.  And
 3    that's still the amended complaint that Your Honor is dealing
 4    with.
 5            THE COURT:  Right.
 6            MS. PATWARDHAN:  And so, second, I agree with what
 7    Attorney Schmid said about that the -- that the adoption or the
 8    amendment of the rule requiring vaccination against COVID-19
 9    crystalized their alleged injury.  That's right.  You know,
10    that is when their alleged injury, quote, unquote, crystalized
11    such that they had standing to challenge that requirement.  But
12    there's no allegations in the complaint or any information in
13    the complaint with respect to any other vaccine that's
14    currently required under the rule.  So there -- there's no
15    allegation that --
16            THE COURT:  Ms. Patwardhan, let me interrupt you.
17            MS. PATWARDHAN:  Yep.
18            THE COURT:  I agree with you.  The question is,
19    though, whether they should be permitted to amend.  That's been
20    suggested.
21            MS. PATWARDHAN:  My understanding of their -- their
22    request to amend was that they wanted to insure that they were
23    challenging the statute, sort of, on a facial basis.  That's
24    what I understand through their briefing and that -- what I
25    just understood with your colloquy with Mr. Schmid.
```

**Appendix - 159**

So I think the problem with that, Your Honor, is that if
you read the statute, it doesn't require vaccination.  The
statute says, Employees are exempt from imm -- immunization
otherwise required by this subchapter or by rules adopted by
the department pursuant to the section under the following
circumstances.  There's nothing in this statute that requires
the department to require vaccination.  So the department could
tomorrow repeal the entire rule, and this would still be on the
books, but there just would be no requirement in State law that
any healthcare worker be vaccinated against any disease.

So that's the problem with the facial challenge is it
doesn't say how it's going to be applied to any particular
plaintiff because it doesn't require vaccination, itself.  It's
the rule that requires vaccination.  It's the rule that tells
designated healthcare facilities you have to insure your
employees are vaccinated against these diseases.

So -- so, no, I don't think, you know, allowing the case
to go forward on a facial basis solely against the statute is
really sufficient without any sort of inquiry into the rule,
itself.

THE COURT:  So as I understand what you've just said,
it's your view that the statute is sort of an authorizing basis
for regulations.  And if a regulation is -- doesn't include a
religious exemption and someone wishes to challenge it, the
challenge is against the regulation, not against the statute.

```
 1              MS. PATWARDHAN:  I think you can't challenge the
 2    statute on its own if there's no disease in the rule against
 3    which you don't want to be vaccinated on religious grounds
 4    because you have to show how the statute is being applied to
 5    you, and that happens to the rule.
 6              THE COURT:  So that's an as-applied challenge.
 7         On a facial challenge are you also -- I also hear you
 8    arguing that there can't be a facial challenge because there's,
 9    in effect, nothing on the face of the statute that's
10    unconstitutional.
11              MS. PATWARDHAN:  Yes.
12              THE COURT:  Is that your point?
13              MS. PATWARDHAN:  Yes, Your Honor.
14              THE COURT:  And so going back to as-applied, the
15    source of the constitutional violation is the regulation,
16    really, not the statute so much; is that your view?
17              MS. PATWARDHAN:  I think that the enactment of a
18    vaccination requirement in the rule crystalizes the injury, to
19    use plaintiffs words, because the two do operate together.  But
20    until there's some vaccine that's required in the rule, then
21    there isn't a plaintiff that can just challenge the statute
22    sort of like in a vacuum without any sort of, you know,
23    understanding or allegations of how the statute is actually
24    being applied to them.  That happens once we know the diseases
25    against which that individual is objecting to.  There's a
```

1   requirement that they have to be vaccinated, and they say,

2   these are my objections.

3          THE COURT:  Thank you.  Attorney Schmid, what do you

4   have to say to that, that the statute essentially is an

5   authorizing -- provides the authorization for the adoption of

6   rules, and it's those rules where -- where challenge should be

7   directed, not at the statute?

8          MR. SCHMID:  Well, I think City of Lakewood versus

9   Plain Dealer Publishing Company, the Supreme Court says we --

10  we presume that duly-enacted statutes are enforced.

11         THE COURT:  Are what?

12         MR. SCHMID:  Are enforced.  That they're not just

13  paper tigers sitting out there.  So we're not going to say,

14  well, we have this statute, but until we force it upon you,

15  it's okay, there's no constitutional violation, even though

16  it's inherent in the face of the statute.  And Dombrowski

17  versus Pfister the Supreme Court case says we give a little

18  more leniency in the First Amendment context to standing the

19  challenge that is offered.  And in very few other contexts can

20  you bring a --

21         THE COURT:  But is Attorney Patwardhan wrong that the

22  statute, itself, is no more than sort of an authorization for

23  administrative agencies in Maine to adopt vaccine requirements

24  and they may choose or not -- or choose not to include

25  religious exemptions, and that's -- that's where the rub is,

**Appendix - 162**

1  right?  That's where the Constitution challenge lies, right?

2      MR. SCHMID:  Except I think that's incorrect, to a

3  point, respectfully.  Which is, no, it's not whether they can

4  or cannot include religious accommodation.  It says if you

5  have -- if you have a vaccination requirement, there are no

6  religious accommodations, blanket.  As a matter of State law,

7  State statute in Maine, there's no religious accommodations,

8  regardless of what the health department or whatever

9  administrative agency does.

10      And I think the case here, the complaint that's before

11  Your Honor and the application of it as to plaintiffs already

12  proves that it's not just paper tigers sitting out there.  The

13  department does enforce them.  The State defendant said, well,

14  we could just repeal the rule tomorrow and there would be no

15  required immunization.  Well, they haven't.

16      THE COURT:  All right.

17      MR. SCHMID:  And the one that did exist at the

18  beginning of this, which was the COVID-19 immunization

19  requirement that was applied to plaintiffs in this particular

20  context, proves that the statute worked to deprive individuals,

21  in this case healthcare workers, of their religious beliefs and

22  religious accommodations.  The First Amendment violation is

23  inherent in the face of the text as-applied through the various

24  rules that are in existence.  If there were no rules and the

25  department just said, well, we don't have any mandatory

1    vaccinations, there would be no requirement for the -- there'd

2    be no need for the statute.

3           THE COURT:  All right.  Let's -- let's move on to your

4    argument regarding voluntarily cessation exception to the

5    mootness doctrine.  You're asserting that the regulation was

6    repealed in response to the First Circuit's decision.  You use

7    the words, As a litigation tactic.  Do you actually dispute any

8    of the facts that the State defendants have put forth in their

9    motion regarding the pandemic since November of 2021,

10    including, among other things -- I'll cite just two of them --

11    that there's been significant decline in hospitalizations and

12    deaths from COVID-19, and that approximately 96 percent of the

13    country's population now has some immunity against COVID-19

14    from vaccination, infection, or both?  I mean, not

15    coincidentally, this Court, as is true for all federal courts

16    in the country, had adopted special rules around COVID-19

17    practices, which we terminated in May of 2023.  It's no secret

18    that the country, in this past spring, took a turn in its

19    response to COVID-19.

20      So how seriously are you pushing this idea that what the

21    plaintiffs seek -- I'm sorry, what the defendants seek now in

22    terms of having terminated the regulation should be viewed by

23    me as really in bad faith, it's a matter of litigation tactics?

24           MR. SCHMID:  Well, I think the evidence before Your

25    Honor, including the declaration from the State defendants in

1   this case, brings the question to the Court.  I mean, the

2   motion to dismiss stated that it was in May -- some time around

3   May, we started considering whether we should revoke the

4   COVID-19 vaccination requirement, right at the same time that

5   the First Circuit says -- they state in the First Amendment

6   claim and they get to prove -- and they get to prove their

7   claims in discovery and have a trial on the merit.  Right after

8   that the State says, never mind, but we've been considering it

9   since the same month that the First Circuit issued that

10  decision.

11      And then if you look at the <u>Beardsley</u> declaration that's

12  before Your Honor in support of their motion to dismiss, I

13  don't even think the numbers support the science argument that

14  they're making.

15      So in August, the date that they finalized the rule text

16  and submitted it for notification or publication, or whatever

17  the word that they use is, the numbers were increasing.  So

18  from July 2023 to August 2023, they had a 40 percent increase

19  in hospitalizations and a 250 percent increase in deaths.  Now

20  it's three to eight, but the numbers were going up.  And that's

21  the same month that they come and say, Well, everything is

22  calming down, we're back to normal, we're going repeal the

23  statute.  Their numbers don't even suggest all of that was

24  coming down.  Now compared to 2022, maybe.  But if you're

25  looking at it strictly from a numbers standpoint, those numbers

**Appendix - 165**

```
 1   were increasing the same month that they decided to repeal it,
 2   which just so happens to be a couple months after the First
 3   Circuit said plaintiffs get to prove their claims in a merits
 4   trial.
 5        So, yes, plaintiffs do question whether there's a pure
 6   litigation tactic.  And the Supreme Court precedent Already v.
 7   Nike and the others suggest that timing is -- is a relevant
 8   consideration for whether it was a genuine change of heard or
 9   whether it was a litigation-induced tactic.
10             THE COURT:  I have -- I have to say that, in all
11   candor, first flush, I'm having a tough time with your
12   argument.  Do you really want to press argument that it was a
13   litigation tactic?  The fact that the federal government and
14   the state governments had declared public health emergencies
15   and then -- and then -- and then pulled back from them in May,
16   it happened to coincide with when this case got decided by the
17   First Circuit, but that's a pretty big deal, isn't it?  I mean,
18   how often does the federal government and state government
19   declare public health emergencies?
20             MR. SCHMID:  Not very often.
21             THE COURT:  Right.
22             MR. SCHMID:  But what I'm suggesting to Your Honor is
23   that you said, how -- how far do you want to push this
24   argument.  I want to push it exactly as far as the Supreme
25   Court requires; which is, you place a formidable or heavy
```

**Appendix - 166**

```
1    burden, which is what Already v. Nike says and Trinity Lutheran
2    versus Coma.  They say the burden is heavy, it's formidable for
3    the State to come forward and make it absolutely clear that
4    there's no reasonable expectation for the conduct to have
5    occurred.  So that's exactly as far as I want to push it, is
6    exactly what the Supreme Court requires, which is to place a
7    formidable burden on them to show that it's absolutely clear.
8    Now, the Beardsley declaration says, well, it's -- it's
9    unlikely.  Not absolutely clear that we won't do it and not
10   that this will never happen again, it's just highly unlikely
11   that this would recur.
12        THE COURT:  Well, I think that, as I recall, you and
13   the State take a different view as to what the standard is.
14   And I don't recall off the top of my head what the State
15   argument was, but it's certainly less than what you're
16   suggesting.  So why don't you speak to the State's argument on
17   that point, if you recall what it was.  Do you recall?  Here it
18   is.
19        MR. SCHMID:  I don't think we're really disputing what
20   the standard is.  I think we're probably highlighting different
21   portions of the Supreme Court statement in Already v. Nike
22   which is, for -- it's a formidable burden to make it absolutely
23   clear that there's no reasonable expectation this can recur.
24   And I think what the State focuses on is that there's no
25   reasonable expectation that this could recur.
```

Case: 23-1821 Document: 00118187167 Page: 170 Date Filed: 07/04/2024 Entry ID: 6661491
Case 2:21-cv-00242-JDL Document 212 Filed 07/04/24 Page 30 of 40 PageID #: 2016

30

1          THE COURT:  The State argues -- I'm reading now from

2     their memo, the motion -- the correct standard holds -- and

3     they're quoting from <u>Calvary Chapel, Bangor versus Mills</u> at

4     2020, First Circuit decision, the correct standard, quote,

5     holds that the defendant's voluntary change in conduct moots a

6     case only if it is absolutely clear that the alleged --

7     allegedly wrongful behavior could not reasonably be expected to

8     recur.

9        So if that's the correct standard, what is it that's

10    before me that should cause me to conclude that the State has

11    not shown that it could not reasonably be expected to recur, as

12    opposed to your argument regarding the highly unlikely standard

13    and the like?  What is it that's before me that suggests that's

14    wrong?

15          MR. SCHMID:  I think --

16          THE COURT:  That conclusion is wrong.

17          MR. SCHMID:  I think the Supreme Court looks at

18    various things.  One is timing.  I think the timing before Your

19    Honor is suspect that just as the First Circuit is releasing

20    their decision the State says, hey, hang on.  So I think the

21    timing piece is relevant.

22       I think the continued defense of the constitutionality of

23    their mandated is relevant, which the Supreme Court said.  It

24    continued defending the -- the 11th Circuit <u>Sheely</u>, which we

25    cited, has a -- has a valid point.  Failure to acknowledge

```
 1    wrongdoing suggests that -- that it's not -- it's a desire to

 2    avoid liability, it's not -- it's not a genuine change of

 3    heart.  Even up until the month before when they were -- it may

 4    have been a little bit more that a month, but where they were

 5    arguing at the First Circuit that there's nothing wrong,

 6    There's no constitutional flaw here.  And so they have

 7    vigorously defended it throughout the litigation, and then all

 8    of a sudden when plaintiffs are -- what they have requested for

 9    two years they get on the door of discovery and prove their

10    claims the State says, never mind.  I think that's suspect --

11              THE COURT:  I understand.

12              MR. SCHMID:  -- when the number --

13              THE COURT:  I understand your point.

14         And this is not a trial.  This is argument.  But it is

15    December of 2023.  Is there anything you can point to that

16    should cause me to have pause on this point that at this point

17    in time, this point in time today, it's not reasonably -- it's

18    not reasonable to expect that the State is going to reimpose

19    the COVID-19 vaccine mandated in the foreseeable future?  Is

20    there anything that you'd have to challenge that proposition?

21              MR. SCHMID:  I think -- as I was just saying, I think

22    the timing is -- I won't rehash them all.  The timing,

23    continued defense, and then the evidence before Your Honor in

24    their own declaration form, which is, well, we've revoked it,

25    with a 40 percent increase.  So was it a science-based
```

**Appendix - 169**

1    revocation or was it a timing-based revocation?  The deaths

2    were 250 percent increased month-to-month from July to August.

3            THE COURT:  Okay.

4            MR. SCHMID:  And August is when it was published.  So

5    under their own evidence, if you're going to say, well, it's

6    science-based, then maybe it's down from 2022, but it was going

7    back up.  And you said, well, we -- the State says, we're

8    basing it all on the science and we've done that since the

9    beginning, which the plaintiffs obviously challenged that.  But

10   here their own evidence in paragraph -- paragraph 40 and 47 --

11           THE COURT:  So you're talking about number of

12   infections?  Are you also talking about mortality and

13   hospitalizations?

14           MR. SCHMID:  It's hospitalizations is the 40 percent

15   increase.  So from July to August 2023, it was 40 percent

16   increase.  And that's the -- that's the month that they

17   published the revocation.

18           THE COURT:  Okay.

19           MR. SCHMID:  And it was a 250 percent increase in

20   deaths from July to August.  And that's -- that's the exact

21   time they're saying the science supports that is -- we can take

22   it away.  I would suggest to Your Honor that's suspect to me.

23   Plaintiffs have always suggested that it's a little suspect on

24   the science to begin with.  But in this particular instance,

25   the very month which just so happens to be right after the

```
 1   First Circuit says plaintiffs get to prove their claims in

 2   discovery, the numbers are going up, and they say, never mind.

 3           THE COURT:  All right.

 4           MR. SCHMID:  So I think there is evidence before Your

 5   Honor.

 6           THE COURT:  Attorney Patwardhan, is this smoke or is

 7   it fire?

 8           MS. PATWARDHAN:  Neither.  So -- so I want to be clear

 9   that we're not arguing that the Court should not look at the

10   First Circuit decision at all.  You know, that's just one data

11   point, though.  So it's not the State's position that the Court

12   should not consider when the decision came one.  It's just one

13   consideration, amongst many, of all the different changes,

14   circumstance that we've pointed out.

15       And, you know, with respect to this, you know, 250 percent

16   increase between July and August, I would point out that

17   that's -- there were three deaths in July of 2023, and then

18   there were eight deaths in August of 2023.  And I think really

19   the appropriate comparison there is between the similar time

20   during the previous year.  A month-to-month comparison is not

21   always very helpful, because obviously things are going to

22   change from month-to-month, it might increase the data week to

23   week.  If you look at those numbers from the previous year in

24   July 20, 2022, 33 Mainers had died of COVID-19, and in August

25   of 2022 there were 62 Mainers that had died of COVID-19.
```

**Appendix - 171**

```
 1        So, you know, there will be changes month-to-month, but
 2   what we're looking at is overall trends.  And you can see those
 3   trends in Exhibit 1 to the Beardsley declaration.  I apologize,
 4   it's actually Exhibit 2 where you can see the deaths trending
 5   down over time from the beginning of January 2022 and into
 6   August of 2023 when we filed our motion.  And that was the last
 7   time frame that we had data for that, when we filed that
 8   particular motion.  So it's really the long, downward slope of
 9   deaths over a 20-month period, not a single comparison in
10   between July and August of 2023 that we're relying on the
11   reasonings why the State repealed the COVID-19 vaccination
12   requirement.
13             THE COURT:  Is that information in the record in this
14   case?
15             MS. PATWARDHAN:  Yes, it is.  It is ECF 188-3.
16             THE COURT:  All right.
17             MS. PATWARDHAN:  And you can see the statistics that I
18   had cited for you.  They were in, I believe, paragraph 47 and
19   48 of the Beardsley declaration regarding the deaths comparison
20   from August and July '22 to August and July of 2023.
21             THE COURT:  I want to turn our attention to the other
22   exception to mootness; that is, capable of repetition but
23   evading review.  And here the plaintiffs have argued and cited
24   to several Supreme Court decisions which recognized in, of
25   course, different settings that two years -- a two-year period
```

  1    in the context of those cases was effectively too short a

  2    period to foreclose judicial review.

  3        I read your response on that issue as focused on the

  4    capable of repetition prong of the plaintiffs' argument.

  5    You've emphasize it's not going to happen again, unlike very --

  6    very remote possibility this could happen again as to COVID-19.

  7    But you haven't really spoken to this escaping review prong

  8    analysis.  So I want to hear your position on that.

  9        MS. PATWARDHAN:  So I do think that this case could

 10    have been resolved in two years.  But I don't really have

 11    anything further to say on that, Your Honor.  We'll stand on

 12    our briefing on that particular issue.  And if you believe that

 13    two years is not a sufficient amount of time, then we would

 14    turn to the next prong of the analysis, which is about whether

 15    there's a reasonable expectation that the plaintiffs are going

 16    to be subject to the same conduct again in the future.  And for

 17    all of the reasons that, you know, we've argued its effective

 18    voluntary cessation about why there isn't a likelihood for this

 19    to recur in the future, all of those same factors apply here.

 20    That's really the same analysis that the First Circuit has done

 21    in both Boston Bit Labs and Calvary Chapel on this point.

 22        THE COURT:  All right.  Thank you.

 23        Attorney Schmid, why don't you respond.

 24        MR. SCHMID:  I think there's a couple points.  For

 25    one, this case -- the posture of this case has proved that --

Case: 24-1823 Case: 24-1823 Document: 00118187171 Document: 21 Page: 36 Filed: 01/04/24 Date Filed: 06/40/2024 Page: 36 of 40 Entry ID: 6761491

36

```
 1    the Supreme Court's Kingdomware Tech case that two years is too
 2    short is fully accurate.  Plaintiffs haven't had final review
 3    of the merits, which is what's required to consider it final.
 4    Review under the standard, it's an adjudication by the district
 5    court, an appeal, and any subsequent appeals.  That's final
 6    adjudication.  Two years has proved true.  We're barely beyond
 7    discovery.  I mean, we've exchanged initial disclosures after
 8    two years.  So clearly it wasn't enough time to have final
 9    review after appeals of the interrogatory orders and some of
10    the other things that have arisen.  So I thinks it's clearly
11    too short.
12        I think what the First Circuit says in the Horizon Bank
13    versus Massachusetts case is some of these things are
14    inherently transitory.  And if it's inherently transitory, that
15    suggests that it's going to be too short.
16            So here there was a finite window.  It was August 12
17    that the State says, we're going to require COVID-19
18    vaccinations, and then we're going to require them by August 1
19    and if -- or October 1, forgive me, and then it subsequently
20    extended it a month.  But you're talking two months.  And if
21    you weren't given an accommodation, which no one was, then they
22    were going to be fired by the time August 1 comes around,
23    whenever the deadline was.  And I think it became October 31.
24    So that's inherently transient because they were going to be
25    fired.
```

1    Well, there is no possible way to get final review in that

2    short of a window.  And then it proves, too, that it was

3    inherently transient because they were all fired, and then

4    they're fighting a past application under -- which is why the

5    First Amendment permits an as-applied challenge, which is part

6    of plaintiffs' challenge here.

7    The statute existed.  It was applied to them.  They were

8    fired.  And, yes, it was inherently transitory because they

9    weren't -- the only way to avoid that would have been

10   injunctive relief, which they didn't obtain.  So it was

11   inherently transitory, which suggested it was capable of

12   repetition and evading review in two years under Kingdomware

13   Tech.

14   And so I -- the 11th Circuit Sheely decision is

15   interesting on this point as well.  Which is, if it wasn't an

16   isolated event or if it was unintentional, maybe it won't be

17   capable of repetition, yet evading review because it's not

18   likely to recur.

19   I hear it wasn't an isolated event.  It was -- it was

20   blanket.  Everybody got denied because the statute required

21   that everybody got denied.  It wasn't unintentional because

22   they've stated and vigorously defended for two years that they

23   were correct to do it.  And so I think it is capable of

24   repetition and evading review because if they were to reimpose

25   it tomorrow and it was inherently transitory again, then a -- a

```
 1   new case or an amended complaint or a new plaintiff who was
 2   denied their accommodation under that wouldn't have a chance to
 3   receive final review before the deadline and the termination.
 4        And so that's why the as-applied challenge is important
 5   because we're going -- we're going to look back.  But I think
 6   the facial challenge survived mootness because it -- because it
 7   was capable of repetition and evading review.  At no point
 8   would it ever be finally adjudicated because they're so
 9   inherently transitory.
10        And that's what the -- the Horizon Bank case is out of the
11   First Circuit, which is sometimes these things are transitory
12   and you -- they do have to fit comfortably in that exception,
13   or else they would never get reviewed and the constitutionality
14   of the statute would never get reviewed.  Because it comes and
15   it goes, and it's too short to fully litigate it.  And so I
16   think it is capable of repetition and evading review, which we
17   aren't, say, finding that the claims aren't moot.
18        THE COURT:  All right.  Attorney Patwardhan, as the
19   moving party, do you have any final comments you'd like to
20   make.
21        MS. PATWARDHAN:  I just want to make clear, and I
22   should have said this earlier, Your Honor, is that on the
23   voluntary cessation there's an exception that there's two ways
24   you could rule in State defendants' favor.  The first was that
25   you concluded that the COVID-19 repeal was based on the changed
```

```
 1    circumstances and not related to the litigation.  And -- but if
 2    you're not entirely convinced of that, then you could conclude
 3    that it is absolutely clear that the vaccination requirement
 4    could not reasonably be expected to recur.  Because the
 5    voluntary cessation exception doesn't apply in the first case
 6    if the change is not based on the litigation.  Other than that,
 7    I don't have anything further, Your Honor.
 8           THE COURT:  All right.  Thank you.  I'll just note at
 9    the outset of today's hearing, I guess this is probably the
10    first in-person hearing we've had.  And so it is nice to see
11    everyone live.  Attorney Schmid, I wish we had better weather
12    for you since you traveled all the way to be here.
13           MR. SCHMID:  Actually, it was better.  I was telling
14    the State defendants beforehand I flew in late last night and
15    the snow stopped in Augusta.
16           THE COURT:  Okay.
17           MR. SCHMID:  So it was just rain when I got to
18    Portland, which was fine.
19           THE COURT:  It's getting better.  But it would be nice
20    if the sun came out.
21        In any event, I hope you get to see a little bit of Maine
22    while you're here.
23           MR. SCHMID:  I have.  I was telling them before, too,
24    my wife is actually from Farmington.
25           THE COURT:  Oh, I didn't know.
```

Case: 23-1821 Document: 00118176180 Page: 180 Date Filed: 01/04/2024 Entry ID: 6616491
Case 2:21-cv-00242-JDL Document 212 Filed 01/04/24 Page 48 of 52 PageID #: 2026

40

```
 1          MR. SCHMID:  So I'm familiar with Maine.  And I would
 2     agree with Your Honor, it's nice to see you without your
 3     bookcase behind you on a small screen.  So --
 4          THE COURT:  All right.
 5          MR. SCHMID:  -- it is a pleasure.
 6          THE COURT:  Terrific.  All right.  With that, I will
 7     be in recess.  Thank you everyone.
 8                    (Time noted:  2:53 p.m. )
 9                         * * * * *
10                 **C E R T I F I C A T I O N**
11                         * * * * *
12          I, Michelle R. Feliccitti, Registered Professional
13     Reporter and Official Court Reporter for the United States
14     District Court, District of Maine, certify that the foregoing
15     is a correct transcript from the record of proceedings in the
16     above-entitled matter.
17     Dated:  January 4th, 2023
18                    /s/ Michelle R. Feliccitti
19                    Official Court Reporter
20
21
22
23
24
25
```

# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE
### Bangor Division

| | | |
|---|---|---|
| ALICIA LOWE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | Case No. <u>1:21-cv-00242-JDL</u> |
| JANET T. MILLS, in her official capacity as | ) | |
| Governor of the State of Maine, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF APPEAL</u>

Pursuant to Fed. R. App. P. 3 and 28 U.S.C. §1291, Plaintiffs hereby notice their appeal to

the United States Court of Appeals for the First Circuit from this Court's Order (dkt. 211) granting

Defendants' motion to dismiss surviving claims as moot and the Judgment of Dismissal (dkt. 212),

both of which were entered on February 23, 2024.

Respectfully submitted,

/s/ Stephen C. Whiting
Stephen C. Whiting
      ME Bar No. 559
The Whiting Law Firm
75 Pearl Street, Suite 207
Portland, ME 04101
(207) 780-0681
Email: steve@whitinglawfirm.com

/s/ Daniel J. Schmid
Mathew D. Staver*
Horatio G. Mihet*
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
dschmid@lc.org
*Admitted pro hac vice

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of March, 2024, I caused a true and correct copy of the foregoing to be electronically filed with this Court. Service will be effectuated on all Counsel of Record via this Court's ECF/electronic notification system.

/s/ Daniel J. Schmid
Daniel J. Schmid

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of August, 2024, I caused a true and correct copy of the foregoing was electronically filed with this Court. Service will be effectuated on all counsel of record via the Court's ECF/electronic notification system.

/s/ Daniel J. Schmid
Daniel J. Schmid
*Attorney for Plaintiffs-Appellants*